UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE NAPSTER, INC. COPYRIGHT
LITIGATION

_____

JERRY LEIBER; MIKE STOLLER; FRANK MUSIC
CORPORATION; and PEER INTERNATIONAL
MUSIC CORPORATION,

    Plaintiffs,

    v.

BERTELSMANN AG; BERTELSMANN, INC.; and
BeMUSIC, INC.,

    Defendants.
_____/

No. C MDL-00-1369 MHP
(No. C 04-1671 MHP)

**MEMORANDUM & ORDER**
**Re: Motion for Class Certification**

    This action arises from the litigation involving the alleged copyright infringement of Napster, Inc. and its customers. On April 25, 2003, plaintiffs Jerry Leiber, Mike Stoller, Frank Music Corporation, and Peer International Music Corporation (collectively "plaintiffs") filed an action in the United States District Court for the Southern District of New York. In their complaint, plaintiffs alleged that defendants Bertelsmann AG, Bertelsmann, Inc., and BeMusic, Inc. (collectively "Bertelsmann") engaged in contributory and vicarious copyright infringement by virtue of their investment in and control of Napster. That action was subsequently transferred to this court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. Plaintiffs now seek certification of a class of music publisher-principals of The Harry Fox Agency, Inc. ("the Fox Agency") that own or control at least one copyrighted musical work that has without their permission been made available through the Napster service on or after October 30, 2000. Having considered the parties' arguments and for the reasons set forth below, the court enters the following memorandum and order.

## BACKGROUND

Plaintiffs Jerry Leiber and Mike Stoller are professional song writers and music publishers. Pls.' Am. Compl. ¶ 11. Plaintiffs Frank Music Corporation and Peer International Corporation ("PIC") are copyright owners engaged in the business of music publishing, whereby they license copyrighted musical works for reproduction as phonorecords. Id. ¶¶ 12-13. The licensees of Frank Music and PIC distribute these phonorecords via the Internet as well as through traditional media such as compact disks and cassette tapes. Id. ¶ 10. Each of the named plaintiffs have appointed the Fox Agency to serve as their non-exclusive agent for licensing their copyrighted works and collecting copyright royalties. Eastman Decl. ¶ 3. The Fox Agency acts in that capacity for approximately 27,000 music publishers who collectively own and control more than 2.5 million copyrighted musical works. Pls.' Am. Compl. ¶ 10.

The instant action is part of the consolidated multidistrict litigation ("MDL") proceedings arising from alleged acts of direct copyright infringement committed by the users of the "peer-to-peer" file-sharing network operated by Napster, Inc., which in turn gave rise to allegations of contributory and vicarious copyright infringement against Napster. These proceedings ultimately led this court to preliminarily enjoin Napster from facilitating its users' attempts to engage in the unauthorized reproduction and distribution of certain copyrighted musical compositions and sound recordings. See A&M Records, Inc. v. Napster, Inc. ("Napster III"), No. C MDL-00-1369 MHP, 2001 WL 227083 (N.D. Cal. Mar. 5, 2001) (Patel, C.J.). In July 2001, Napster ceased operations in order to comply with the court's order.

Napster subsequently sought bankruptcy protection and is no longer party to the consolidated MDL proceedings that bear its name. The proceedings continue, however, with various plaintiffs taking aim at still-solvent entities that invested in Napster before it ceased operations. Among those former Napster investors is Bertelsmann, a media conglomerate with interests in the fields of television and radio, publishing, online media, and music distribution. Pls.' Am. Compl. ¶ 14. Like three of the named plaintiffs in the instant action, Bertelsmann, through its BMG subsidiary, participated as a plaintiff in the MDL proceedings against Napster. However, prior to the shut-down of the Napster network, in approximately September 2000, Bertelsmann allegedly approached Napster and proposed to form a "strategic partnership" for the purpose of distributing musical compositions and sound recordings via the Internet. Id. ¶ 39. Bertelsmann

2

subsequently invested a total of $85 million in Napster, id. ¶ 43, and, according to plaintiffs, participated directly in strategic decisions that led Napster to continue enabling its customers to commit copyright infringement, id. ¶¶ 41-42. Plaintiffs now contend that by virtue of its investment in Napster and participation in making such strategic decisions, Bertelsmann is contributorily and vicariously liable for the acts of copyright infringement committed by users of the Napster network. In addition, in their November 30, 2004 proffer regarding their theory of direct infringement, plaintiffs asserted that Bertelsmann is secondarily liable for Napster's own acts of direct copyright infringement arising from the indexing of the copyrighted musical works available on the Napster network. Pls.' Statement Re Theory of Infringement at 5.

