1  GLENN D. POMERANTZ (State Bar No. 112503)
   KELLY M. KLAUS (State Bar No. 161091)
2  SUSAN TRAUB BOYD (State Bar No. 229664)
   MUNGER, TOLLES & OLSON LLP
3  355 South Grand Avenue, 35th Floor
   Los Angeles, CA  90071-1560
4  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
5  Attorneys for UMG Plaintiffs

6  PETER L. SIMMONS
   MITCHELL EPNER
7  FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
   One New York Plaza
8  New York, NY  10004-1980
   Telephone:    (212) 859-8000
9  Facsimile:    (212) 859-4000
   Attorneys for EMI Plaintiffs

10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13  IN RE NAPSTER, INC.                 CASE NO.  C-MDL-00-1369 (MHP)
    COPYRIGHT LITIGATION
14                                      **UMG AND EMI'S NOTICE OF MOTION**
                                        **AND MOTION FOR SUMMARY**
15                                      **JUDGMENT ON HUMMER**
                                        **WINBLAD'S COUNTERCLAIM;**
16                                      **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT**
17                                      **THEREOF**

18

19                                      Date:  December 19, 2005
                                        Time: 2:00 p.m.
20                                      Ctrm: 15 (Hon. Marilyn Hall Patel)

21  This Document Relates to:
22  UMG RECORDINGS, INC., et al.,       CASE NO.  C 04-1166 (MHP)
                    Plaintiffs,
23
    v.
24  HUMMER WINBLAD VENTURE
    PARTNERS, et al.,
25                  Defendants.

26

27

28

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on December 19, 2005, at 2:00 p.m., or as soon

3  thereafter as counsel may be heard in Courtroom 15 of the above-captioned Court, located at

4  450 Golden Gate Avenue, San Francisco, California, plaintiffs and counterclaim defendants

5  UMG Recordings, Inc., Interscope Records, and Motown Record Company, L.P.

6  (collectively, "UMG") and plaintiffs and counterclaim defendants Capitol Records, Inc.,

7  Caroline Records, Inc., Noo Trybe Records, Inc., Virgin Records America, Inc., Narada

8  Productions, Inc., Higher Octave Music, Inc., Priority Records, LLC, The Forefront

9  Communications Group, Inc., Jubilee Communications Inc., and EMI Christian Music

10  Group, Inc. (collectively, "EMI") (UMG and EMI are referred to jointly as "Plaintiffs"), will

11  and hereby do move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment

12  on the only pending counterclaim against them by defendants and counterclaim plaintiffs

13  Hummer Winblad Venture Partners IV, L.P. and Hummer Winblad Technology Fund IV,

14  L.P. (jointly, "Hummer Winblad" or "Hummer").  This motion is and will be brought on the

15  grounds that:

16      1.    Hummer does not have standing to pursue an antitrust claim that, if it exists at

17      all, is property of Napster's bankruptcy estate.  This claim may be pursued, if

18      at all, only by an estate representative.  Hummer is not the bankruptcy estate

19      representative.

20      2.    Hummer is barred by the doctrines of collateral and judicial estoppel from

21      pursuing any antitrust claim belonging to Napster, because that claim was part

22      of the assets administered by the bankruptcy trustee in Napster's bankruptcy

23      estate.

24  Both of these arguments apply equally to Hummer Winblad's claim under federal law

25  (count one of its counterclaim) and its claim under state law (count two of its counterclaim),

26  and this motion is directed to both of those causes of action.  As Hummer Winblad's third

27  cause of action (alleging a violation of California Business & Professions Code Section

28

1   17200) was dismissed and Hummer did not re-plead it, this motion seeks summary judgment

2   on the entirety of Hummer's remaining counterclaim.

3          This motion is based on this Notice of Motion and Motion, the attached

4   Memorandum of Points and Authorities, the Request for Judicial Notice and the Declaration

5   of Susan Traub Boyd filed concurrently herewith, the pleadings on file in this action, and on

6   such other and further matters as may be presented in a reply memorandum or at the hearing

7   on the motion.

8

9

10  DATED:  November 14, 2005                        /s/
                                        GLENN D. POMERANTZ
                                        MUNGER, TOLLES & OLSON LLP
11                                      355 South Grand Avenue
                                        Thirty-Fifth Floor
12                                      Los Angeles, CA  90071-1560
                                        Telephone:      (213) 683-9100
13                                      Facsimile:      (213) 687-3702

14                                      Attorneys for Plaintiffs
                                        UMG RECORDINGS, INC., INTERSCOPE RECORDS,
15                                      and MOTOWN RECORD COMPANY, L.P.

16  DATED:  November 14, 2005                        /s/
                                        PETER L. SIMMONS
17                                      FRIED, FRANK, HARRIS, SHRIVER &
                                          JACOBSON LLP
18                                      One New York Plaza
                                        New York, NY 10004
19                                      Telephone:      (212) 859-8000
                                        Facsimile:      (212) 859-4000
20
                                        Attorneys for Plaintiffs
21                                      CAPITOL RECORDS, INC., CAROLINE RECORDS,
                                        INC., NOO TRYBE RECORDS, INC., VIRGIN
22                                      RECORDS AMERICA, INC., NARADA
                                        PRODUCTIONS, INC., HIGHER OCTAVE MUSIC,
23                                      INC., PRIORITY RECORDS, LLC, THE FOREFRONT
                                        COMMUNICATIONS GROUP, INC., JUBILEE
24                                      COMMUNICATIONS INC., and EMI CHRISTIAN
                                        MUSIC GROUP, INC.
25

26

27

28

1140420.1                              - 2 -

# I.

## **INTRODUCTION**

This Court has ruled that Hummer Winblad cannot have standing under the antitrust laws to pursue its counterclaim against UMG and EMI unless Hummer Winblad proves that it is Napster's alter ego. *In re Napster, Inc. Copyright Litigation*, 354 F. Supp. 2d 1113, 1120-22 (N.D. Cal. 2005) ("February 3 Order").  Because Napster filed for bankruptcy, however, Hummer Winblad cannot pursue the counterclaim – whether as Napster's alter ego or otherwise – based on two bedrock principles of federal bankruptcy law.

*First*, the antitrust claim that Hummer Winblad seeks to pursue was property of Napster's bankruptcy estate, and *only* the bankruptcy trustee or the estate's representative has standing to pursue a claim that is property of the estate.  Hummer Winblad is not an authorized representative of the Napster bankruptcy estate, and therefore it lacks standing to pursue the counterclaim even if it were Napster's alter ego.

*Second*, Hummer Winblad cannot pursue the claim in any event because the Napster bankruptcy case has been formally closed without the antitrust claim having been pursued or properly preserved.  The very purpose of the Chapter 11 case was to marshal and administer *all* of the assets of Napster's estate for the benefit of its creditors.  The antitrust claim was not listed in Napster's bankruptcy schedules, raised as an objection to Plaintiffs' proof of claim, nor properly preserved by Napster's Chapter 11 plan.  Thus, as a matter of law, it did not survive the final order closing the bankruptcy case.  Had Hummer Winblad wanted Napster's antitrust claim to be pursued, it was obligated to attempt to have the estate's authorized representative do so during the bankruptcy case, where Hummer Winblad claimed to be a Napster creditor as well as one of Napster's equity holders.  The final Bankruptcy Court orders approving the Chapter 11 Plan and closing the case operate as final judgments that bar Hummer under claim preclusion rules from attempting to pursue the estate's antitrust claim in a later proceeding.

