KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
MICHAEL H. PAGE - #154913
RAGESH K. TANGRI - #159477
CHRISTA M. ANDERSON - #184325
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
jwk@kvn.com
mhp@kvn.com
rkt@kvn.com
cma@kvn.com

Attorneys for Defendants
HUMMER WINBLAD VENTURE PARTNERS IV, L.P.;
HUMMER WINBLAD TECHNOLOGY FUND IV, L.P.;
HUMMER WINBLAD EQUITY PARTNERS IV L.L.C., HANK
BARRY; and JOHN HUMMER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NAPSTER, INC.<br>COPYRIGHT LITIGATION | **No. C MDL-00-1369 (MHP)**<br>(No. C 04-1166 (MHP)) |
| UMG RECORDINGS, INC., et al.,<br><br>                          Plaintiffs,<br><br>          v.<br><br>HUMMER WINBLAD VENTURE<br>PARTNERS, et al.,<br><br>                          Defendants. | **OPPOSITION TO PLAINTIFFS'<br>MOTION FOR SUMMARY JUDGMENT<br>ON HUMMER WINBLAD<br>DEFENDANTS' COUNTERCLAIMS**<br><br>Date:      March 2, 2006<br>Time:     2:30 p.m.<br>Dept:      15<br>Judge:    Hon. Marilyn Hall Patel |

365857.01

## I.     INTRODUCTION

Plaintiffs brought this motion regarding standing over a year ago, and the Court denied it. Nothing relevant has changed since, and the Court should reach the same result this time around.

Plaintiffs' recycled attack on the Funds'[1] antitrust standing rests entirely on the same two fallacies as their prior motion to dismiss—fallacies properly rejected by this Court the first time. The first of these fallacies is that the Funds allege, and seek to prove, that they are Napster's alter ego. Quite the opposite: it is *Plaintiffs* who allege that the Funds had "essentially full operational control" over Napster so as to "stand in Napster's shoes." The Funds vigorously dispute these allegations. But—as this Court clearly held the last time it ruled on this issue—*if* Plaintiffs were to prevail in establishing that claim, that alleged state of facts would also, under the antitrust principles set forth by the Supreme Court in *Associated General Contractors*, bring the Funds within the zone of injury for antitrust standing. Nonetheless, it is the Funds' expectation that *both* Plaintiffs' copyright claims and the Funds' antitrust counterclaims will fail for the identical factual reason: the Funds did not exercise control over either Napster's or its users' activities.

The second fallacy underpinning Plaintiffs' motion is that the Funds are seeking to enforce antitrust claims that belonged to Napster, and thus were discharged in bankruptcy. Not so. The Funds are seeking to redress the antitrust injury suffered *by the Funds themselves*. As this Court has already ruled, the combination of (1) *Plaintiffs'* claim that the Funds and Napster were "inextricably intertwined" and (2) the absence of a risk of duplicative recovery due to Napster's bankruptcy (and the Trustee's failure to pursue the antitrust claim in bankruptcy) justifies an equitable exception to the typical result that shareholders lack standing to bring antitrust claims. That equitable exception allows the Funds to bring their own antitrust claims, notwithstanding the fact that Napster might have brought claims arising from the same conduct

---

[1] Throughout this brief, "Funds" refers to Defendants Hummer Winblad Venture Partners IV, LP

had it survived.

Nothing has changed since the last time the Court decided this issue, and nothing justifies Plaintiffs' request that the Court revisit the question.  Indeed, the ***only*** changed circumstance to which Plaintiffs can point is the fact that the Napster bankruptcy is now final.  But that change is of no help to Plaintiffs' argument.  Instead, the closure of Napster's bankruptcy merely underscores the absence of a risk of duplicative recovery which is a factor favoring the standing of the Funds under relevant antitrust law.

In sum, this Court's prior ruling on standing was legally and equitably correct.  The Court recognized that, if Plaintiffs are able to assert massive derivative copyright claims against the Funds based on the actions of a corporation that has been driven into bankruptcy by Plaintiffs' anticompetitive conduct, then equity demands that the Funds be able to assert the antitrust counterclaims that flow from Plaintiffs' own allegations.  The Funds deny those allegations, and expect to establish that they did not in any way stand in Napster's shoes.  But equity demands that, if the Funds are to stand in those shoes, they stand in both of them.

Plaintiffs' half-hearted arguments in support of judicial estoppel and res judicata fare no better.  Plaintiffs identify no inconsistent act or statement whatsoever that would support a finding of judicial estoppel against the Funds.  As for res judicata, the Plaintiffs identify no facts that would permit the Funds to be bound by any bankruptcy judgment against Napster because the Funds had no control whatsoever over the Napster Trustee's litigation of the bankruptcy proceedings.  Accordingly, Plaintiffs' motion should be denied in its entirety.

## II.    BACKGROUND FACTS

Certain additional facts, omitted from Plaintiffs' moving brief ("Brief"), are important for understanding the issues raised by this motion.

**A.    The Hummer Winblad Defendants' motion to dismiss Plaintiffs' claims.**

Plaintiffs filed suit against the Hummer Winblad Defendants in April 2003.  Complaint,

and Hummer Winblad Technology Fund IV, LP.

OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION
No. C MDL-00-1369 (MHP)

filed April 21, 2003.  As this Court is aware, the suit alleges claims for contributory and vicarious copyright liability against the Funds for having invested in Napster, as well as against Hank Barry, John Hummer, and the general partner of the two Funds (Hummer Winblad Equity Partners IV, LLC).  *Id.*  Hank Barry served as interim CEO of Napster from May of 2000 to July of 2001.  Anderson Decl., Ex. C.  Hank Barry and John Hummer also served as directors on Napster's Board of Directors, but resigned in May of 2002.  *Id.*, Ex. B.

In October 2003, the Hummer Winblad Defendants moved to dismiss the Plaintiffs' claims.  Fundamentally, the motion argued that the claims should be dismissed because the defendants "mere status – whether as a director, or officer, much less a shareholder – cannot without more give rise to a liability for the acts of the corporation."  Memorandum of Points and Authorities in Support of Motion to Dismiss the Complaint, filed Oct. 3, 2003, at 3:1-3.

Plaintiffs opposed the motion to dismiss by arguing that their claims were premised on more than mere status.  Specifically, Plaintiffs argued that the allegations stated a claim because "Hummer Winblad exercised iron-clad control over Napster" and "ran Napster on a daily basis," having "daily control over all of Napster's operations."  Plaintiffs' Memorandum of Points and Authorities in Opposition to Motion to Dismiss, filed Jan. 16, 2004, at 1:17-21.