On April 25, 2003, plaintiffs filed a complaint in the United States District Court for the Southern District of New York, asserting causes of action for vicarious and contributory copyright infringement against each of the named defendants. On April 28, 2004, that action was transferred to this court for coordinated pretrial proceedings. See 28 U.S.C. § 1407. Now before the court is plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 26.

LEGAL STANDARD

A party seeking to certify a class must satisfy the four prerequisites enumerated in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). In addition, the party seeking certification must comply with Rule 23(b), which requires a showing that the action is maintainable under Rule 23(b)(1), (2), or (3). See Fed. R. Civ. P. 23(b).

A party seeking an award of monetary damages must generally proceed under paragraph (3) of Rule 23(b). See, e.g., Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994). Rule 23(b)(3) permits

3

certification of such a "damages class" only if the court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This "predominance" inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir.) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)), cert. denied, 534 U.S. 973 (2001). In addition, Rule 23(b)(3) requires the party seeking certification to show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. See Zinser v. Accufix Research Instit., Inc., 253 F.3d 1180, 1188 (9th Cir.), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). However, in adjudicating a motion for class certification, the court accepts the allegations in the plaintiff's complaint as true so long those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

DISCUSSION

Plaintiffs move to certify a class of music publisher-principals of the Fox Agency that own or control at least one copyrighted musical work that has without their permission been made available through the Napster service on or after October 30, 2000. Because they seek money damages under the Copyright Act, 17 U.S.C. § 101 et seq., plaintiffs must satisfy the requirements of Rule 23(a) and Rule 23(b)(3) in order to prevail on their motion.

I.   Rule 23(a)

4

As noted above, a party seeking class certification must allege sufficient facts to establish that the numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure 23(a) have been met. The court address each of these requirement below.

A.  Numerosity

The first requirement of Rule 23(a) is that the members of a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, classes that include more than forty members satisfy the numerosity requirement. See 5 James W. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004). Although a plaintiff seeking class certification need not identity each class member individually, see Freedman v. Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996), "mere speculation" as to the number of parties involved is not sufficient to satisfy the numerosity requirement. Roe v. Town of Highland, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990) (quoting 7A Charles Allen Wright et al., Federal Practice and Procedure § 1762 (2d ed. 1986)).

Here, the Fox Agency represents more than 27,000 music publishers. In addition, plaintiffs submit evidence that prior to the shut-down of the its file-sharing network, Napster was provided with notices identifying more than 90,000 copyright musical works owned by approximately 4,000 music publishers represented by the Fox Agency. Johnson Decl., Exh. B. These allegations are more than sufficient to satisfy the numerosity requirement of Rule 23(a)(1).

B.  Commonality

The second prerequisite of Rule 23(a) requires the party seeking class certification to show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not mandate that each member of the class be identically situated. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Rather, the rule merely requires that there be substantial questions of law or fact common to each of the class member's claims. See Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964) (citation omitted). For example, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

5

In the instant action, the claims of each member of the class fundamentally arise from the same factual predicate: namely, that Napster users infringed the class member's exclusive rights in one or more copyrighted musical compositions and that Bertelsmann is secondarily liable for those acts of direct infringement by virtue of its investment in Napster and its control of the Napster network.[1] From this common factual predicate flows a number of subsidiary issues that plaintiffs identify as common to the class, including: (1) whether Bertelsmann materially contributed to the unauthorized reproduction and distribution of copyrighted musical works; (2) whether Bertelsmann had actual or constructive knowledge of the acts of direct infringement alleged in the complaint; (3) whether Bertelsmann had the right and ability to supervise or control the Napster service; (4) whether Bertelsmann had a direct financial interest in the allegedly infringing activity; and (5) whether Bertelsmann's conduct amounted to willful copyright infringement.