Hummer will respond that it is unfair to hold its claim barred by these limitations of federal bankruptcy law.  But the only unfairness afoot is Hummer's attempt to end-run the

- 1 -

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1   bankruptcy rules to try to secure for itself the benefits of a Napster antitrust claim without

2   bearing any of the burdens that would follow from Hummer being held to be Napster's alter

3   ego.  Most notably, were Hummer Winblad able to prove it was Napster's alter ego, then that

4   would mean that Hummer Winblad should have put its funds and the assets of its limited

5   partners into the bankruptcy estate, so that those funds could have been shared by all

6   creditors of Napster who were left with pennies on the dollar for the debts Napster owed

7   them.  These debts include the billion-plus dollars in claims against Napster that were

8   *allowed* – and that therefore are deemed adjudicated and final – on behalf of Plaintiffs and

9   other copyright owners whose rights were violated on a massive scale through the use of the

10  Napster system.  Hummer Winblad did not, however, put its assets into the estate.  Hummer

11  made a calculated gamble (as summed up by John Hummer himself) to try to flip its $14

12  million investment into "a multi, multi billion dollar" return in the "Napster Nation."

13  Deposition of John Hummer 92:21 – 93:24, 276:2 - 277:22 & Ex. 165; Declaration of Susan

14  Traub Boyd ("Boyd Decl.") ¶ 2, Ex. A.  Yet Hummer Winblad quickly distanced itself from

15  the estate when the time came to pay up on Napster's liabilities.  Hummer Winblad cannot

16  now turn around and try to obtain for itself the benefit of being Napster's alter ego without

17  having assumed the obligations of that status.

18                                            **II.**

19                                      **BACKGROUND**

20          As is well known, Napster was an illegal internet file sharing service that facilitated

21  the peer-to-peer exchange of MP3 music files in violation of copyrights held by Plaintiffs and

22  numerous other parties.  *See A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896 (N.D.

23  Cal. 2000); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) (collectively,

24  *"Napster I"*).  Hummer Winblad is a venture capital firm that invested more than $14 million

25  in Napster in May 2000, installed one of its representatives as CEO to run Napster and

26  protect its investment, took two of the three seats on Napster's board of directors, and hoped

27  to reap billions of dollars from the deal.  Plaintiff's Complaint ¶¶ 2, 23-24, 39; Hummer

28  Winblad's Answer, ¶¶ 2, 23-24, 39.  Plaintiffs allege that, as a result of Hummer Winblad's

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1  material contributions to and inducement of millions upon millions of acts of infringement,

2  as well as Hummer's deliberate refusal to stop the infringing activity it had the right and

3  ability to supervise, Hummer is contributorily and vicariously liable under well-established

4  principles of copyright law.  Complaint ¶¶ 37-44.[1]

5  **A.**    **The Napster Bankruptcy Case**

6         Napster filed for bankruptcy in the District of Delaware in July 2002, a year after its

7  online file-sharing service was shut down because it could not operate legally in compliance

8  with this Court's duly issued and affirmed preliminary injunction.  Numerous parties had

9  standing and chose to participate in Napster's bankruptcy case, including Plaintiffs, Hummer

10  Winblad, and Napster.  As an equity holder in Napster, Hummer Winblad was a party in

11  interest.  11 U.S.C. § 1109(b).  *See also* First Amended Disclosure Statement, Plaintiff's

12  Request for Judicial Notice ("RFJN"), Tab 1.  Hummer Winblad also participated as a

13  creditor; specifically, Hummer Winblad filed five proofs of claim.  *See* Orders Disallowing

14  Hummer Winblad's Proofs of Claim, RFJN, Tabs 2-3.  Plaintiffs also participated as

15  creditors.  *See* UMG and EMI Proof of Claim, RFJN, Tab 4.

16         On September 27, 2002, the Bankruptcy Court appointed a Chapter 11 trustee

17  ("Trustee") to administer the Napster bankruptcy estate.  *See* Motion for Entry of a Final

18  Decree, RFJN, Tab 5, ¶¶ 11-13.  Upon appointment, the Trustee became the sole

19  representative of the Napster bankruptcy estate, with broad powers to act in the best interests

20  of the Napster estate.  11 U.S.C. §§ 704, 1106.  Among these were the powers to "collect and

21  reduce to money the property of the estate," and "make a final report and file a final account

22  of the administration of the estate" with the Bankruptcy Court.  *Id.*

23  _____

24  [1] These principles of copyright law do not require Plaintiffs to plead or prove that Hummer
Winblad was Napster's alter ego.  Rather, for the jury to find that Hummer Winblad is

25  contributorily liable, it need only find that (1) Hummer Winblad had the requisite knowledge
of the infringement, and (2) Hummer Winblad induced, caused or materially contributed to

26  the infringing activity.  *See Gershwin Publ'g Corp.* v. *Columbia Artists Mgmt., Inc.*, 443 F.2d
1159, 1162 (2d Cir. 1971).  To find Hummer Winblad vicariously liable, the jury need only

27  determine that Hummer "profit[ed] from direct infringement while declining to exercise a
right to stop or limit it."  *Metro-Goldwyn-Mayer Studios, Inc.* v. *Grokster*, 125 S. Ct. 2764,
2776 (2005).  None of the determinations necessary for Plaintiffs' case equate to an alter ego

28  finding.

1    The Trustee also had the power by statute to examine and object to proofs of claim.

2    *See* 11 U.S.C. §§ 704(a)(5), 1106.  A "proof of claim" is a formal filing that spells out an

3    interested party's claim to some or all of the debtor's assets.  *See* Fed. R. Bank. P. 3001.  If

4    neither the trustee nor any other interested party objects to the proof of claim, then that claim

5    is "allowed" and becomes a claim on the debtor's assets according to the priority scheme for

6    distribution established by statute and the plan confirmed by the bankruptcy court.[2]  *See* 11

7    U.S.C. § 502(a).  In the Napster bankruptcy case, UMG and EMI, along with numerous other

8    *Napster I* plaintiffs, filed proofs of claims based on unliquidated damages claims against

9    Napster totaling over a billion dollars.  *See* UMG and EMI Proofs of Claim, RFJN, Tab 4.

10   Neither the Trustee, Hummer Winblad (who also had standing to object), nor any other party

11   to the bankruptcy case objected to the proof of claim filed by Plaintiffs.  *See* Docket in the

12   Napster Bankruptcy Case, RFJN, Tab 6 (no objection is reflected).  As a consequence,

13   Plaintiffs' claims were deemed "allowed" and UMG and EMI were entitled to a distribution

14   based on those claims from the bankruptcy estate in accordance with the priorities

15   established by the Bankruptcy Code and Napster's Chapter 11 Plan.

16   The Trustee also had broad authorization to bring affirmative causes of action on

17   behalf of Napster.  *See* 11 U.S.C. §§ 704(a)(1), 1106.  "With or without court approval," a

18   bankruptcy trustee may "commence and prosecute any action or proceeding in behalf of the

19   estate before any tribunal."  Fed. R. Bankr. P. 6009.  The Trustee, however, did not pursue

20   any antitrust claim on behalf of Napster.