After consideration of the briefs submitted by Plaintiffs, the Court denied the Hummer Winblad Defendants' motion to dismiss.  The Court held that "Plaintiffs' allegations that defendants exercised essentially full operational control over Napster" were sufficient to "state[] a claim" that the defendants were liable under Plaintiffs' copyright claims.  July 14, 2004 Order at 9:4-14.

**B.    The Funds' antitrust counterclaims against the Plaintiffs.**

In August of 2004, the Funds filed counterclaims against the Plaintiffs alleging antitrust violations.  Answer and Counterclaim, filed Aug. 13, 2004.  Those counterclaims assert that the Plaintiffs, along with the other major record labels and the RIAA, conspired to lock up the market for the online distribution of sound recordings.  *Id.* at 15-19.  In particular, these co-conspirators agreed to harness the power they collectively wielded through ownership of the vast majority of music copyrights, and use that power collectively to refuse to license companies like

Napster seeking licenses for the online distribution of music.  *Id.*  They did so with the aim of destroying any independent entities seeking to enter or participate meaningfully in the online distribution market, and then entering that market themselves or through entities they controlled. *Id.*

Plaintiffs moved to dismiss the antitrust counterclaims.  Plaintiffs' Motion to Dismiss Counterclaims, filed Sep. 30, 2004.  In that motion, Plaintiffs argued that the Funds lacked standing to assert the claims because the injury suffered was not injury to a competitor in the relevant market but, instead, "classic investor injuries."  *Id.* at 2:2.  Further, Plaintiffs argued that the Funds could not prove standing because "were Hummer Winblad to allege that it participated in the 'online distribution' market, it would effectively concede that it was Napster's alter ego – and plaintiffs would be entitled to summary judgment of liability on their copyright claims."  *Id.* at 3:11-13.

In response, the Funds explained that the facts alleged by the Plaintiffs themselves gave the Funds contingent standing.  In particular, under the Plaintiffs' own theory of the case (i.e., that the Funds had "essentially full operational control" over Napster), the Funds would be so "inextricably intertwined" with Napster as to have standing to assert an antitrust claim within the bounds of antitrust law.  Opposition to Plaintiffs' Motion to Dismiss Counterclaims, filed Oct. 25, 2004, at 4:15-18; 6:13-16.  While the Funds expressly denied that they were so inextricably intertwined, they argued that these alleged facts, if proven by Plaintiffs would give the Funds standing.

The Court agreed with the Funds, as discussed more fully below.

## III.   ARGUMENT

**A.   As this Court has already concluded, the Funds have standing to assert their antitrust claims if the Plaintiffs prove certain facts supporting their claims.**

Having tried once before in their motion to dismiss, Plaintiffs return again to this Court to argue that the Funds do not have standing to bring antitrust claims.  For the same reasons identified by the Court before (and more), the Funds do have standing.  Moreover, the arguments asserted by Plaintiffs in their new bid to obtain dismissal of these claims all fail because they are

premised on authority that does not govern the question at hand.

**1.      This Court properly concluded once before that the Funds have standing to bring their claims.**

When the Funds first filed their antitrust counterclaims against the Plaintiffs, Plaintiffs moved to dismiss those claims.  The principal question addressed by this Court in its February 3, 2005 Order on that motion ("2005 Order") is the very question raised again by Plaintiffs' motion – "whether Hummer has standing to bring a private action to enforce" the antitrust laws.  2005 Order at 5.

As the Court explained one year ago, the question of whether a private plaintiff has such standing is not determined by a "bright-line rule" regarding the mere status of the plaintiff as competitor or consumer.  *Id.* at 8.  Instead, it is determined through a "case-by-case" inquiry into a number of factors set forth by the Supreme Court in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), i.e., (1) the nature of the plaintiff's alleged injury and whether it was the type antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages.  2005 Order at 5, *citing Associated General Contractors*, 459 U.S. at 535.  Those factors guide courts in assessing the "relationship between the defendant's alleged conduct and the resulting harm to plaintiff."  2005 Order at 8, *citing Am. Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1058 (9th Cir. 1999).

Application of those considerations to the Funds' claims – ***not*** Napster's claim – correctly led this Court to conclude that the Funds had contingent standing.  Specifically, while the Court stated that there would be "no doubt" that "Napster itself (or its trustee in bankruptcy) . . . would have standing" to assert the antitrust claims (2005 Order at 6), an analysis was required under the relevant factors to assess whether "Hummer [can] establish its standing to sue."  *Id.* at 7.  Plaintiffs had focused in their motion to dismiss on the first factor, arguing that the "Hummer allegations fail to establish that it has suffered 'antitrust injury'" because of its status as a mere shareholder.  *Id.* at 6.

365857.01

1    This Court rejected Plaintiffs' argument, explaining that there may be "such a unity of . . .

2    interest and ownership between a corporation and one or more of its investors that any injury to

3    the corporation is in fact suffered by the investor," resulting in the investor satisfying the first

4    *Associated General Contractors* factor. *Id.* at 10. Because the Plaintiffs (not the Funds) have

5    alleged that the Funds had "essentially full operational control" over Napster, the Court found

6    that (if proven) those allegations could satisfy the requirement of "a unity of interest and

7    ownership" between Napster and the Funds so as to provide the Funds with standing. *Id.* at 10.

8    Importantly, the Court also explained that the policy concerns militating against

9    shareholder standing do not apply in this case. The reason is that, while many cases have held

10   that shareholders of corporations typically do not have standing to sue for antitrust violations,

11   those cases are born out of concerns regarding the fourth *Associated General Contractors* factor

12   – the risk of duplicative recovery. *Id.* at 11. Those concerns do not exist in regard to the Funds'

13   standing because "the corporation [Napster] that would otherwise have standing to sue its

14   competitor has been liquidated following bankruptcy proceedings, [and] there is ***no possibility***

15   that a defendant might be subject to multiple obligations arising from the separate antitrust

16   claims of the corporation and its shareholders." *Id.* (emphasis added). Indeed, if anything, this

17   absence of risk of duplicative recovery is even more clear now – the bankruptcy estate closed

18   nine months after this Court's 2005 order. Brief at 6:17-18, citing Final Decree.

19          **2.**    **Napster's Trustee did not hold the exclusive right under antitrust law to
            pursue claims premised on Plaintiffs' anticompetitive conduct.**

20

21   Notwithstanding the Court's earlier ruling, now Plaintiffs argue that the Funds do not

22   have standing because their claims are Napster's and hence the property of the bankruptcy estate,

23   and because only the Trustee in bankruptcy would have had standing to assert the Funds' claims.