Bertelsmann characterizes matters surrounding its knowledge of the Napster users' directly infringing conduct and the willfulness of its alleged acts of secondary infringement as individual issues that require a case-by-case inquiry into each allegation of direct infringement. However, as the Ninth Circuit observed in A&M Records, Inc. v. Napster, Inc. ("Napster II"), 239 F.3d 1004 (9th Cir. 2001), Napster's own liability for its users infringement turned on whether the company: (1) received "reasonable knowledge of specific infringing files with copyrighted musical compositions and sound recordings"; (2) knew or should have that such files were available on the Napster system; and (3) failed to act "to prevent viral distribution of the works." Id. at 1027 (citation omitted). Assuming *arguendo* that Bertelsmann can be held liable for Napster's failure to act to prevent distribution of copyrighted works by its users—a legal question that is also common to the class—Bertelsmann's knowledge of the availability of specific infringing works is at least arguably established by the July 12, 2001 notice of infringement that Napster received from plaintiffs Leiber, Stoller, and Frank Music, which listed over 90,000 copyrighted musical works that were allegedly owned by members of the proposed class. Johnson Decl., Exh. B. Thus, far from counseling against class treatment of plaintiffs' claims, the "knowledge" and "willfulness" inquiries give rise to a number of common issues of law and fact that support certification of the plaintiff class. The court therefore concludes that the commonality requirement of Rule 23(a)(2) is satisfied by the allegations in plaintiffs' complaint.

### C. Typicality

The third prerequisite of Rule 23(a) requires the party seeking class certification to show that the claims of the representative plaintiffs are typical of the claims of the absent class members. Fed. R. Civ. P. 23(a)(3). Under Rule 23(a)(3)'s "permissive standards," representative claims are "typical" if they are "reasonably co-extensive with those of absent class members." Hanlon,150 F.3d at 1020. Nonetheless, the class representatives must at a minimum "be part of the class and possess the same interest and suffer the same injury as the [other] class members." General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982) (citations and internal quotation marks omitted).

Here, each of the four named plaintiffs owns copyrighted musical compositions that were allegedly made available on the Napster network without their consent. Two of the plaintiffs are professional composers and two are music publishers who license the reproduction and distribution of copyrighted musical works, and all four named plaintiffs are represented by the Fox Agency. Thus, each of the class representatives is a member of the class. Moreover, like the absent class members, the named plaintiffs allege that they own the exclusive rights to reproduce and distribute copyrighted musical compositions, that those rights were infringed by users of the Napster network, and that Bertelsmann is contributorily and vicariously liable for those acts of direct infringement. Accordingly, plaintiffs' interests and injuries are typical of those suffered by other class members. The court therefore concludes that plaintiffs satisfy the typicality requirement of Rule 23(b)(3).

### D. Adequacy of Representation

The final prerequisite of Rule 23(a) requires that the named plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement arises from constitutional due process considerations, which dictate that absent class members "be afforded adequate representation before entry of a judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)). Thus, to ensure adequacy of representation, a court entertaining a motion for class certification must consider (1) whether there are any conflicts of interest between the named plaintiffs or their counsel and the absent class members and (2) whether the representatives of the class "will

7

1 prosecute the action vigorously on behalf of the class." Id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)).

Here, the named plaintiffs are "substantial independent songwriters and music publishers" who are principals of the Harry Fox Agency. Pls.' Mem. P. & A. at 12. As owners of a significant corpus of copyrighted musical compositions, plaintiffs' interests in prosecuting this action include protecting the royalties that they earn from the reproduction and distribution of their copyrighted works and obtaining compensation for the unauthorized use of those works by Napster's customers. It is fair to assume that these interests are widely shared by other copyright owners. Plaintiffs also point out that the class for which they seek certification is limited to copyright owners who have retained the Fox Agency as their common licensing and collection agent and have thus shown an interest in earning royalties from licensing their copyrights. Accordingly, the court concludes that the named plaintiffs' interest are aligned with those of the class.

Nor can it be seriously disputed that plaintiffs and their counsel will vigorously prosecute this action. Indeed, having participated in the proceedings before this court that ultimately led to Napster's demise, class counsel and three of the named plaintiffs have already demonstrated their willingness and ability to do exactly that. Class counsel also attests to its long history of representing the Fox Agency and other music publishers in litigation, legislative matters, and proceedings before the United States Copyright Office. See generally Ramos Decl. ¶¶ 2-9. Based on these submissions and its own experience with the named plaintiffs and their counsel, the court has no reason to doubt that the interests of the class will be vigorously represented.