21   The fact that the Trustee did not attempt to prosecute the antitrust claim that Hummer

22   now tries to pursue was not because the claims were undiscovered.  On the contrary, the

23   factual allegations underlying the antitrust counterclaim that Hummer Winblad has filed in

24   this case were very well known at the time of the Napster bankruptcy.  Napster had raised the

25   same allegations in the context of its misuse defense in *Napster I*.  *See In re Napster*, *Inc.*

26

27   ───────────────
     [2] In many cases, of course, the distribution will be less than the amount of the allowed claim,
     because the value of the assets of the estate typically do not equal the amount of the claims
28   allowed against the estate.

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1   *Copyright Litigation*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002).  Ultimately, the Trustee did not

2   spend estate assets to pursue an antitrust claim.  Indeed, Napster's own General Counsel,

3   Jonathan Schwartz had concluded that such a claim was extremely unlikely to succeed on the

4   merits:

> There has been the suggestion that by preserving legal claims against
> B[ertelsmann] – an affirmative antitrust action and other unspecified lawsuits
> – we will leave the company with a valuable asset for a Chapter 7 trustee to
> pursue.  Well, no one at the company has devoted more energy to the antitrust
> claims than I have.  For several months, I conferred with our lawyers and
> other outside experts about the prospects of mounting an affirmative antitrust
> lawsuit against the labels . . . In my judgment, there is only a very remote
> chance that Napster, as a private plaintiff, would obtain a significant dollar
> judgment against B and the other labels that would withstand appeal.

10   *See* Deposition of Hank Barry 524:17 - 525:14; 562:6 – 563:6 & Ex. 266 at NAP-CD-

11   0053508, Boyd Decl. ¶ 3, Ex. B, ("Schwartz Email").

12   The Trustee disposed of the principal assets of the Napster estate through a sale to

13   Roxio, Inc., on November 15, 2002.  *See* Roxio Sale Order, RFJN, Tab 7.

14   The Bankruptcy Court confirmed Napster's Chapter 11 Liquidating Plan ("Chapter 11

15   Plan") on March April 20, 2004 – nearly a year to the day *after* Plaintiffs had filed their

16   complaint against Hummer Winblad.  *See* Plan Confirmation Order, RFJN, Tab 8.  That plan

17   vested all of the estate's remaining assets, including any causes of action, into a liquidating

18   trust or reorganized debtor called Enco-1.  Chapter 11 Plan, RFJN, Tab 1 at Exhibit A,

19   § 8.06.  But the Chapter 11 Plan did not specifically identify or provide for the post-

20   confirmation pursuit of any type of antitrust claim.  *Id.*  Instead, the plan provided only for a

21   general reservation of Napster's causes of action.  Section 8.06 of the Chapter 11 Plan states:

> The property of the Debtor's respective Estates shall not be revested in the
> Debtor on or following the Confirmation Date or the Effective Date but shall
> remain property of the Debtors' respective Estates and continue to be subject
> to the jurisdiction of the Bankruptcy Court following confirmation of the Plan
> until distributed to holders of Allowed Claims and Interest in accordance with
> the provisions of the Plan and Confirmation Order. . . . Reorganized Enco-1
> shall be the successor in interest to (and assignee of) any and all Causes of
> Action and Avoidance Actions, defenses . . . that the Debtors or the
> Committee would be entitled to prosecute, provided, however, that the
> proceeds (if any) from such Causes of Action shall be distributed in
> accordance with Article V of the Plan.

1   The Chapter 11 Plan appointed a "Plan Administrator" to oversee the distribution process,

2   including the administration of Enco-1.  Chapter 11 Plan, RFJN, Tab 1 at Exhibit A, § 8.01.

3          The confirmed Chapter 11 Plan is binding on all creditors and interest holders,

4   including Hummer Winblad.  Specifically, section 14.01 of the Chapter 11 Plan states, "[t]he

5   provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the

6   Estates, any holder of any Claim or Interest treated herein or any Person named or referred to

7   in the Plan . . ."  Chapter 11 Plan, RFJN, Tab 1 at Exhibit A, § 14.01.  Hummer Winblad, as

8   an interest holder, had an opportunity to object to the confirmation of the Chapter 11 Plan.

9   *See* 11 U.S.C. § 1109(b).  It did not do so.

10          The Plan Administrator moved to close the Bankruptcy Estate on November 9, 2004,

11   nearly five months *after* this Court had denied Hummer Winblad's motion to dismiss

12   Plaintiffs' complaint in this lawsuit.  *See* Motion for Entry of a Final Decree, RFJN, Tab 5.

13   The Administrator stated that:

14          The Plan Administrator, on behalf of the Reorganized Debtor, does not
       anticipate filing any further motions, applications, or pleadings in these cases.
15       Moreover, all motions, contested matters, and other pleading previously filed
       in the Chapter 11 Cases have been resolved.
16

17   *Id.* at ¶ 43.  The Bankruptcy Court approved the motion and closed the estate.  See Final

18   Decree, RFJN, Tab 9.[3]

19          During the bankruptcy proceedings, Hummer Winblad did not object to any of the

20   Trustee's decisions, Plaintiffs' proof of claim, the Confirmation of the Chapter 11 Plan, or to

21   the motion to close the Napster bankruptcy case.  Nor did Hummer Winblad make any effort

22   to get the Trustee to pursue Napster's potential antitrust claim.  Further, at no time during the

23   bankruptcy case did Hummer Winblad assert that it was Napster's alter ego, much less offer

24   to contribute its assets into the estate for distribution to Napster's creditors.

25

26

27   [3] On August 23, 2005, the bankruptcy case was reopened for the limited purpose of enforcing
     the Court's order approving the asset sale to Roxio.  RFJN, Tab 10, ¶ 7 (reopening the case
28   "for the purpose of granting the relief set forth herein").

**B.**     **Hummer Winblad's Attempt to Pursue Napster's Antitrust Claim in This**

**Litigation**

Hummer Winblad filed its answer and counterclaim in this case on August 13, 2004, alleging a Sherman Act Section 1 and Cartwright Act conspiracy to restrain trade in a "market for the online distribution of recorded music." Counterclaim ¶ 27. Hummer asserted that Plaintiffs, as well as certain other music labels (including BMG, then a wholly owned subsidiary of defendant Bertelsmann), aimed "to destroy any online music distribution service they did not own or control, or force such services to do business with them on exclusive and/or other anticompetitive terms." *Id*. ¶ 22. To that end, Hummer Winblad alleged that MusicNet and pressplay were "captive joint ventures," "through which plaintiffs and their co-conspirators imposed anticompetitive contract terms in the form of unduly restrictive licensing agreements[,]" and intended to fix prices. *Id*. ¶¶ 24, 25. Hummer Winblad claimed that these alleged acts injured participants in the "online distribution" market, and thereby "successfully destroyed" Napster. *Id*. ¶ 35. Hummer Winblad also alleged that it participated in and was injured in an "upstream market for the investment in and financing of online music distribution ventures." *Id*. ¶ 38.