24   This argument lacks merit for several reasons. *First*, the claims asserted in this case are

25   not Napster's claims and are not property of the bankruptcy estate. They are the Funds' claims,

26   brought on behalf of investors allegedly so "inextricably intertwined" with Napster that their

27   standing does not offend the principles governing what constitutes "antitrust injury" under

28   *Associated General Contractors* – i.e., injury in the market where competition is being

6

1    restrained.  2005 Order at 7-11.  Indeed, while citing plenty of authority for the uncontroversial

2    point that a bankrupt entity's claims belong to the bankruptcy estate, Plaintiffs cite no authority

3    for the proposition that a cause of action held by entities other than the debtor corporation (here

4    the Funds) against a tortfeasor who happens to be another creditor (here the Plaintiffs) constitutes

5    the property of the estate of the debtor.

6           *Second*, the Trustee does not have exclusive standing to assert the ***Funds'*** claims.

7    Indeed, Plaintiffs cite no law for the proposition that third-party, non-debtors like the Funds lack

8    standing to pursue their own private antitrust claims against creditors of the debtor.  Instead, the

9    bankruptcy law cited by Plaintiffs merely stands for the uncontroversial proposition that the

10    Trustee in bankruptcy (or his representative) would have exclusive standing to pursue ***Napster's***

11    own antitrust claim.

12           Plaintiffs' inability to cite bankruptcy law for the proposition they seek to advance is

13    unsurprising.  That is because the question of a non-debtor's standing to pursue a private antitrust

14    claim is not one of bankruptcy law but instead is governed by antitrust law principles and the

15    Supreme Court's discussion in *Associated General Contractors*.  Application of that test can, and

16    has demonstrated, that more than one entity may be found to have what is essentially concurrent

17    but contingent standing to assert antitrust claims premised on the same underlying facts.  The

18    most notable example of this is seen in this Court's own 2005 Order, where the Court

19    acknowledged that there could be "no doubt" that Napster "would have standing" but then turned

20    to (and answered affirmatively) the question of whether "Hummer [could] establish its standing

21    to sue under section 4 of the Clayton Act. . . ."  2005 Order at 7.

22           Another telling example is seen in the decisions regarding the *John Peterson Motors*

23    case, cited by this Court in its 2005 Order and now cited by Plaintiffs in their opening brief.  In

24    that matter, a car dealership and its sole owner both sued a manufacturer for antitrust violations.

25    *Lovett v. General Motors Corporation*, 975 F.2d 518 (8th Cir. 1992).  In both its motion to

26    dismiss and its motion for summary judgment, the manufacturer sought dismissal of the owner's

27    claims, arguing that they were improper because the owner was a shareholder in the car

28    dealership and thus did not properly have standing to pursue antitrust violations.  *Id.* at 522; *John*

1    *Peterson Motors, Inc. v. Gen. Motors Corp.*, 613 F. Supp. 887, 901 (D. Minn. 1985).  The

2    district court disagreed, finding that the owner could concurrently have standing with the

3    company as it was possible that the owner would present evidence of such a unity of ownership

4    and interest with the car dealership that piercing the corporate veil would be appropriate.  *Id*. at

5    901-02.  In other words, just as in this Court's 2005 Order, the trial court in *John Peterson*

6    *Motors* acknowledged the potential for both a corporation and a shareholder to have concurrent

7    (albeit contingent) standing to pursue an antitrust claim.  *See also Stepp v. Ford Motor Credit*

8    *Co.*, 623 F. Supp. 583, 589 (E.D. Wis. 1985); *M.K. Metals, Inc. v. Nat'l Steel Corp.*, No. 79 C

9    1661, 1986 WL 4420, at *2 (N.D. Ill. Apr. 7, 1986) ("A sole shareholder may have standing [to

10   pursue an antitrust claim] where the corporate veil can be pierced").

11        Interestingly, Plaintiffs argue that the later decision by the Eighth Circuit ultimately

12   denying standing to the car dealership's owner supports their argument that only the Trustee has

13   standing to bring an antitrust claim relating to Napster.  Brief at 11 n.5.  Plaintiffs are mistaken,

14   as the Eighth Circuit ruling actually demonstrates why the Funds still have standing to assert

15   their claims notwithstanding the bankruptcy.  In the *John Peterson Motors* matter, the car

16   dealership ultimately filed for bankruptcy and the owner lost control of the car dealership's

17   antitrust suit.  *Lovett*, 975 F.2d at 519-20.  At the trial of the matter, the jury then awarded

18   damages to both the car dealership and the owner, who himself had failed to prove a unity of

19   ownership and interest sufficient to pierce the corporate veil.  *Id.* at 520.  Upon motion by the

20   manufacturer, the trial court granted a judgment notwithstanding the verdict, concluding that the

21   owner lacked standing to bring his private antitrust action.  *Id.*

22        On appeal, the Eighth Circuit affirmed the trial court's judgment notwithstanding the

23   verdict.  *Id.*  The reason for that ruling is instructive.  The owner's standing was premised or

24   contingent on demonstrating that he was inextricably intertwined with the car dealership **and** that

25   there would be no risk of duplicative recovery.  However, the owner failed to prove facts

26   warranting piercing of the corporate veil and the jury's award created a circumstance of

27   duplicative recovery.  *Id.* at 522 (owner "failed to show that [dealership] did not maintain a

28   separate corporate existence").  Thus, the Court concluded that, under the *Associated General*

8

*Contractors*' factors, the owner had failed to establish standing to pursue his claims.  *Id.*

The Funds' claims, however, do not fall within this pattern.  Like the owner/plaintiff in *John Peterson Motors* prior to trial, the Funds' claims are still contingent on the proof of the facts alleged by Plaintiffs but disputed by the Funds – i.e., that the Funds had "essentially full operational control" over Napster.  In the event that the Plaintiffs fail to prove these facts, there is no question that the Funds do not have standing to prove their antitrust claims pursuant to this Court's 2005 Order.

However, unlike the owner in *John Peterson Motors*, there is absolutely no risk or chance of duplicative recovery here.  As this Court has acknowledged, because "the corporation [Napster] that would otherwise have standing to sue its competitor has been liquidated following bankruptcy proceedings, there is ***no possibility*** that a defendant might be subject to multiple obligations arising from the separate antitrust claims of the corporation and its shareholders."  2005 Order at 11 (emphasis added).