Beyond using its opposition to this motion as a sounding board to vent its frustration with ongoing discovery disputes—which the court has already addressed and need not revisit here—Bertelsmann's primary objection to the adequacy of representation provided by the class representatives and their counsel focuses on the named plaintiffs' ignorance of the details of both the initial round of Napster litigation and the ongoing proceedings related to the instant action. For example, Bertelsmann notes that upon being deposed prior to the filing of this motion, Jerry Leiber could not remember that he was a named plaintiff in the original action against Napster. Leiber Dep. at 15-17. Bertelsmann also notes that Mike Stoller

8

testified that he could not recall reviewing the complaint before the instant action was filed. Stoller Dep. at 5-6. Extrapolating from these admissions, Bertelsmann paints a picture of attorney-driven litigation that puts the interests of absent class members at risk.

Of course, Bertelsmann's characterization of the relationship between lead plaintiffs and their attorneys is transparently self-serving. It may be true that class counsel's efforts to keep their clients informed leaves something to be desired. However, the Ninth Circuit has made clear that the adequacy of representation inquiry focuses on the potential for conflicts of interest between class representatives and counsel on the one hand and absent members of the class on the other. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir. 1992)) ("Adequate representation as required by . . . Rule 23(a)(4) depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.") (internal quotation marks omitted). There is no suggestion here that the absent members of the class do not share the named plaintiffs' interest in holding Bertelsmann liable for the alleged acts of copyright infringement committed by Napster users. In the absence of any evidence of such a conflict of interest, the court finds Bertelsmann's concerns about the adequacy of representation to be not only self-serving, but also misplaced.

In any event, it is neither unusual nor necessarily unwise for lay plaintiffs involved in complex civil disputes to defer to counsel's expert judgment on matters of legal strategy and litigation tactics. See, e.g., In re Select Comfort Corp. Sec. Litig., 202 F.R.D. 598, 609 (D. Minn. 2001) (observing, in the context of a securities class action, that "[c]lass representatives in complex cases are not required to have [a] detailed level of firsthand knowledge of [the] facts or law" at issue in the case) (citations omitted); see also In re Linerboard Antitrust Litig., 203 F.R.D. 197, 213 (E.D. Pa. 2001) (making the same observation with respect to an antitrust class action) (citations omitted), aff'd, 305 F.3d 145 (3d Cir. 2002), cert. denied, Gaylord Container Corp. v. Garrett Paper, Inc., 538 U.S. 977 (2003). Nothing in the record here suggests that the degree of deference that the named plaintiffs have conferred upon counsel falls so far outside the bounds of an ordinary attorney-client relationship that it would have the effect of depriving the

1  absent class members of adequate representation.[2]  The court therefore concludes that the named plaintiffs
2  and their counsel satisfy the adequacy requirement of Rule 23(a)(4).

3  II.     Rule 23(b)(3)

4  In addition to meeting the conditions imposed by Rule 23(a), a party seeking certification of a
5  "damages" class also bears the burden of establishing the predominance of common questions of law or
6  fact and the superiority of a class action relative to "other available methods for the fair and efficient
7  adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  The court addresses these "predominance"
8  and "superiority" requirements below.

9  A.     Predominance

10 The first requirement for certifying a class pursuant to Rule 23(b)(3) states that "questions of law or
11 fact common to the members of the class predominate over any questions affecting only individual
12 members." Fed. R. Civ. P. 23(b)(3).  This "predominance" inquiry "focuses on the relationship between
13 the common and individual issues." Culinary/Bartender Trust Fund, 244 F.3d at 1162.  Consequently, the
14 presence of common issues of fact or law sufficient to satisfy the requirements of Rule 23(a)(2) is not by
15 itself sufficient to show that those common issues predominate.  Hanlon, 150 F.3d at 1022.  Nonetheless,
16 "[w]hen common questions present a significant aspect of the case and they can be resolved for all
17 members of the class in a single adjudication, there is clear justification for handling the dispute on a
18 representative rather than on an individual basis." Id. (citing 7A Wright et al., supra, § 1779); see also
19 Culinary/Bartender Trust Fund, 244 F.3d at 1162.