Plaintiffs moved to dismiss both of these claims, arguing that Hummer Winblad had not alleged antitrust standing sufficiently. Hummer Winblad responded by asserting two theories of standing: (1) that it had antitrust standing by virtue of its participation "in the market for 'the financing of online recorded music distribution ventures'" and (2) that it had antitrust standing because it participated, as Napster's shareholder, in the "online music distribution market." February 3 Order, 354 F. Supp. 2d at 1119, 1122. The Court rejected as unduly speculative Hummer Winblad's claim based on the market for "financing" online recorded music venture. *Id*. at 1122-23. With respect to Hummer Winblad's other theory of standing, as a Napster shareholder, in the market for online music distribution, the Court agreed with Plaintiffs that Hummer Winblad's own allegations did not establish antitrust standing. *See id*. at 1120 (noting that "the Ninth Circuit has consistently held that 'a shareholder of a corporation injured by antitrust violations has no standing to sue in his or her

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1   own name'").  Nevertheless, the Court concluded that an "alter ego theory" might be

2   "sufficient to establish that Hummer suffered antitrust injury," stating that "some courts have

3   recognized an exception to the rule against shareholder standing where there is such a unity

4   of interest and ownership that piercing the corporate veil is appropriate[.]"  *Id.* at 1120-21.

5          Thus, this Court allowed Hummer Winblad to proceed on the ground that *Napster*

6   may have standing to assert the antitrust claim and Hummer Winblad may be shown to stand

7   in Napster's shoes.  Following this Court's ruling, Hummer Winblad then confirmed in its

8   discovery responses that it alleges no antitrust injury of its own in the market for the online

9   distribution of recorded music; Hummer Winblad's antitrust claim is simply an antitrust

10  claim belonging (if to anyone) to Napster.  Hummer Winblad specifically *denied* that

11  "between May 1, 2000 and July 2, 2001, or any portion of that time period, there was such a

12  unity of interest and ownership between Napster and Hummer Winblad that any antitrust

13  injury to Napster was in fact suffered by Hummer Winblad" – but added the self-serving

14  assertion that "if a trier of fact in this case ultimately concludes that Hummer Winblad did

15  have such a right and ability to control, then Hummer Winblad admits that as a matter of law

16  Hummer Winblad would have [antitrust standing]."  Boyd Decl at ¶ 4, Ex. C.  *See also*

17  September 2, 2005 Letter from Hummer's counsel (Ms. Anderson) to Plainitffs' Counsel

18  (Messrs. Pomerantz and Simmons), Boyd Decl. ¶ 5, Ex. D.  ("the noticed entities [*i.e.* the

19  Hummer Winblad partnerships who are counterclaimants] have not alleged that they

20  themselves sought to enter "the market for the online distribution of recorded music").

21  Hummer Winblad's admission that it is only seeking to assert Napster's rights confirms that

22  the counterclaims must be dismissed as a matter of law.

23                                    **III.**

24                               **ARGUMENT**

25          Summary judgment must be entered "against a party who fails to make a showing

26  sufficient to establish the existence of an element essential to that party's case, and on which

27  that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

28  (1986).  Issues of standing, judicial estoppel, and claim preclusion are all appropriately

1  resolved on summary judgment.  *See Kalb Voorhis & Co. v. American Financial Corp.*, 8

2  F.3d 130, 132 (2d Cir. 1993) (standing is a question of law); *Hay v. First Interstate Bank of*

3  *Kalispell*, 978 F.2d 555 (9th Cir. 1992) (granting summary judgment based on estoppel);

4  *Siegal v. Federal Home Loan Mortgage Co.*, 143 F.3d 525 (9th Cir. 1998) (granting

5  summary judgment based on claim preclusion).  Here, no material fact is in dispute and, as a

6  matter of law, Hummer Winblad cannot pursue Napster's antitrust claim as Napster's alter

7  ego.  Accordingly, Plaintiffs are entitled to summary judgment.

8  A.      **Only A Representative of Napster's Bankruptcy Estate, And Not Hummer**

9          **Winblad, May Prosecute A Claim Based On Alleged Antitrust Injury To**

10         **Napster**

11         The Court's February 3 Order limits Hummer Winblad to pursuing an antitrust claim

12  that, to the extent it may be brought at all, could only be brought by Napster and therefore

13  was property of the bankruptcy estate.  Hummer Winblad's discovery responses confirm this

14  result; Hummer Winblad admits that it suffered no antitrust injury of its own but seeks only

15  to assert a claim that belongs, if to anyone, then to *Napster*.  Even assuming that claim was

16  not barred by the orders entered in the Napster bankruptcy case – and it was, for the reasons

17  discussed below - Hummer Winblad has no standing to pursue it.  As a matter of federal

18  bankruptcy law, any claim to be brought on Napster's behalf is property of the Napster

19  bankruptcy estate, which the Napster trustee (or its appointed representative) has the

20  exclusive right to prosecute.  This conclusion follows inexorably from the nature of federal

21  bankruptcy law and the provisions of the Bankruptcy Code.

22         1.      **The Antitrust Claim Hummer Winblad Seeks To Assert**

23                 **Constitutes Property Of Napster's Bankruptcy Estate**

24         In language that the Ninth Circuit has said is "sweeping," the Bankruptcy Code

25  provides that the filing of a bankruptcy petition creates an estate that includes "all legal or

26  equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C.

27  § 541(a)(1).  *See In re Gerwer*, 898 F.2d 730, 732 (9th Cir. 1990).  The existence of the

28  estate is critical to federal bankruptcy law's policy of marshalling all of the debtor's assets in

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1    one proceeding and distributing them in accordance with a priority framework governed by

2    federal statute.  It is black letter law that a cause of action belonging to the debtor is property

3    that belongs to the estate, since the potential recovery on such a claim represents an asset that

4    (if it can be realized) must be distributed to creditors and other interest holders in accordance

5    with the federal priority scheme.  *Sierra Switchboard Co. v. Westinghouse Elec. House*, 789

6    F.2d 705 (9th Cir. 1986).

7          The test for determining whether a claim is "property of the estate" is very simple: if

8    the debtor could have raised the claim at the commencement of the bankruptcy case, the

9    claim belongs to the estate.  *In re Matter of Educators Group Health Trust*, 25 F.3d 1281,

10   1284 (5th Cir. 1994).  There is no doubt that the claim Hummer Winblad purports to advance

11   falls into this category.  Although UMG and EMI vigorously dispute this claim on the merits,

12   the fact is that *Napster* already had raised the antitrust issue under the heading of a misuse

13   defense in the *Napster I* litigation before filing for bankruptcy.  *See In re Napster, Inc.*

14   *Copyright Litigation*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002).  Indeed, this Court said in its

15   February 3 order that "[t]here is no doubt that if Hummer's counterclaims were brought by

16   Napster itself (or its trustee in bankruptcy), the company would have [antitrust] standing" to

17   bring them.  February 3 Order, 354 F. Supp. at 1118.

18         Thus, the claim Hummer Winblad seeks to assert was property of the estate, and

19   remains property of the estate *permanently*.  "Unscheduled property remains 'property of the

20   estate' after the case is closed (i.e. forever)."  *In re Associated Vintage Group*, *Inc.*, 283 B.R.