Thus, the principle reflected by the developments in *John Peterson Motors* yields the result already reached once by this Court, i.e., notwithstanding the fact that Napster did have standing to pursue antitrust claims had it chosen to do so, the Funds also have standing as long as the Plaintiffs prove their allegations of "essentially full operational control."

### 3. The mere fact that Napster's Trustee could have filed an antitrust claim during the pendency of Napster's bankruptcy case does not bar the Funds' claims.

Plaintiffs also argue that the mere fact that a Trustee in bankruptcy had the opportunity to bring an antitrust claim on behalf of a bankrupt corporation during the bankruptcy case is sufficient under equitable principles to bar any shareholder from also pursuing a similar claim under the antitrust laws against the same parties.  Brief at 12.  In support of that argument, Plaintiffs cite to the case of *Bishay v. American Isuzu Motors, Inc.*, 404 F.3d 491 (1st Cir. 2005).

As an initial matter, Plaintiffs fail to mention the fact that *Bishay* does not address antitrust standing law at all.  Instead, in *Bishay*, a sole shareholder of a bankrupt corporation sought to assert his own separate claims for violation of a Massachusetts state statute authorizing motor vehicle dealers to pursue certain remedies from automobile manufacturers.  *Id.* at 493.  In

9

1   reaching the conclusions that it did (i.e., that the shareholder could not pursue a separate claim

2   under the Massachusetts statute), the *Bishay* court applied neither antitrust law nor even

3   bankruptcy law.  Instead, it assessed whether the Massachusetts' Supreme Judicial Court would

4   reject a shareholder's personal standing **under the state statute at issue**.  *Id.* at 496.  Thus, the

5   *Bishay* case does not speak to the question of whether the Funds have an independent right **under**

6   **the federal antitrust laws** to pursue claims against the Labels.  That question is governed here

7   not by state statutes but, instead, by the Supreme Court's test in *Associated General Contractors*.

8       Moreover, even if *Bishay* had addressed relevant law, the result there is consistent with

9   the principle reflected in the *John Peterson Motors* case and would support the Funds' standing

10  here.  In *Bishay*, the bankruptcy trustee asserted, and then received consideration to settle, claims

11  premised on the same facts as those supporting the shareholder's private lawsuit.  *Id.* at 493.  In

12  sharp contrast, even Plaintiffs admit that Napster's Trustee did not seek to pursue, much less

13  settle, the antitrust claims that it could have asserted in the bankruptcy.  Brief at 4:19-20.  Thus,

14  while the "duplicative recovery" factor destroyed the shareholder's standing regarding the claim

15  in *Bishay*, there is no risk of duplicative recovery in this case.

16  **B.    Plaintiffs identify no facts that warrant application of judicial estoppel against the**
        **Funds based on acts by Napster.**

17      Plaintiffs next argue that the Funds' antitrust claims are barred under the doctrine of

18  judicial estoppel.  Application of the elements of this doctrine to the facts of this case makes

19  clear that judicial estoppel does not bar the Funds' claims.

20      Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent

21  positions, is an equitable doctrine that precludes a party from gaining an advantage by asserting

22  one position, and then later seeking an advantage by taking a clearly inconsistent position.

23  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001); *Rissetto v.*

24  *Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600, 605 (9th Cir. 1996); *Russell v. Rolfs,* 893

25  F.2d 1033, 1037 (9th Cir. 1990); *Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 421

26  (Bankr. N.D. Cal. 1999).  It is an equitable doctrine invoked by the court at its discretion, *see*

27  *Morris v. California*, 966 F.2d 448, 452-53 (9th Cir. 1991), and is intended to protect the integrity

28

365857.01

of the judicial process by preventing a litigant from "playing fast and loose with the courts," *see*

*Russell,* 893 F.2d at 1037 (citation and internal quotation marks omitted).

The Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001), has identified

three factors long accepted and applied by many circuits to guide this discretionary exercise:

> *First*, a party's later position must be *clearly inconsistent* with its earlier position.
> *Second*, courts regularly inquire whether the party has succeeded in persuading a
> court to accept that party's earlier position, so that judicial acceptance of an
> inconsistent position in a later proceeding would *create the perception that either
> the first or the second court was misled*. Absent success in a prior proceeding, a
> party's later inconsistent position introduces no risk of inconsistent court
> determinations, and thus poses little threat to judicial integrity.  A *third*
> consideration is whether the party seeking to assert an inconsistent position would
> *derive an unfair advantage or impose an unfair detriment* on the opposing party
> if not estopped.

*Id.* at 750-51 (internal citations and quotations omitted, emphases added).  *See also Hamilton*,

270 F.3d at 782-83 (applying these factors).

**1.    The Funds took no position before the bankruptcy court that was "clearly
inconsistent" with its antitrust claims in this case.**

Plaintiffs identify no facts whatsoever that would support application of judicial estoppel

pursuant to the above factors.  In regard to the first factor, Plaintiff identify, and the Funds took,

*no* prior position in the Napster bankruptcy case that is inconsistent, much less "clearly

inconsistent," with their assertion of antitrust claims in this case.  To the contrary, the Funds

acted entirely consistently with their claims in this case; they did not waive their antitrust claims

in the bankruptcy proceedings and they specifically informed the Plaintiffs (a year prior to the

bankruptcy plan confirmation) of their intention to bring antitrust claims.  Tangri Decl., ¶ 2.

Indeed, although irrelevant to whether the Funds took acts warranting judicial estoppel, it

is important to note that Napster itself took no position in its bankruptcy case that is "clearly

inconsistent" with the Funds' assertion of the antitrust claims in this case.  That is because, as

discussed *supra* at 5-9, a shareholder may have standing to assert an antitrust claim where there

is no risk of duplicative recovery when the corporation has not and will not pursue an antitrust

claim premised on the same anticompetitive conduct.  Thus, the Trustee's failure to pursue the

antitrust claims or address those claims in the bankruptcy disclosures and plan is not at all

11

365857.01

1   inconsistent with the Funds' right to pursue their antitrust claims in this action.

2       **2.    The Funds made no misleading representations to any court.**

3       Plaintiffs also cannot satisfy the elements of judicial estoppel because there are no facts

4   creating the perception that any court was misled by the Funds' representations.  Review of the

5   bankruptcy case filings submitted by Plaintiffs in support of their motion reveals that neither

6   Napster nor the Funds took any position in the bankruptcy case with regard to the ability or

7   intention of the ***Funds*** to pursue the antitrust claims in this action, as neither the Disclosure

8   Statement nor the Bankruptcy Plan made any reference to the existence or nonexistence of the

9   Funds' antitrust counterclaims.  Thus, the Court was not misled in any fashion by any statement

10   by the Funds or Napster's Trustee.