20 In this action, a host of factual and legal issues arising from Bertelsmann's investment in Napster are
21 common to the copyright infringement claims of each member of the class.  These issues include both the
22 legal questions raised by plaintiffs' claim that Bertelsmann is liable for secondary copyright infringement by
23 virtue of its investment in Napster and its control of the Napster network, as well as questions of fact such
24 as the extent of control that Bertelsmann exercised over the Napster network and Bertelsmann's
25 knowledge of the infringing activities of Napster users.[3]  Not surprisingly, Bertelsmann downplays these
26 areas of commonality among the class members' claims and focuses on other issues where some form of
27 individualized inquiry will undoubtedly be required.  In particular, Bertelsmann points out that plaintiffs bear
28

10

the burden of proving ownership and registration of each of the allegedly infringed musical compositions, showing that each of those works was distributed via the Napster network, and establishing their right to collect actual or statutory damages under the Copyright Act. See 17 U.S.C. § 411(a) (stating that, subject to several exceptions that are not relevant here, "no action for infringement of the copyright in any . . . work shall be instituted until registration of the copyright claim has been made in accordance with this title"); 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of [17 U.S.C. § 411], to institute an action for any infringement of that particular right committed while he or she is the owner of it."); 17 U.S.C. § 504 (discussing burden of proof with respect to actual damages and willful infringement).

In Bertelsmann's view, the presence of these individual issues precludes class certification. However, the court finds Bertelsmann's understanding of the predominance requirement to be unduly restrictive. To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Culinary/Bartender Trust Fund, 244 F.3d at 1162 (quoting Amchem, 521 U.S. at 623). Among the considerations that are central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." Zinser, 253 F.3d at 1189 (quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). Here, while it is true that proof of ownership, registration, and actual damages ultimately requires a work-by-work inquiry, viewing these determinations as purely "individual issues" ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users. This shared factual predicate in turn gives rise to a host of common legal issues concerning Bertelsmann's involvement in the operation of the Napster network. There can be no serious dispute that these issues are sufficiently "significant" to warrant adjudication of the parties' dispute on a representative rather than individual basis, accord Culinary/Bartender Trust Fund, 244 F.3d at 1162, nor is there any question that considerations of judicial economy heavily favor litigating these common issues once, as part of a single class action, rather than rehashing the same questions of law and fact in each of what could likely amount to thousands of

11

1 individual lawsuits.[4]  The court therefore finds that the predominance requirement of Rule 23(b)(3) has been
2 satisfied.

       B.     Superiority

The final prerequisite for certification of a "damages" class under Rule 23(b)(3) requires the plaintiff to show that a class action is superior to other methods available for the adjudication of the parties' dispute. Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) provides a non-exhaustive list of factors to consider in determining superiority, which include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Id.  Analysis of these factors requires the court to focus on whether the interests of "efficiency and economy" would be advanced by class treatment.  Zinser, 253 F.3d at 1189 (quoting 7A Wright et al., supra, § 1780).

      Applying the first of these factors, the interest of members of the class in individually controlling the prosecution or defense of separate actions, the court finds it unlikely that a significant proportion of the absent class members would have the ability and desire to pursue individual copyright infringement actions against Bertelsmann.  Even with the incentives to bring such claims that the Copyright Act provides in the form of statutory damages and attorneys' fees, see 17 U.S.C. §§ 504(c), 505, it nonetheless remains true that many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights.  Indeed, the fact that all of the class members have retained the Fox Agency to license their copyrighted works and collect royalties on their behalf suggests a preference for delegating copyright licensing and enforcement duties that is inconsistent with a widespread desire on the part of absent class members to prosecute their claims in individual actions.  The court thus finds that the first factor in Rule 23(b)(3) supports a conclusion that a class action is superior to other methods for adjudication of the parties' dispute.

      As to the second factor in Rule 23(b)(3), the extent and nature of any litigation concerning the controversy that has been already commenced by members of the class, three of the named plaintiffs and

their counsel have participated in Napster-related ligation for more than five years with scant involvement of the absent class members. Their apparently satisfactory representation of the putative class strongly supports allowing plaintiffs to represent other members of the class formally. With respect to the third factor, the desirability of concentrating the litigation of the claims in a particular forum, the transfer of the instant action to this district by the Judicial Panel on Multidistrict Litigation attests to the advantages of litigating all Napster-related claims in this court. Thus, the third Rule 23(b)(3) factor also favors granting plaintiffs' motion.

The final factor set forth in Rule 23(b)(3) directs the court to consider the difficulties likely to be encountered in the management of a class action. Admittedly, adjudicating the ownership and damages issues pertaining to tens of thousands of separate copyrighted musical compositions will present logistical difficulties. However, the Frank Agency's offer to work closely with the class representatives and class counsel in shouldering the administrative burden associated with maintaining the class action should reduce, if not eliminate, any complications that may arise from adjudicating the individual aspects of the class members' claims. In any event, the case management problems that may arise upon certification of the class must be compared to the alternative method of adjudicating the parties' claims: that is, thousands of actions by individual class members. Accord Culinary/Bartender Trust Fund, 244 F.3d at 1163 (quoting 7A Wright et al., supra, § 1779) ("If a comparative evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied.") (original alterations omitted). When viewed from this perspective, a class action is clearly the most efficient and in all likelihood the most equitable method for resolving the parties' dispute.