21   549, 566 n.14 (9th Cir. B.A.P. 2002).  *See also* 11 U.S.C. § 554(d).  Napster's Chapter 11

22   Plan confirms that estate property "shall remain property of the Debtors' respective Estates

23   and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation

24   of the Plan."  Chapter 11 Plan, RFJN, Tab 1 at Exhibit A, § 8.06.

25

26

27

28

1       **2.**     **Only The Bankruptcy Estate Representative Has Standing To**

2             **Administer Bankruptcy Estate Property, Including Causes of**

3             **Action**

4       If a cause of action is property of the estate, there is a strict limitation on *who* may

5 assert it.  Specifically, "[i]f a cause of action belongs to the estate, then the trustee has

6 *exclusive* standing to assert the claim."[4]  *Matter of Educators*,  25 F.3d at 1284.  *See also In*

7 *re Morpheus Lights*, 228 B.R. 449, 453 (Bankr. N.D. Cal. 1998) ("A creditor-plaintiff only

8 has standing if the claim is not property of the estate because property of the estate does not

9 belong to any individual creditor") (citing *Kalb*, 8 F.3d at 132).  This rule furthers the

10 fundamental purpose of bankruptcy law by supplying a centralized process for controlling the

11 disposition of all of the debtor's assets, according to the carefully selected priorities of the

12 Bankruptcy Code.

13       Hence, even if Hummer Winblad is Napster's alter ego, it cannot bring an antitrust

14 claim.  Only a representative of the bankruptcy estate may now pursue the claim.  *See Lovett*

15 *v. General Motors Corp.*, 975 F.2d 518 (8th Cir. 1992) (corporation's purported "alter ego"

16 lacked standing to bring claims that were resolved by the bankruptcy trustee).[5]  This result

17 makes sense.  Where, as here, a corporation has an *opportunity* to pursue a claim "either

---

[4] The Bankruptcy Code's reference to a trustee also applies to the debtor in possession, or an estate representative appointed pursuant to Bankruptcy Code § 1123.  *See* 11 U.S.C. §§ 1107, 1123.  Here, a Trustee was appointed to replace the officers and directors of Napster.  The Trustee alone spoke for Napster.

[5] An earlier proceeding in the *Lovett* matter – in which the sole shareholder of a corporation alleged that it had standing to pursue the corporation's antitrust claims because it was the corporation's alter ego – was cited by this Court in its February 3 Order.  *See John Peterson Motors Inc. v. General Motors Corp.*, 613 F. Supp 887 (D. Minn. 1985).  It should be noted that the case has subsequent history that bears on both the bankruptcy standing issues discussed in this memorandum as well as the conclusion that Hummer Winblad has antitrust standing.  As this Court noted in its February 3 Order, the district court initially agreed that the sole shareholder had standing under the antitrust laws.  *See id.* at 902-03.  The district court reasoned, in part, that because the corporation had declared bankruptcy, there was no risk of double recovery by allowing the alter ego to pursue corporate claims.  *Id.* Subsequently, however, the bankruptcy trustee pursued the corporation's antitrust claims, and the District Court reversed its prior ruling.  *See Lovett*, 975 F.2d at 520.  The Eighth Circuit affirmed the latter result, stating that even if alter ego were proven, the claims had been resolved in bankruptcy.  *Lovett*, 975 F.2d at 521.  Moreover, denying alter ego standing was "in harmony with the numerous cases routinely denying antitrust standing to a corporation's sole shareholders."  *Id.*

1  directly *or through a bankruptcy trustee*, no equitable reason is seen for disregarding [the

2  corporate form] and allowing individuals to bring private actions for their personal benefit."

3  *Bishay v. American Isuzu Motors*, 404 F.3d 491, 496 (1st Cir. 2005) (emphasis added).  Here,

4  the Napster Trustee or estate representative could have "commence[d] and prosecuted[d]" the

5  antitrust claim at any time, "[w]ith or without court approval."  Fed. R. Bankr. P. 6009.  *See*

6  *also* 11 U.S.C. §§ 704, 1106.  The Trustee chose not to do so.  That litigation decision was

7  the Trustee's to make – and the Trustee's alone.  There is no equitable reason for

8  disregarding the corporate form to grant Hummer standing, *see Bishay*, 404 F.3d at 496, and

9  certainly no basis to circumvent a bedrock principle of the federal bankruptcy law in order to

10  do so.  *See Matter of Educators*, 25 F.3d at 1284; *Morpheus Lights*, 228 B.R. at 453; *Kalb*

11  *Voorhis & Co.*, 8 F.3d at 132.

12  **B.**     **Actions Taken By Napster's Bankruptcy Estate Representative Preclude**

13          **Litigation of Napster's Antitrust Claims Now**

14          Separate and apart from Hummer Winblad's lack of standing, its claim fails for the

15  independent reason that not even the Napster Trustee, much less Hummer Winblad, could

16  now bring that claim.  The claim is barred by judicial estoppel and claim preclusion because

17  the claim was not listed on Napster's bankruptcy schedules, raised as an objection to

18  Plaintiffs' proof of claim, or properly preserved by the Chapter 11 Plan or Napster's

19  disclosure schedules.  *See Hay v. First Interstate Bank of Kalispell*, 978 F.2d 555 (9th Cir.

20  1992) (granting summary judgment based on judicial estoppel where claims were not raised

21  in bankruptcy case); *Siegal v. Federal Home Loan Mortgage Co.*, 143 F.3d 525 (9th Cir.

22  1998) (granting summary judgment on claim preclusion grounds were claims were not raised

23  as an objection to a proof of claim); *In re Salvatore DiSalvo*, 219 F.3d 1035 (9th Cir. 2000)

24  (dismissing, on claim preclusion grounds, former debtor's abuse of process claim because

25  that claim could and should have been brought during prior bankruptcy case) (citing Fed. R.

26  Bankr. P 6009).

27

28

**1.      The Antitrust Claim Is Barred by Judicial Estoppel**

Hummer Winblad's antitrust claim – which is really Napster's antitrust claim – is barred under the doctrine of judicial estoppel.  A party must specifically disclose all potential adversary claims in its bankruptcy schedules, and specifically preserve in its Chapter 11 Plan any intent to pursue adversary claims post-plan confirmation.  *Hay*, 978 F.2d at 557; *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).  Napster did not specifically preserve this antitrust claim – and neither Hummer Winblad nor any other party to the bankruptcy proceeding even suggested it do so – and therefore the claim cannot be revived now.

Judicial estoppel precludes a party from taking a position in a judicial proceeding that is inconsistent with a position taken by that party in a prior proceeding.  *See Wagner v. Professional Engineers in California Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004).  "Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.'"  *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).  This doctrine is invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of the judicial proceedings.'"  *Hamilton*, 270 F.3d at 782 (alterations in original).

Under federal bankruptcy law, a party that fails to disclose its intent to bring a claim is judicially estopped from taking the later, inconsistent position of prosecuting an undisclosed claim.  As the Ninth Circuit has summarized, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganized plan or otherwise mentioned in the debtor's schedules or disclosure statements."  *Hamilton*, 270 F.3d at 783.  The reason is simple.  Chapter 11 is "essentially a structured negotiation conducted under rules prescribed by the Bankruptcy Code" which results in a confirmed plan.  *Associated Vintage Group*, 283 B.R. at 560.  Creditors (such as Plaintiffs) "vote on the plan on the basis of how the Plan treats their claims."  *In re Kelley*, 199 B.R. 698, 703 (9th Cir. B.A.P. 1996).  Similarly, the Bankruptcy Court makes its rulings based on the debtor's

1  statements in the disclosure schedules and on the language of the Chapter 11 plan.  *See*

2  *Hamilton*, 270 F.3d at 784 (a bankruptcy court "accepts" a debtor's bankruptcy schedules by

3  making rulings in reliance on those statements).  In short, "[b]oth the Court and [the debtor's]

4  creditors base their actions on the disclosure statements and schedules." *Id.* at 784.