11       Similarly, the fact that the Plaintiffs' claims were "deemed allowed" without an objection

12   by the Trustee regarding the antitrust claims the Trustee ***could*** have brought had no effect on the

13   ability of the Funds to pursue their own antitrust counterclaims in this action.  To the contrary,

14   the fact that the Trustee failed to pursue the antitrust claims actually ***gives*** the Funds the standing

15   to pursue those claims now because of the absence of risk of duplicative recovery.  *See*

16   discussion *supra* at 7-9.

17       **3.    The Funds do not gain an unfair advantage, nor do they seek to impose an unfair detriment, by asserting their antitrust claims.**

18

19       Finally, in regard to the third factor for judicial estoppel, Plaintiffs do not and cannot

20   identify any facts showing that the Funds took any inconsistent position in the bankruptcy that

21   would result in their obtaining an unfair advantage or imposing an unfair detriment on the

22   Plaintiffs in this case.  Instead, as discussed *infra* at 18-20, it would be the height of unfairness to

23   allow Plaintiffs to evade responsibility for their antitrust violations by having driven Napster into

24   bankruptcy through anticompetitive acts, and then to deny the Funds their due process rights in

25   pursuing the Funds' own, unreleased antitrust claims.

26       **4.    Plaintiffs' arguments in favor of judicial estoppel have no merit.**

27       Notwithstanding the fact that Plaintiffs can satisfy none of the three elements of judicial

28   estoppel, they nonetheless seek to assert the doctrine because (1) ***Napster*** did not list the antitrust

365857.01

1  claim on its bankruptcy schedules, (2) *Napster* did not raise an objection to the Plaintiffs' proof

2  of claim of copyright infringement, and (3) *Napster* did not preserve its antitrust claim in its Plan

3  of Reorganization.

4      Were Napster a party to this case and seeking to assert an antitrust claim, Plaintiffs'

5  argument would be relevant.  However, each of the cases cited by Plaintiffs merely discusses and

6  applies the sensible doctrine that a ***debtor*** cannot go through a bankruptcy, fail to raise or

7  preserve a cause of action in the reorganization plan or in other bankruptcy disclosures, and then

8  seek to pursue that cause of action after the bankruptcy case is closed.  *Hamilton*, 270 F.3d at

9  784 (former debtor in bankruptcy was judicially estopped from bringing suit by his failure to list

10  insurance claims as assets in schedules filed in connection with his earlier bankruptcy petition);

11  *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give

12  notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops

13  the debtor from prosecuting that cause of action).

14      The reason for this rule is simple.  In a bankruptcy case, the debtor has a *duty and*

15  *obligation* to raise such claims in the reorganization plan or in the other schedules and

16  disclosures that are part of the bankruptcy.  11 U.S.C § 521 ("[t]he debtor shall file a list of

17  creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of

18  current income and current expenditures, [and] a statement of the debtor's financial affairs").  As

19  Plaintiffs acknowledge, the Court is entitled to and does rely on the debtor's disclosures in

20  assessing whether to approve the plan.  Brief at 14.

21      In sharp contrast, non-debtor third-parties in a bankruptcy case owe no obligation or duty

22  ***whatsoever*** to disclose to the Court claims that ***they*** might have against other tortfeasors, even if

23  they are also creditors.  Therefore, the Funds (mere shareholders in the bankruptcy case) had no

24  duty (nor would it be appropriate) to include ***their*** antitrust claims in Napster's reorganization

25  plan and disclosures.  *See* 11 U.S.C. § 541 (property of bankruptcy estate is comprised of all the

26  property interests of the debtor).  This is particularly true where, as here, the Funds' standing to

27  pursue these claims is contingent on a set of facts that the Funds themselves dispute – i.e., the

28  Plaintiffs' allegation of the Funds' "essentially full operational control" over Napster at dates

*prior* to Napster's bankruptcy.  In short, there are no facts supporting judicial estoppel against the Funds.

**C.      Pursuant to their due process rights, the Funds cannot be barred from bringing their antitrust claims under the doctrine of res judicata / claim preclusion.**

Fundamental due process rights guarantee private parties a fair opportunity to litigate their claims, and those rights are subject only to narrow exceptions.  *Richards v. Jefferson County*, 517 U.S. 793, 797 n.4 (1996).  Plaintiffs seek to deprive the Funds of due process rights, arguing that the Funds cannot litigate their antitrust claims because, claim the Plaintiffs, they are barred by res judicata as a result of judgments in the Napster bankruptcy.  In particular, Plaintiffs argue that the Napster Trustee's decision not to object to Plaintiffs' proof of claim by an offsetting antitrust claim, and the Trustee's decision not to include Napster's antitrust claims in its reorganization plan and schedules, resulted in bankruptcy judgments which now preclude the Funds from pursuing their own antitrust claims.  The law does not support Plaintiffs' argument that the Trustee's inaction on this matter binds the Funds to judgments in the bankruptcy.

In support of their argument, Plaintiffs cite to authority that might bar Napster itself, or its Trustee, from bringing antitrust claims against the Plaintiffs today.  However, even assuming *arguendo* that Plaintiffs some day prove the disputed allegation of alter-ego status, none of the Plaintiffs' cases support the notion that the Funds would thereby be bound by the same preclusion principles that might today bar Napster itself from bringing its own antitrust claim.  *See Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir 1998); *In re Int'l Neutonics, Inc.*, 28 F.3d 965 (9th Cir. 1994).  Instead, Plaintiffs' cases address only the issue of whether the *debtor itself* or its successor in interest should be barred from later pursuing a prepetition claim that the debtor could have raised but failed to raise in the context of its bankruptcy proceedings.  *See Siegel*, 143 F.3d at 530-31 (*debtor's* failure to object to lenders' proofs of claim for past due mortgage payments, which claims were therefore "deemed allowed" in bankruptcy case, precluded *debtor* from thereafter bringing suit against lender for tort and contract claims arising out of lender's actions in foreclosing on debtor's property); *In re Int'l Neutonics,* 28 F.3d at 971 (*debtor* precluded from bringing claim that could have been raised to

365857.01

1   challenge bankruptcy sale order); *Goldstein v. Griffing*, 297 B.R. 766, 772 (Bankr. D. Ariz.

2   2003) (*debtor* precluded from bringing post-confirmation suit where cause of action had not been

3   mentioned in debtor's disclosure statement or plan).  Those cases are silent on the question,

4   discussed below, of due process limits on binding alleged alter-egos of a corporation to

5   judgments against the corporation.