Rather than focusing on the considerations identified in Rule 23(b)(3), Bertelsmann's analysis of the "superiority" issue emphasizes the availability of statutory damages and attorneys' fees under the Copyright Act as an incentive for individual class members to file their own infringement actions. See 17 U.S.C. § 504(c) (providing for statutory damages ranging from $750 to $150,000 per copyrighted work infringed); 17 U.S.C. § 505 (permitting courts to award attorneys' fees to the prevailing party in a copyright infringement action). In support of this position, Bertelsmann cites a number of district court cases that discourage class certification where members of the putative class could bring individual claims for statutory

13

damages. See, e.g., Forman v. Data Transfer, Inc., 164 F.R.D. 400, 405 (E.D. Pa. 1995) (concluding that class action treatment of claims under the Telephone Consumer Protection Act would be "inconsistent" with congressional intent in authorizing statutory damages for violations of the Act); Ratner v. Chemical Bank N.Y. Trust Co., 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (refusing to certify a class seeking statutory damages under the Truth in Lending Act on the ground that the aggregation of the class members' claims would potentially result in a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to the defendant, for what is at most a technical and debatable violation of the Truth in Lending Act").

Of course, this court is not bound by these district court decisions, and nothing in Ninth Circuit precedent suggests that the availability of statutory damages raises a *per se* bar to class certification. Indeed, the only Ninth Circuit case Bertelsmann can muster in support of its position, Kline v. Coldwell, Banker & Co., 508 F.2d 226 (9th Cir. 1974), cert. denied, 421 U.S. 963 (1975), is easily distinguished from the instant action. In Kline, the Ninth Circuit reviewed a district court's order certifying in part a defendant class consisting of more than 2,000 real estate brokers who were accused of violations of federal antitrust law. Id. at 228-29. In concluding that class certification was inappropriate, the court relied heavily on the fact that each of the 2,000 defendants was potentially jointly and severally liable for treble damages in the amount of $750 million. Id. at 234. Thus, observing that "[s]uch an award against each of 2,000 real estate broker defendants would shock the conscience," the Ninth Circuit reversed the district court's judgment that the plaintiffs' claims were suitable for class action treatment. Id. at 234-35.

It is unclear what, if any, relevance the holding in Kline has to the instant action, where certification is sought for a *plaintiff* class. It is at least arguable that the availability of statutory damages weighs in favor rather than against class certification under such circumstances. For example, in Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990), the court cited the statutory damages provision of the Farm Labor Contractor Registration Act as a basis for upholding the district court's order granting class certification, reasoning that the ability to litigate damages issues without showing actual harm to each plaintiff mitigates "concerns . . . about the impermissible circumvention of individual proof requirements." Id. at 1306.

14

1  Although the court recognizes that plaintiffs in the instant action have not disclaimed their intention of
2  seeking actual damages, at the very least Six Mexican Workers suggests that plaintiffs' prospects for class
3  certification should not suffer because the Copyright Act provides for statutory damages. This view is
4  entirely consistent with the plain meaning of Rule 23(b)(3), which eschews any *per se* rule as to when a
5  class action is superior to other methods of litigation, as well as with the discretion conferred upon the
6  district court to determine the propriety of class certification based on the facts and circumstances of a
7  particular case. See Zinser, 253 F.3d at 1186 (observing that a district court "has broad discretion to
8  certify a class," provided that such discretion is "exercised within the framework of Rule 23") (citing
9  Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977)). To the extent that cases
10 outside the Ninth Circuit hold otherwise, the court declines to follow them.