5        In *Hamilton*, the Ninth Circuit affirmed summary judgment against a former debtor

6  who brought claims against his insurance company based on pre-petition events.  *Id.*

7  Because the debtor failed to assert those claims during the bankruptcy case, judicial estoppel

8  applied.  Similarly, in *Hay*, 978 F.2d at 557, the court held at summary judgment that a

9  Chapter 11 debtor was estopped from bringing breach of contract claims not raised during the

10  bankruptcy case.

11        The same result obtains here.  Even though Napster was fully aware of potential

12  antitrust claims it might bring, Napster (itself and through the Napster trustee) chose not to

13  assert any such antitrust claim.  Nor did it signal any intention to do so, either before or after

14  the plan was confirmed.  Just like the debtors in *Hamilton* and *Hay*, Napster failed to list any

15  potential antitrust claim in its bankruptcy schedules.  *See* Schedules of Assets and Liabilities,

16  In re Napster Inc., RFJN, Tab 11, Schedules B (items 20 and 33), B20, and B33 (no setoff or

17  counterclaim against Plaintiff listed under "other contingent and unliquidated claims of every

18  nature, including . . . counterclaims of the debtor and rights to setoff claims").[6]  Moreover,

19  Napster's Chapter 11 plan failed to signal in any way that any antitrust claim would be

20  litigated after the plan was confirmed.  *See* RFJN, Tab 1 at Exhibit A, § 8.06.  And the Plan

21  Administrator specifically averred, in its motion to close the bankruptcy estate, that no

22  further actions were anticipated.  Motion for a Final Decree, RFJN, Tab 5, ¶ 43.

23        The Bankruptcy Court accepted these statements (express and implied) when it

24  confirmed Napster's Chapter 11 Plan and, later, by closing the bankruptcy case.  *Hamilton*,

25  270 F.3d at 784.  Further, Hummer Winblad did not object or suggest that Napster's antitrust

26

---

27  [6] Similarly, the Schedules of Assets and Liabilities for Napster Music Co. Inc. and Napster
   Mobile Co. Inc. contain no listing of a setoff or counterclaim against Plaintiffs.  RFJN Tabs
28  12-13, Schedule B (items 20 and 33).

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1   claims be pursued or preserved – notwithstanding Hummer's ability to do either in the

2   bankruptcy proceeding.  *See* 11 U.S.C. 1109(b).  Judicial estoppel therefore applies.  "The

3   courts will not permit a debtor to obtain relief from the bankruptcy court by representing that

4   no claims exist and then subsequently to assert those claims for his own benefit in a separate

5   proceeding."  *Id.*

6          **2.      The Doctrine of Claim Preclusion/Res Judicata Bars Further**

7                     **Prosecution of the Antitrust Claim**

8          The Napster claim that Hummer Winblad attempts to assert also is barred under well-

9   established principles of claim prelusion.  *Siegal*, 143 F.3d at 528; *Disalvo*, 219 F.3d at 1038-

10  39.  Claim preclusion applies where: (1) there is a final judgment on the merits; (2) the

11  judgment is by a court of competent jurisdiction; (3) the same cause of action is involved in

12  both cases; and (4) the second action involves the same parties.  *Siegal*, 143 F.3d at 528-30.

13  Here, Napster's antitrust claim is precluded both because Plaintiffs' proof of claim was

14  allowed (an outcome that necessarily resolved any antitrust defense or set-off) and for the

15  separate and additional reason that Napster's Chapter 11 Plan was confirmed without

16  properly preserving this claim.  In addition, no one, including Hummer Winblad (who had

17  standing to do so), objected to Plaintiffs' claims or the confirmation of Napster's Chapter 11

18  Plan.

19                     **a.      The Allowance of Plaintiffs' Proof of Claim**

20         The Bankruptcy Trustee could have advanced Napster's antitrust claims as a basis for

21  attacking Plaintiffs' proof of claim, but it did not.  Thus, when the Bankruptcy Court allowed

22  Plaintiffs' proof of claim, this final judgment extinguished Napster's antitrust claim.  *Siegal*,

23  143 F.3d at 529 ("the allowance or disallowance of 'a claim in bankruptcy is binding and

24  conclusive on all parties and their privies, and being in the nature of a final judgment,

25  furnishes a basis for a plea of res judicata'").

26         *Siegal* is squarely on point.  In *Siegal*, Freddie Mac filed proofs of claim against the

27  debtor for past due mortgage payments.  *Id.* at 530.  Because the debtor did not object to the

28  claim, the claim was deemed allowed.  *Id.*  Subsequently, the debtor brought suit against

1    Freddie Mac in tort and contract regarding Freddie Mac's actions in foreclosing on the

2    debtor's property. *Id.* at 527. The Ninth Circuit affirmed the grant of summary judgment

3    based on claim preclusion. *Id.* The court reasoned that the allowance of a claim constituted

4    a final judgment entered by a court of competent jurisdiction, thus satisfying the first two

5    claim preclusion requirements. *Id.* at 527, 530. The debtor noted that the claim had been

6    "deemed allowed" (because, as with Plaintiffs' claims in the Napster bankruptcy case, no one

7    objected) and thus argued that there had never been an affirmative order by the bankruptcy

8    court. *Id.* at 530. The court found this distinction irrelevant, holding that "there can be little

9    doubt about the ultimate res judicata effect of [an order that formally allows a claim]. But it

10   is equally clear that when a claim is 'deemed allowed' it has the same effect." *Id.*

11        Regarding the third claim preclusion requirement – that the later lawsuit raise the

12   "same cause of action" as the prior proceeding – the *Siegal* court reasoned that "Freddie

13   Mac's right to recover on its proofs of claim in the bankruptcy court could have been

14   attacked" based on the same facts alleged in the newly alleged tort and contract claims, and,

15   "[j]ust as clearly, its rights established in the bankruptcy would be affected by resolution of

16   the present action." *Id.* at 529. Thus, the same cause of action was at issue, and the same

17   parties were involved, so the newly alleged tort and contract claims were precluded. *See also*

18   *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 971 (9th Cir. 1994) (antitrust claim that could have

19   been raised to challenge bankruptcy sale order was barred under claim preclusion principles).

20        *Siegal* controls here. Plaintiffs' proof of claim was deemed allowed. Under *Siegal*,

21   this constitutes a final judgment by a court of competent jurisdiction, thereby satisfying the

22   first two claim preclusion requirements. Further, the antitrust issues raised by Hummer

23   Winblad's counterclaim could have been used by the Napster estate as a basis for attacking

24   Plaintiffs' proof of claim. Indeed, these antitrust issues *were* raised in the *Napster I* litigation

25   (under the heading of a misuse defense). Hummer Winblad could have asked the bankruptcy

26   Trustee to challenge plaintiffs' claims on this same basis, but it did not do so. And the

27   bankruptcy Trustee did not elect to raise either a misuse defense or an affirmative antitrust

28

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)

1   claim in the bankruptcy proceedings.  Thus, as in *Siegal*, the antitrust issues were part of the

2   same "claim" resolved by the allowance of Plaintiffs' proof of claim.