6          Plaintiffs' failure to cite authority that actually addresses the question at hand is likely

7   due to the fact that it does not favor their position.  A judgment against a corporation cannot bind

8   a third party affiliated with the corporation unless "the individual to be charged . . . had ***control***

9   of the litigation and occasion to ***conduct it with a diligence*** corresponding to the risk of personal

10  liability that was involved."  *NEC Electronics Inc. v. Hart*, 256 Cal. Rptr. 441, 444, 208 Cal.

11  App. 3d 772, 779 (1989), *citing* Restatement (Second) of Judgments § 59 (1982) (emphasis

12  added); *Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1150 (9th Cir.

13  2004) (addition of principal to the default judgment without a showing that he controlled the

14  litigation in the underlying action was a violation of due process rights).[2]  Further, liability will

15  not be imposed where the third party and the corporation's interests were not the same in the

16  litigation, such as where the corporation is on the verge of bankruptcy.  *See, e.g.*, *NEC*

17  *Electronics*, 256 Cal. Rptr. at 445 (res judicata improper where the corporation and shareholder

18  did not share the same interests; the corporation "simply had no incentive to defend the

19  [underlying] lawsuit *because [it] was on the verge of bankruptcy*") (emphasis added).  Similarly,

20  liability will not be imposed where the third party in question was not represented in the

21  underlying lawsuit due to the fact that the corporation simply did not make an effort to defend

22  the underlying action.  *See, e.g., id.*; *Motores de Mexicali, N.A. v. Superior Court*, 331 P.2d 1, 3,

23  51 Cal. 2d 172, 176 (1958).

24

25  ---

[2] The federal law of res judicata "is fundamentally a common law subject as to which federal courts have embraced the Restatement (Second) [of Judgments] and its official comments as authoritative."  *In re Associated Vintage Group*, 283 B.R. 549, 554 (9th Cir. B.A.P. 2002), *citing Migra v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n.1 (1984).  In the Ninth Circuit, courts have frequently relied on the Restatement (Second) of Judgments.  *See, e.g., United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998); *California Employment Dev. Dep't v. Taxel*, 98 F.3d 1147, 1150 (9th Cir. 1996); *Hiser v. Franklin*, 94 F.3d 1287, 1290 (9th Cir. 1996).

26

27

28

Plaintiffs have made no showing whatsoever that would satisfy the above stringent requirements for imposing res judicata against the Funds as a result of any judgment in the Napster bankruptcy.[3]  First, there is no evidence suggesting – much less a combination of evidence sufficient to show – that the Funds had any control over the litigation acts and strategy of Napster's bankruptcy Trustee ***during the relevant bankruptcy litigation***.  *NEC Electronics*, 256 Cal. Rptr. at 446 ("Control over the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of the attorneys, and control over the course of the litigation") (citation omitted).  While Plaintiffs have alleged that the Funds were "in control" of Napster during the time period that Napster was up and running (i.e., May 2000 through early July 2001) because of Mr. Barry's role as interim CEO and Mr. Barry's and Mr. Hummer's roles on the Board of Directors (Complaint ¶ 2), there are no facts supporting an allegation that the Funds controlled Napster (much less Napster's Trustee in bankruptcy) during the bankruptcy litigation (July 2002 through January 2005).  That is because Mr. Barry resigned as interim CEO in July 2001, and Mr. Barry and Mr. Hummer gave up their positions on the board of directors in May 2002, ***before*** the commencement of the Napster bankruptcy proceedings.  Anderson Decl., Exs. B, C.  Hence, there are no facts suggesting that the Funds had any control whatsoever over Napster during the bankruptcy proceedings, much less control over the Trustee and his litigation proceedings.  In fact, it would have been a violation of the Trustee's fiduciary duties to allow shareholders– who collectively are last in line for distributions from the estate – to control the litigation *sub silentio*.  *See Nangle v. Surratt-States* (*In re Nangle*), 288 B.R. 213, 219 (B.A.P. 8th Cir. 2003) (trustee in bankruptcy represents the interests of the debtor's estate and its creditors, not the interests of the debtor or the debtor's principals); *Johnson v. Richter, Miller & Finn* (*In re Johnson*), 312 B.R.

---

[3] The burden of proving all the elements of claim preclusion rests with the party seeking to bind the other party to the preclusive effects of the earlier judgment, including demonstrating that no exception applies, and doubts are to be resolved ***against*** preclusion.  *See In re Associated Vintage Group*, 283 B.R. at 562, *citing Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407-408 (9th Cir. 1985); *Church of Scientology v. Lindberg*, 529 F. Supp 945, 961 (C.D. Cal. 1981); *Bankers Trust Co. v. Rhodes,* 108 B.R. 423, 427-28, *on reargument* 111 B.R. 54 (S.D.N.Y. 1989) (Plaintiff failed to establish that [defendant] exercised sufficient control over the bankruptcy proceedings to be bound by the determination against [the debtor corporation).

810, 824 (E.D. Va. 2004) (bankruptcy trustee, as representative of all creditors of the estate, necessarily must balance the interests of all the creditors for the benefit of the estate as a whole); *In re Computer Learning Ctrs., Inc.*, 285 B.R. 191, 207 (Bankr. E.D. Va. 2002) (trustee must remain in control of the administration of bankruptcy case and may not delegate essential decision-making responsibility).

Second, application of res judicata is impermissible because the interests of the Napster Trustee and the Funds were not only divergent but even antagonistic in the bankruptcy case. That is no surprise; the Trustee's obligations to the bankruptcy estate were to collect and then distribute Napster's assets in the order and fashion provided by bankruptcy law – which necessarily placed the Funds last in line for any recovery in the proceedings. Brief at 18:15-18. In other words, in sharp contrast to the Funds' own interests, the Trustee's interest in making any payment to the Funds took a back seat to his interest in making payments to every single other creditor to the Napster bankruptcy estate – a long list indeed.

Third, res judicata cannot be applied against the Funds because the Napster Trustee made no effort whatsoever to defend against (much less assert an offsetting antitrust counterclaim against) the Plaintiffs' copyright infringement claims. Brief at 4-5. In light of this failure, the Funds cannot be bound by the results of that inaction. *See, e.g., Motores de Mexicali*, 331 P.2d at 3-4 (shareholder/alter-ego could not be subject to res judicata as a result of judgment against corporation where corporation did not make any attempt to defend against the underlying action).