11 That said, the court recognizes that under certain circumstances, large awards of statutory damages
12 can raise due process concerns. It is now settled law that "grossly excessive" punitive
13 damages awards violate the Due Process Clause. State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S.
14 408, 416 (2003); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562 (1996). In determining whether
15 punitive damages are excessive, the Supreme Court has identified the ratio between punitive and
16 compensatory damages as "the most commonly cited indicium of an unreasonable or excessive
17 . . . award." Gore, 517 U.S. at 580 (citations omitted). Extending the reasoning of Gore and its progeny, a
18 number of courts have recognized that an award of statutory damages may violate due process if the
19 amount of the award is "out of all reasonable proportion" to the actual harm caused by a defendant's
20 conduct. See, e.g., Parker v. Time Warner Entm't Co., 331 F.3d 13, 22 (2d Cir. 2003); see also In re
21 Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 350-51 (N.D.Ill. 2002), appeal dismissed, 346 F.3d
22 734 (7th Cir. 2003). In addition, some of these courts—most notably the Second Circuit—have also
23 suggested that these due process considerations are of particular concern in class actions, where the
24 aggregation of individual claims "may expand the potential statutory damages so far beyond the actual
25 damages suffered that the statutory damages come to resemble punitive damages." Parker, 331 F.3d at
26 22; see also Trans Union, 211 F.R.D. at 350-51 (declining to certify a class on the ground that the
27
28

15

available statutory damages would be "grossly disproportionate" to any actual harm suffered by the plaintiffs).

While these cases are doubtlessly correct to note that a punitive and grossly excessive statutory damages award violates the Due Process Clause, it is far from clear why class actions should be singled out for heightened scrutiny under such a theory. Indeed, the sum of the actual damages suffered by a class of plaintiffs will be the same regardless of whether their claims are prosecuted as a single class action or as a myriad of individual suits. In the absence of any theory to explain why the amount of statutory damages awarded would expand faster than the size of the class, the assumption that class action treatment exacerbates concerns about excessive damages awards is either a product of mathematical error or based on the assumption that defendants who injure large number of individuals are less culpable than those who spread the effects of their unlawful conduct less widely. While the former could be chalked up to the mathematical illiteracy of the legal profession, the latter rationale is clearly incompatible with the purpose of Rule 23, which is in part intended to serve as vehicle for redressing widely dispersed harm that might otherwise go uncompensated. See, e.g., Moeller v. Taco Bell Corp., 220 F.R.D. 604, 612 (N.D. Cal. 2004) (Jenkins, J.) (quoting Kaplan v. Pomerantz, 131 F.R.D. 118, 122 (N.D. Ill. 1990)) (observing that "[t]he class action procedure exists, in part, for the benefit of plaintiffs with small claims who could not otherwise vindicate their rights"). Under either of these premises, the conclusion that class action treatment might somehow influence the proportionality of a statutory damages award is logically flawed.

In any event, the excessiveness of statutory damages awards cannot be judged in the abstract. The factors that the court would consider in making such a determination are similar to the "guideposts" that the Supreme Court has identified in the context of reviewing the reasonableness of a jury award of punitive damages. State Farm, 538 U.S. at 418 (citing Gore, 517 U.S. at 575). These include: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the . . . damages award; and (3) the difference between the . . . damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. At this stage of the proceedings, there is simply nothing in the record that would permit the court to apply these "Gore factors" in an informed manner. Accord DirecTV, Inc. v. Spillman, No. Civ.A.SA-04-82-XR, 2004 WL

1875045, at *4 (W.D. Tex. Aug. 23, 2004) (observing that concerns regarding excessive statutory damages raised by the defendant's motion to dismiss were merely "hypothetical" and thus deferring any determination as to whether the ratio between actual and statutory damages would be unconstitutionally disproportionate). Indeed, if made at the class certification stage, such an inquiry would almost inevitably be speculative, based on a potential statutory maximum award rather than an actual jury verdict. Accordingly, the court finds Bertelsmann's attempt to introduce concerns about excessive statutory damages into the class certification process to be impracticable as well as logically flawed and therefore declines to consider such issues at this time.

Having rejected Bertelsmann's contention that the availability of statutory damages under the Copyright Act precludes certification of a class under Rule 23(b)(3), it is apparent that each of the factors set forth in Rule 23(b)(3) favors certification of the proposed class. The court therefore finds that plaintiffs have carried their burden of showing that a class action is superior to other methods of adjudicating the parties' dispute.