3           The final element – identity of parties – also is satisfied here because Hummer

4   Winblad admittedly is attempting to pursue *Napster*'s claim.  Under the Court's February 3

5   order, Hummer does not have antitrust standing to pursue a claim except as Napster's "alter

6   ego."  But if Hummer is Napster's alter ego, then it is bound by the same preclusion

7   principles that would bar Napster from bringing such a claim.  A confirmed plan binds a

8   debtor's successors and privies just as it would bind the debtor.  *See In re Wolfberg*, 255 B.R.

9   879, 882 n.4 (9th Cir. B.A.P. 2000) (confirmed plan binds debtor's successors); *Irwin v.*

10  *Mascott*, 370 F.3d 924 (9th Cir. 2004) (parties in privity with initial litigant are bound by

11  claim preclusion).[7]  Claim preclusion now bars parties to the bankruptcy proceeding –

12  including Hummer Winblad – from attempting a second bite at the apple.

13                          **b.       Napster's Chapter 11 Plan**

14          Separate and apart from the preclusive effect of the allowance of Plaintiffs' proof of

15  claim, the antitrust claim Hummer wants to pursue also is barred because the confirmed

16  Chapter 11 Plan resolved *all* outstanding claims – including this one – between Napster and

17  its creditors.  *See Goldstein v. Griffing*, 297 B.R. 766, 771 (Bankr. D. Ariz. 2003).

18          In the first place, a confirmed Chapter 11 Plan is a final judgment entitled to

19  preclusive effect.  *Id.*  Moreover, for preclusion purposes, "a claim . . . must include *any*

20  *cause of action relating to the case or the estate*."  *Goldstein*, 297 B.R. at 771 (emphasis

21  added).  This definition of "claim" furthers bankruptcy's fundamental principle of providing

22  an overarching framework for the centralized administration of all of the debtor's assets and

23

24

25  _____

26  [7] Hummer Winblad is bound by the Chapter 11 Plan for yet another reason as well.  The
    Chapter 11 Plan provides that it "shall be binding upon and inure to the benefit of the
    Debtors, the Estates, any holder of any claim or interest treated herein . . ."  RFJN, Tab 1 at
27  Exhibit A, § II(H)(4) (at p. 44).  As both a "holder of a claim" as a result of filing a proof of
    claim, and a holder of an "interest" as an equity holder in Napster, Hummer Winblad was
28  bound by the plain terms of the Chapter 11 Plan.

liabilities.[8]  In *Goldstein*, a Chapter 11 debtor brought a post-confirmation suit claiming an interest in defendant's home.  297 B.R. at 768-69.  This cause of action had not, however, been mentioned in the debtor's disclosure statement or plan.  *Id.*  The Court granted summary judgment based on claim preclusion, stating:

> Plaintiff's new claim is effectually a split off of the claims and interests that should have been raised in [the debtor's] bankruptcy case and plan . . . Because the plan was effectively a judgment in the debtor's "favor," claims that should have been part of that judgment are now barred by the doctrine of merger.

*Id.* at 772.  Similarly here, Napster was required to pursue any antitrust claim in the bankruptcy case.  Napster did not do so, and the claim is therefore barred.  *Accord DiSalvo*, 219 F.3d at 1039.[9]

## C.  Hummer Winblad Cannot Seek The Benefits Of Being Napster's Alter Ego Without Accepting the Consequences

The preceding sections only begin to highlight the fundamental problems with Hummer Winblad's attempt to pursue Napster's antitrust claim without regard to the rules of bankruptcy law.  There is more.  As an equity holder, Hummer Winblad stood *last* in line for getting paid out of the assets of the Napster estate.  11 U.S.C. § 1129(B)(2)(b)(ii); *see also Wilkow v. Forbes, Inc.,* 241 F.3d 552, 554 (7th Cir. 2001).  All other creditors, including Plaintiffs, had priority over Hummer Winblad.  Yet, through its counterclaim, Hummer Winblad seeks to jump ahead of all of Napster's creditors and take for itself all of the benefits of a claim that belongs, if to anyone, only to Napster's estate.

---

[8]  The Napster Bankruptcy resolved all of *Napster's* rights and obligations, but did not purport to resolve any independent rights solely between third-parties, such as *Plaintiffs'* claims against Hummer Winblad for *Hummer Winblad's conduct and actions*.

[9] In *Associated Vintage Group*, 283 B.R. at 564, the Bankruptcy Appellate Panel indicated that a general reservation of a *category* of claims may be appropriate if a plan is confirmed soon after a bankruptcy commences, and before an investigation of potential claims is possible.  Here, there was no reservation of any category of claim, and Napster's plan was confirmed almost two years after commencement of the case.  Indeed, the case was closed almost three years after its commencement, with the estate representative expressly stating that no further actions were contemplated.  In any event, even if the antitrust claim were reserved, that would not help Hummer, because only Enco-1 had the right to prosecute such claims (and was required to distribute any proceeds to Napster's creditors pursuant to the priority scheme under the Napster plan). Chapter 11 Plan, RFJN, Tab 1 at Exhibit A, § 8.06.

1    But there is even more unfairness than just the prospect of Hummer Winblad

2    obtaining a recovery that belongs to others.  Hummer Winblad cannot claim the benefits of

3    being Napster's alter ego (*i.e.*, the right to pursue a claim that belongs to the Napster Estate

4    and keep all the benefits for itself) without accepting the obligations of being deemed

5    Napster's alter ego.  Specifically, if Hummer Winblad truly were Napster's alter ego,

6    Hummer Winblad would have to assume responsibility for all of the claims allowed in the

7    bankruptcy proceeding – including those asserted by Plaintiffs (and allowed by the Trustee) –

8    against Napster.  *See Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp.

9    2d 1060, 1066 (C.D. Cal. 2002) ("[t]he terminology 'alter ego' or 'piercing the corporate

10   veil' refers to situations where there has been an abuse of corporate privilege, because of

11   which the equitable owner of a corporation will *be held liable for the actions of the*

12   *corporation*") (emphasis added); *In re Folks*, 211 B.R. 378, 387 (9th Cir. BAP 1997) ("the

13   alter ego theory allows the legal distinction between a corporation and its shareholders,

14   directors and officers to be disregarded or set aside *in order to reach the assets of those*

15   *individuals 'behind the corporation'*") (emphasis added).

16   It cannot be the case that Hummer Winblad is Napster's alter ego only for purposes of

17   availing itself of Napster's assets.  If Hummer and Napster were one and the same,

18   Hummer's assets (including those that existed at the commencement of Napster's bankruptcy

19   case as well as those that could be recovered from third parties pursuant to Bankruptcy Code

20   §§ 548 and 549 and Cal. Civil Code § 3439.05) should become part of Napster's bankruptcy

21   estate, to be administered by a representative of the Estate and made available for distribution

22   to Napster's creditors.