In sum, it would violate due process to deny the Funds the ability to pursue their own antitrust counterclaims because of judgments entered against Napster in the bankruptcy proceeding. For reasons that presumably were viewed by the Trustee as beneficial to the body of creditors seeking recovery from Napster, the Trustee decided not to pursue certain claims that he had a right to pursue. Having made this determination independently, and certainly not under the control of the Funds, the Napster Trustee's inaction cannot serve to deny the Funds their own right to seek recovery in this case as an offsetting counterclaim regarding the Plaintiffs' copyright infringement claims.

365857.01

**D.    Equitable principles favor the Funds' ability to pursue their antitrust claims and do not constitute an "end run" around bankruptcy law principles.**

At the close of their brief, Plaintiffs essentially argue that it would be inequitable for the Funds to pursue their antitrust claims against the Plaintiffs because it would somehow permit the Funds to make an "end run" around other creditors in the bankruptcy estate.  Plaintiffs are wrong; instead, it would be highly inequitable to dismiss the Funds' antitrust claims.

First, the only "end run" presented by this motion is whether the Plaintiffs can successfully sidestep tortfeasor liability for antitrust violations by having driven their competition to bankruptcy through their misconduct.  As the Court is aware, Plaintiffs seek to recover from the Funds copyright infringement damages that they claim to have suffered as a result of Napster users' file-sharing activities.  Those are the same damages that they sought to recover from Napster in the *Napster I* litigation.  Anderson Decl., Ex. D (Prayer for Judgment).[4] In their responsive Counterclaims, the Funds have alleged that the pre-bankruptcy Napster sought to transform itself into a highly profitable company by obtaining licenses for the online distribution of sound recordings from Plaintiffs (and the other Majors) and then charging users some amount of money for the right to download songs via Napster.  Answer and Counterclaim of the Hummer Winblad Defendants, ¶¶ 32-33.  Yet, Napster was prevented from entering this market for the licensed online distribution of music because of the Plaintiffs' collective refusal to grant licenses on anything but anticompetitive terms to everyone in the market, including Napster.  *Id.* ¶ 24.  The Funds allege that this refusal to deal ultimately drove Napster into bankruptcy.  *Id.* ¶ 27.  Thus, any ability of Napster to be profitable and thereby pay any judgment for which it might have been held liable in a private copyright infringement suit between Plaintiffs and a solvent Napster (and the Funds deny that Napster ever should have been held liable for such a judgment) was destroyed by the Plaintiffs' anticompetitive conduct.

Yet, while the Plaintiffs seek to hold the Funds liable for a judgment that (if ever obtained) could have and would have been paid by a profitable Napster, Plaintiffs simultaneously

---

[4] The Court may take, and the Funds request that this Court take, judicial notice of the complaint filed against Napster on December 6, 1999.  *See Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (court records may be judicially noticed).

OPPOSITION TO PLAINTIFFS' SUMMARY JUDGMENT MOTION
No. C MDL-00-1369 (MHP)

1   seek to deny the Funds the ability to assert an offsetting counterclaim premised on the tortious

2   conduct that drove Napster into bankruptcy.  Such a result is counter to principles of equity and

3   fairness, leaving the Funds holding the bag for the activities of an entity of which they are

4   alleged to have been in "essentially full operational control," but unable to assert the same

5   offsetting counterclaims that could have been asserted by the bankrupt entity.

6          This unjust result is made even more offensive by the facts of which the Trustee in

7   bankruptcy could not have been aware, but of which the Funds are aware.  During the period of

8   time that the bankruptcy proceedings were open and because the Trustee did not assert any

9   antitrust claim, the Trustee had access to virtually no discovery into the question of whether the

10  Plaintiffs had violated antitrust laws in regard to the market for online distribution of music.

11  However, during that same period of time, it was publicly known that the Department of Justice

12  ("DOJ") was conducting an investigation into those same questions.  Anderson Decl., Ex. E.  In

13  December of 2003, the DOJ ultimately issued a five-page press release, explaining why it was

14  dropping its investigation into these questions.  Anderson Decl., Ex. F.  Just four months later,

15  the final plan of reorganization was confirmed, and it did not seek to assert antitrust claims

16  against the Plaintiffs.  Brief at 5:15.  It is reasonable to assume that, had the DOJ issued a

17  contrary press release in 2003 stating that it had found the Plaintiffs to have engaged in antitrust

18  violations in the very market Napster sought to enter, there is a substantial likelihood that the

19  reorganization plan would have made reservation for (and possibly settled in exchange for

20  consideration) the antitrust claims.

21         What the Trustee did not and could not have known at the time, however, is the

22  information that the Funds have subsequently learned through discovery taken in this case.

23  Specifically, and as detailed fully in the papers supporting the Funds' motion to compel

24  production of privileged documents on the basis of the crime-fraud exception (filed on Nov. 29,

25  2005 and incorporated herein by reference), the documents produced in this case evidence that

26  the Plaintiffs submitted false and misleading statements to the DOJ in seeking to have the DOJ

27  drop its investigation into allegations of anticompetitive conduct among the Plaintiffs and the

28  other Majors.  It would be a highly inequitable result for the Funds to be barred from asserting

1   their counterclaim simply because the Trustee in bankruptcy, who did not and could not have

2   known the facts of which the Funds are now aware, decided not to pursue the antitrust claims.

3          Finally, Plaintiffs' argument of inequity lacks any merit.  Plaintiffs cite no law, and the

4   Funds are aware of none, supporting the notion that the Funds "cannot claim the benefits" of

5   their antitrust claims without "assum[ing] responsibility for all of the claims allowed in the

6   bankruptcy proceeding."  Brief at 19:2-7.  There is no suggestion of any such requirement in

7   cases like *John Peterson Motors*.  Moreover, such a rule would simply create a disincentive to

8   vindicating the important interests served by the antitrust laws, while simultaneously allowing

9   tortfeasors (like the Plaintiffs) to retain the benefits of their wrongdoing without fear of

10  enforcement by parties (like the Funds) in the zone of injury of a corporation driven into

11  bankruptcy by those same tortfeasors.

12                            **IV.    CONCLUSION**

13         Plaintiffs' motion for summary judgment should be denied in its entirety.  The Court

14  should adhere to its prior ruling and find, again, that the Funds have standing to pursue their

15  contingent antitrust claims.  Further, there is no basis on which to find that judicial estoppel or

16  res judicata bar the Funds' antitrust claims.