III.     Summary

In light of the considerations discussed above, the court finds that plaintiffs have satisfied each of the requirements for maintaining a class action under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.[5] Accordingly, the court certifies the proposed class with one minor modification. As noted above, plaintiffs seek certification of a class of music publisher-principals of the Fox Agency that own or control at least one copyrighted musical work that has without their permission been made available through the Napster service on or after October 30, 2000. This definition refers to the class members' copyright ownership in the present tense. However, 17 U.S.C. § 501(b) makes clear that a copyright owner may institute an infringement action only if one of his or her exclusive rights in the copyrighted work was violated "while he or she [was] the owner of it." 17 U.S.C. § 501(b); see also ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991) (citing 3 M. Nimmer, Nimmer on Copyright § 12-02, at 12-29 to -30 (1990)) (noting that "the assignor [of a copyright] retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment"). This rule implies that the definition of the class must be limited to individuals who owned or controlled the

copyrighted musical compositions at issue when the alleged acts of infringement occurred. The court therefore certifies a class consisting of music publisher-principals of the Fox Agency that *owned* or *controlled* at least one copyrighted musical work *at the time that it was made* available without their permission through the Napster service on or after October 30, 2000.

## CONCLUSION

For the foregoing reasons, the court GRANTS plaintiffs' motion for class certification. The certified class consists of all music publisher-principals of The Harry Fox Agency that owned or controlled at least one copyrighted musical work at the time that it was made available without their permission through the Napster service on or after October 30, 2000. This class is certified with respect to the claims asserted in plaintiffs' complaint: namely, that defendants Bertelsmann AG, Bertelsmann, Inc., and BeMusic, Inc. are contributorily and vicariously liable for acts of direct copyright infringement committed by Napster users. The named class representatives are Jerry Leiber, Mike Stoller, Frank Music Corporation, and Peer International Music Corporation. Pursuant to Federal Rule of Civil Procedure 23(g), the court appoints the counsel of record for the named plaintiffs to serve as counsel for the class.

IT IS SO ORDERED.

Date:   May 31, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. As noted above, plaintiff's have also proffered that Napster directly infringed their exclusive rights to distribute their copyrighted musical compositions by indexing the works that its users uploaded to the Napster network and that Bertelsmann is contributory and vicarious liability liable for this directly infringing conduct. Pls.' Statement Re Theory of Infringement at 5. This assertion similarly gives rise to questions of law and fact common to the class.

2. In fact, excerpts of deposition transcripts submitted in the record attest to the fact that the named plaintiffs are both familiar with the facts giving rise to the class members' claims and are participating actively in the prosecution of the instant action. See Eastman Dep. at 68 (testifying to frequent contact with counsel and an "active interest" in these proceedings); Stoller Dep. at 25 (accurately describing the investment in Napster that gave rise to plaintiffs' contributory and vicarious copyright infringement claims against Bertelsmann); Leiber Dep. at 7 (same). The court finds this testimony persuasive evidence that the extent of the class representatives' involvement in these proceedings is adequate to protect the interests of the absent class members

3. For the reasons stated in the court's discussion of the commonality requirement of Rule 23(a)(2), the court rejects Bertelsmann's contention that its knowledge of the Napster users' directly infringing conduct is an individual rather than a common issue.

4. Of course, such a wave of lawsuits would be unlikely to materialize given the burden that maintaining individual actions would place on the members of the class. This would certainly be one way to further the interests of judicial economy. However, as the following discussion of Rule 23(b)(3)'s superiority requirement demonstrates, such an outcome is clearly inconsistent with the purpose of the class action device.

5. Because the court's order does not limit the certification of the class to liability issues, it need not address Bertelsmann's argument that bifurcation of liability and damages issues would violate the Seventh Amendment's prohibition on submitting the same issue for consideration by two separate juries. See Arthur Young & Co. v. United States Dist. Court, 549 F.2d 686, 692-93 (9th Cir.), cert. denied, 434 U.S. 829 (1977). It is should be noted, however, the Bertelsmann's effort to inject Seventh Amendment concerns into the class certification process is premised on its mischaracterization of the secondary liability, willfulness, and statutory damages inquiries as individual rather than common issues. Bertelsmann is correct to point out that each of these determinations turns in part on whether it was aware of the acts of direct infringement allegedly committed by Napster users. However, in light of the notice procedures discussed in Part I.B, supra, and the fact that each of the alleged acts of direct infringement arose from an identical factual predicate (i.e., the reproduction or distribution of a copyrighted musical composition by a Napster user), the inquiry into whether Bertelsmann knew that Napster users were committing copyright infringement is undoubtedly one in which common questions of law and fact predominate. The court thus finds it unlikely that individual trials of such issues would be practical or efficient. Accordingly, at this time, the court has no reason to believe that class action treatment of plaintiffs' claims will be inconsistent with preserving the parties' Seventh Amendment right to a trial by jury.