23   All of this underscores the impropriety of Hummer Winblad's attempt to assert an

24   antitrust claim belonging to the Napster bankruptcy estate, if to anyone.  It threatens to allow

25   Hummer Winblad to keep for itself an asset that would belongs exclusively to the bankruptcy

26   estate, and to grant this windfall without requiring Hummer Winblad to accept any of the

27   burdens in bankruptcy of being Napster's alter ego.  This attempt to pervert the structure of

28

1    the bankruptcy laws should not be permitted to stand, and Plaintiffs are entitled to summary

2    judgment on Hummer's counterclaim.

3 **IV.**

4 **CONCLUSION**

5      For the foregoing reasons, Plaintiffs respectfully request that the Court grant

6    summary judgment in their favor on Hummer Winblad's counterclaim.

7

8                        Respectfully submitted,

9

10   DATED: November 14, 2005            _____*/s/*_____

11                                      GLENN D. POMERANTZ
                                     MUNGER, TOLLES & OLSON LLP

12                                      Attorneys for UMG Plaintiffs

13

14

15   DATED: November 14, 2005            _____*/s/*_____

16                                      PETER L. SIMMONS
                                     FRIED, FRANK, HARRIS, SHRIVER &

17                                       JACOBSON LLP

18                                      Attorneys for the EMI Plaintiffs

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

  A.   The Napster Bankruptcy Case.......................................... 3

  B.   Hummer Winblad's Attempt to Pursue Napster's Antitrust Claim in This Litigation............................................. 7

III.  ARGUMENT ..................................................................... 8

  A.   Only A Representative of Napster's Bankruptcy Estate, And Not Hummer Winblad, May Prosecute A Claim Based On Alleged Antitrust Injury To Napster............................................. 9

    1.   The Antitrust Claim Hummer Winblad Seeks To Assert Constitutes Property Of Napster's Bankruptcy Estate ..................... 9

    2.   Only The Bankruptcy Estate Representative Has Standing To Administer Bankruptcy Estate Property, Including Causes of Action....................................................... 11

  B.   Actions Taken By Napster's Bankruptcy Estate Representative Preclude Litigation of Napster's Antitrust Claims Now ................. 12

    1.   The Antitrust Claim Is Barred by Judicial Estoppel .............. 13

    2.   The Doctrine of Claim Preclusion/Res Judicata Bars Further Prosecution of the Antitrust Claim................................. 15

      a.   The Allowance of Plaintiffs' Proof of Claim.................. 15

      b.   Napster's Chapter 11 Plan.................................... 17

  C.   Hummer Winblad Cannot Seek The Benefits Of Being Napster's Alter Ego Without Accepting the Consequences ........................... 18

IV.   CONCLUSION ................................................................. 20

# TABLE OF AUTHORITIES

Page

### Federal Cases

*A&M Records, Inc. v. Napster, Inc.*,
  114 F. Supp. 2d 896 (N.D. Cal. 2000)..................................................................2

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..............................................................................2

*Bishay v. American Isuzu Motors*,
  404 F.3d 491 (1st Cir. 2005) ...............................................................................12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................8

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971) ................................................................................3

*Goldstein v. Griffing*,
  297 B.R. 766, 771 (Bankr. D. Ariz. 2003) .....................................................17, 18

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) .........................................................................passim

*Hay v. First Interstate Bank of Kalispell*,
  978 F.2d 555 (9th Cir. 1992) .........................................................................passim

*In re Associated Vintage Group, Inc.*,
  283 B.R. 549 (9th Cir. B.A.P. 2002) ...................................................10, 13, 18

*In re Folks*,
  211 B.R. 378 (9th Cir. BAP 1997) .......................................................................19

*In re Gerwer*,
  898 F.2d 730 (9th Cir. 1990) .................................................................................9

*In re Int'l Nutronics, Inc.*,
  28 F.3d 965 (9th Cir. 1994) .................................................................................16

*In re Kelley*,
  199 B.R. 698 (9th Cir. B.A.P. 1996) ...................................................................13

*In re Matter of Educators Group Health Trust*,
  25 F.3d 1281 (5th Cir. 1994) ...................................................................10, 11, 12

*In re Morpheus Lights*,
  228 B.R. 449 (Bankr. N.D. Cal. 1998)...................................................11, 12, 13

*In re Napster, Inc. Copyright Litigation*,
  354 F. Supp. 2d 1113 (N.D. Cal. 2005).............................................1, 7, 8, 10

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Napster. Inc. Copyright Litigation,*
   191 F. Supp. 2d 1087 (N.D. Cal. 2002) ................................................................. 4, 5,10

*In re Salvatore DiSalvo,*
   219 F.3d 1035 (9th Cir. 2000) ................................................................................. 12, 15

*In re Wolfberg,*
   255 B.R. 879 (9th Cir. B.A.P. 2000) ............................................................................. 17

*Irwin v. Mascott,*
   370 F.3d 924 (9th Cir. 2004) ......................................................................................... 17

*John Peterson Motors Inc. v. General Motors Corp.,*
   613 F. Supp 887 (D. Minn. 1985) .................................................................................. 11

*Kalb Voorhis & Co. v. American Financial Corp.,*
   8 F.3d 130 (2d Cir. 1993) ................................................................................... 9, 11, 12

*Lovett v. General Motors Corp.,*
   975 F.2d 518 (8th Cir. 1992) .......................................................................................... 11

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*
   125 S.Ct. 2764 (2005) ...................................................................................................... 3

*Russell v. Rolfs,*
   893 F.2d 1033 (9th Cir. 1990) ....................................................................................... 13

*Seigal v. Federal Home Loan Mortgage Co.,*
   143 F.3d 525 (9th Cir. 1998) ................................................................................ 9, 12, 15, 16

*Sierra Switchboard Co. v. Westinghouse Elec. House,*
   789 F.2d 705 (9th Cir. 1986) ......................................................................................... 10

*Wady v. Provident Life and Accident Ins. Co. of America,*
   216 F. Supp. 2d 1060 (C. D. Cal. 2002) ....................................................................... 19

*Wagner v. Professional Engineers in California Gov't,*
   354 F.3d 1036 (9th Cir. 2004) ....................................................................................... 13

*Wilkow v. Forbes, Inc.,*
   241 F.3d 552 (7th Cir. 2001) ......................................................................................... 18

**Federal Statutes**

11 U.S.C. § 502 ....................................................................................................................... 4

11 U.S.C. § 541 ....................................................................................................................... 9

11 U.S.C. § 554 ..................................................................................................................... 10

1

**TABLE OF AUTHORITIES**
(continued)

2

11 U.S.C. § 704 ............................................................................................. 3, 4, 12

Page

3

1 U.S.C. § 1106 ............................................................................................ 3, 4, 12

4

11 U.S.C. § 1107 ................................................................................................. 11

5

11 U.S.C. § 1109 .................................................................................................. 6

6

111 U.S.C. § 1129 ............................................................................................... 18

7

**State Statutes**

8

Cal. Civil Code § 3439.05 .................................................................................. 20

9

**Federal Rules**

10

Fed. R. Bank. P. 3001 .......................................................................................... 4

11

Fed. R. Bank. P. 6009 ……………………………………………………… 4, 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR
SUMMARY JUDGMENT
C-MDL-00-1369 (MHP)