17

18  Dated:  January 26, 2006                     KEKER & VAN NEST, LLP

19

20

21                                       By:  ____/s/  Christa M. Anderson_____
                                              CHRISTA M. ANDERSON
22                                            Attorneys for Defendants
                                              HUMMER WINBLAD VENTURE
23                                            PARTNERS IV, L.P.; HUMMER
                                              WINBLAD TECHNOLOGY FUND IV,
24                                            L.P.; HUMMER WINBLAD EQUITY
                                              PARTNERS IV LLC; HANK BARRY;
25                                            and JOHN HUMMER

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   BACKGROUND FACTS...........................................................................................2

      A.    The Hummer Winblad Defendants' motion to dismiss Plaintiffs'
            claims. ..............................................................................................................2

      B.    The Funds' antitrust counterclaims against the Plaintiffs.........................3

III.  ARGUMENT ...............................................................................................................4

      A.    As this Court has already concluded, the Funds have standing to assert
            their antitrust claims if the Plaintiffs prove certain facts supporting
            their claims.......................................................................................................4

            1.    This Court properly concluded once before that the Funds have
                  standing to bring their claims..............................................................5

            2.    Napster's Trustee did not hold the exclusive right under
                  antitrust law to pursue claims premised on Plaintiffs'
                  anticompetitive conduct. .....................................................................6

            3.    The mere fact that Napster's Trustee could have filed an
                  antitrust claim during the pendency of Napster's bankruptcy
                  case does not bar the Funds' claims.........................................................9

      B.    Plaintiffs identify no facts that warrant application of judicial estoppel
            against the Funds based on acts by Napster.........................................................10

            1.    The Funds took no position before the bankruptcy court that
                  was "clearly inconsistent" with its antitrust claims in this case................11

            2.    The Funds made no misleading representations to any court. ...................12

            3.    The Funds do not gain an unfair advantage, nor do they seek to
                  impose an unfair detriment, by asserting their antitrust claims. ...............12

            4.    Plaintiffs' arguments in favor of judicial estoppel have no
                  merit. ....................................................................................................12

      C.    Pursuant to their due process rights, the Funds cannot be barred from
            bringing their antitrust claims under the doctrine of res judicata / claim
            preclusion. ..........................................................................................................14

      D.    Equitable principles favor the Funds' ability to pursue their antitrust
            claims and do not constitute an "end run" around bankruptcy law
            principles..............................................................................................................18

IV.   CONCLUSION..........................................................................................................20

i

365857.01

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Am. Ad Mgmt., Inc. v. General Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ....................................................................5

*Associated General Contractors of California, Inc. v. California State
Council of Carpenters*,
459 U.S. 519 (1983) .............................................................................. *passim*

*Bankers Trust Co. v. Rhodes*,
108 B.R. 423 .......................................................................................16

*Bishay v. American Isuzu Motors, Inc.*,
404 F.3d 491 (1st Cir. 2005) ..............................................................9, 10

*Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*,
136 F.3d 1360 (9th Cir. 1998) ..............................................................18

*California Employment Development Department v. Taxel*,
98 F.3d 1147 (9th Cir. 1996) ................................................................15

*Church of Scientology v. Lindberg*,
529 F. Supp. 945 (C.D. Cal. 1981) ........................................................16

*Donato v. Metropolitan Life Insurance Co.*,
230 B.R. 418 (Bankr. N.D. Cal. 1999) ...................................................10

*Goldstein v. Griffing*,
297 B.R. 766 (Bankr. D. Ariz. 2003) ......................................................15

*Hamilton v. State Farm Fire & Casualty Co.*,
270 F.3d 778 (9th Cir. 2001) ........................................................10, 11, 13

*Hay v. First Interstate Bank of Kalispell, N.A.*,
978 F.2d 555 (9th Cir. 1992) ................................................................13

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) ................................................................15

*In re Associated Vintage Group*,
283 B.R. 549 (9th Cir. B.A.P. 2002), ................................................*15, 16*

*In re Computer Learning Ctrs., Inc.*,
285 B.R. 191 (Bankr. E.D. Va. 2002) ....................................................17

*In re International Neutonics, Inc.*,
28 F.3d 965 (9th Cir. 1994) ..................................................................14

*John  Peterson Motors, Inc. v. General Motors Corp.*,
613 F. Supp. 887 (D. Minn. 1985) .................................................7, 8, 9, 20

*Johnson v. Richter, Miller & Finn (In re Johnson)*,
312 B.R.  810 (E.D. Va. 2004) ..............................................................16

*Katzir's Floor and Home Design, Inc. v. M-MLS.com*,
394 F.3d 1143 (9th Cir. 2004) ..............................................................15

365857.01

1

**TABLE OF CONTENTS**
(cont'd)

2

**Page**

3

*Lovett v. General Motors Corporation,*
   975 F.2d 518 (8th Cir. 1992) ....................................................................7, 8, 9

4

*M.K. Metals, Inc. v. National Steel Corp.,*
   1986 WL 4420, at *2 (N.D. Ill. Apr. 7, 1986) ...............................................8

5

*Migra v. Warren City School District Board Of Education,*
   465 U.S. 75 (1984)........................................................................................15, 16

6

*Morris v. California,*
   966 F.2d 448 (9th Cir. 1991) .......................................................................10

7

*Nangle v. Surratt-States,*
   288 B.R. 213 (B.A.P. 8th Cir. 2003) ...........................................................16

8

*New Hampshire v. Maine,*
   532 U.S. 742 (2001)......................................................................................11

9

*Richards v. Jefferson County,*
   517 U.S. 793 (1996)......................................................................................14

10

*Rissetto v. Plumbers & Steamfitters Local 343,*
   94 F.3d 597 (9th Cir. 1996) .........................................................................10

11

*Russell v. Rolfs,*
   893 F.2d 1033 (9th Cir. 1990) .....................................................................10, 11

12

*Siegel v. Federal Home Loan Mortgage Corp.,*
   143 F.3d 525 (9th Cir 1998) ........................................................................14

13

*Stepp v. Ford Motor Credit Co.,*
   623 F. Supp. 583 (E.D. Wis. 1985)..............................................................8

14

*United States ex rel. Barajas v. Northrop Corp.,*
   147 F.3d 905 (9th Cir. 1998) .......................................................................15

15

**STATE CASES**

16

*Motores de Mexicali, N.A. v. Superior Court,*
   331 P.2d 1, 51 Cal. 2d 172 (1958)...............................................................15, 17

17

*NEC Electronics Inc. v. Hart,*
   256 Cal. Rptr. 441, 208 Cal. App. 3d 772 (1989),.......................................15, 16

18

**FEDERAL STATUTES**

19

11 U.S.C. § 521 ........................................................................................................13

20

11 U.S.C. § 541 ........................................................................................................13

21

**TREATISES**

22

Restatement (Second) of Judgments § 59 (1982) ..................................................15, 16

23

24

25

26

27

28

iii

365857.01