**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

6
7
8

| | |
|---|---|
| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | |
| | **No. C MDL-00-1369 MHP** |
| This Document Relates To: | |
| UMG RECORDINGS, INC. et al., | |
| Plaintiffs, | No. C 04-1166 MHP |
| v. | |
| HUMMER WINBLAD VENTURE PARTNERS et al., | |
| Defendants. | |
| UMG RECORDINGS, INC. et al., | |
| Plaintiffs, | No. C 04-1351 MHP |
| v. | |
| BERTELSMANN AG et. al., | |
| Defendants. | |
| JERRY LEIBER et al., | |
| Plaintiffs, | No. C 04-1671 MHP |
| v. | |
| BERTELSMANN AG et al., | |
| Defendants. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CAPITOL RECORDS, INC. et al.,

      Plaintiffs,                                No. C 04-2121 MHP

     v.

BERTELSMANN AG et. al.,

      Defendants.

**MEMORANDUM & ORDER**
**Re: Motion for Summary**
**Adjudication**

The above-captioned actions arise from the litigation involving alleged copyright infringement by Napster, Inc. and its customers.  Now before the court is defendant Bertelsmann's motion for summary adjudication, joined by defendant Hummer Winblad, seeking to limit its liability for copyright infringement to those works that were the subject of notice to Napster, and, more narrowly, those works of which Bertelsmann had actual notice.  Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

The instant motion relates to four actions now pending before this court as part of the In re Napster Copyright Litigation multidistrict litigation ("MDL") proceedings, Case No. C MDL-00-1369 MHP.  The history of this litigation is well documented in this court's previous orders, but is relevant to the motion currently before the court and warrants review.  These consolidated proceedings initially arose from allegations that the users of the peer-to-peer Internet file-sharing network operated by Napster, Inc. infringed copyrights in musical compositions and sound recordings owned or controlled by numerous record labels, composers, and music publishers.  In turn, these allegations gave rise to claims of contributory and vicarious copyright infringement against Napster.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    On August 10, 2000, this court entered an order preliminarily enjoining Napster from

2    "engaging in, or facilitating others in copying, downloading, uploading, transmitting, or distributing

3    plaintiffs' copyrighted musical compositions and sound recordings . . . without express permission

4    of the rights owner."  A & M Records, Inc. v. Napster, Inc., 114 F. Supp. 2d 896, 927 (N.D. Cal.

5    2000) (Patel, C.J.).  The entry of the injunction was affirmed on appeal, see A & M Records, Inc. v.

6    Napster, Inc. ("Napster I"), 239 F.3d 1004 (9th Cir. 2001), but the Ninth Circuit remanded with

7    instructions to modify the injunction's scope.  On March 5, 2001, this court entered an order

8    consistent with the Ninth Circuit's instructions.  See A & M Records, Inc. v. Napster, Inc., No. C

9    MDL-00-1369 MHP, 2001 WL 227083 (N.D. Cal. Mar. 5, 2001) (Patel, C.J.), aff'd, 284 F.3d 1091

10   (9th Cir. 2002) ("Napster II").  After concluding that it was not technologically feasible to comply

11   with the court's March 2001 order and continue operating its file-sharing network, Napster ceased

12   operations on July 1, 2001.

13   Napster subsequently sought bankruptcy protection and is no longer party to the consolidated

14   MDL proceedings that bear its name.  The proceedings continue, however, with various plaintiffs

15   taking aim at the still-solvent entities that invested in Napster before it ceased operations.  Among

16   those former Napster investors are Bertelsmann, a media conglomerate with interests in the fields of

17   television and radio, publishing, online media, and music distribution, and Hummer Winblad, a

18   private equity partnership that provides venture capital funding to private companies (collectively

19   the "defendants").  Prior to the shut-down of the Napster network, both Bertelsmann and Hummer

20   Winblad made significant investments in Napster, with Bertelsmann investing a total of $85 million

21   in the form of convertible loans and Hummer investing approximately $13 million.

22   The plaintiffs in the above-captioned actions include UMG Recordings, Inc., Capitol

23   Records, Inc., and a host of other record companies who own copyrighted musical compositions and

24   sound recordings that were allegedly uploaded and downloaded by users of the Napster network, as

25   well as music publishers and composers represented by the Harry Fox Agency (collectively the

26   "plaintiffs").  In each of the four pending actions, plaintiffs allege that by investing in Napster and

27   assuming control of the operation of the Napster file-sharing network, the named defendants

28

3

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

contributorily and vicariously infringed plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. § 101 et seq.  See 17 U.S.C. § 106.  In addition, the record label plaintiffs assert various state law causes of action for misappropriation, unfair competition, and civil conspiracy arising out of the alleged infringement of their rights in pre-1972 sound recordings.

The court has already addressed the legal sufficiency of plaintiffs' copyright claims in its July 14, 2004 order denying the separately filed motions to dismiss of Bertelsmann and Hummer Winblad.  See UMG Recordings, Inc. v. Bertelsmann AG, 222 F.R.D. 408 (N.D. Cal. 2004) (Patel, C.J.).  In that order, the court held that plaintiffs' allegations that Bertelsmann and Hummer Winblad "exercised essentially full operational control over Napster during periods in which Napster remained a conduit for infringing activity" would, if proven, give rise to liability for contributory and vicarious infringement under the Copyright Act.  Id. at 413–14.  The court has also granted in part defendants' motion for summary judgment of non-liability, finding plaintiffs' argument—that the Napster system infringed their copyrights directly through its centralized indexing system—to lack merit.  See UMG Recordings, Inc. v. Bertelsmann AG, 377 F. Supp. 2d 796, 805 (N.D. Cal. 2005) (Patel, J.).

Defendants now seek summary adjudication that their liability for damages arising out of secondary infringement of plaintiffs' copyrights is circumscribed by Napster's liability, which defendants argue is limited to those works of which Napster had actual notice from plaintiffs and failed to remove from its system.  Defendants also argue that by virtue of being one step removed from Napster, their liability is further limited to those works of which Bertelsmann and Hummer Winblad had actual notice and failed to have removed from the Napster system.


LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

2   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

3   party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of

4   

5   the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material

6   fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

7   will have the burden of proof at trial, the moving party need only point out "that there is an absence

8   of evidence to support the nonmoving party's case."  Id.

9        Once the moving party meets its initial burden, the nonmoving party must go beyond the

10  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

11  genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

12  party's allegations.  Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.

13  1994).  The court may not make credibility determinations, and inferences to be drawn from the

14  facts

15  must be viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker

16  Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

17       The moving party may "move with or without supporting affidavits for a summary judgment

18  in the party's favor upon all or any part thereof."  Fed. R. Civ. P. 56(a).  "Supporting and opposing

19  affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

20  evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

21  therein."  Fed. R. Civ. P. 56(e).

22  

23  DISCUSSION

24       Defendants' motion raises two separate questions:  the scope of Napster's liability and, in

25  light of Napster's liability, the scope of Bertelsmann's liability.  The court will consider each

26  question in turn.

27  

28

I.      Napster's Liability for Damages

Defendants argue that the Ninth Circuit's rulings in Napster I and Napster II limit Napster's liability to those works of which Napster had actual notice and which Napster failed to remove from its system.  Plaintiffs dispute defendants' reading of Napster I, and also argue that this court's holding in Fonovisa, Inc. v. Napster, Inc., No. 3:01-CV-02669, 2002 WL 398676 (N.D. Cal. Jan. 28, 2002) (Patel, J.) and the Supreme Court's recent decision in Metro-Goldwyn-Mayer Studios, Inc. v. Grokster LTD., --- U.S. ---, 125 S. Ct. 2764 (2005) firmly establish that actual notice is not required.

Plaintiffs argue that defendants are attempting to re-litigate the same contention already rejected by this court in Fonovisa, discussed below—that Napster I added a "notice" element to the legal standard for infringement by file-sharing services.  The court finds that defendants actually advance a slightly different argument:  that the ultimate holding of Napster I with respect to the degree of Napster's liability is binding in this litigation, regardless of how the Napster I court formulated the legal standards for contributory or vicarious infringement.  As defendants' argument is distinct from that advanced in Fonovisa, this court will revisit all three decisions in detail.

A.      Napster I

The Ninth Circuit's Napster I ruling was an appeal of this court's grant of the initial preliminary injunction against Napster.  In the original injunction, this court forbade Napster "from engaging in, or facilitating others in copying, downloading, uploading, transmitting, or distributing plaintiffs' copyrighted musical compositions or sound recordings, protected by either federal or state law, without express permission of the rights owner."  Napster, 114 F. Supp. 2d at 927.  This court based the injunction on the findings that Napster both contributorily and vicariously infringed the plaintiffs' copyrights.

On appeal, the Ninth Circuit first considered whether the record supported the findings of contributory and vicarious infringement.  With respect to contributory infringement, the Ninth Circuit focused on this court's conclusion that Napster had the requisite knowledge—that Napster "knew or had reason to know" of its users' direct infringement.  Napster I, 239 F.3d at 1020.  The

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Ninth Circuit's exploration of Napster's knowledge is complex and somewhat confusing, and

2   requires careful examination.

3          The court began by noting that "[i]t is apparent from the record that Napster has knowledge,

4   both actual and constructive, of direct infringement."  Id.  In support of this assertion, the Ninth

5   Circuit adopted this court's findings:

6          The district court found *actual knowledge* because: (1) a document authored by
           Napster co-founder Sean Parker mentioned "the need to remain ignorant of users' real
7          names and IP addresses 'since they are exchanging pirated music'"; and (2) the
           Recording Industry Association of America ("RIAA") informed Napster of more than
8          12,000 infringing files, some of which are still available.  114 F. Supp. 2d at 918.
           The district court found *constructive knowledge* because: (a) Napster executives have
9          recording industry experience; (b) they have enforced intellectual property rights in
           other instances; (c) Napster executives have downloaded copyrighted songs from the
10         system; and (d) they have promoted the site with "screen shots listing infringing
           files."  Id. at 919.

11  Id. at 1020 n.5 (emphasis added).  Of particular note are the Ninth Circuit's findings with respect to

12  constructive knowledge, which are predicated on the behavior and experiences of Napster and its

13  executives generally, without regard to specific infringing files.

14         The Ninth Circuit then turned to Napster's argument that its system should be insulated from

15  liability under Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417 (1984) (holding that certain

16  systems capable of substantial noninfringing uses should be insulated from liability for copyright

17  infringement).  The court reviewed the Napster system and found, as with the system in Sony, that it

18  was capable of substantial noninfringing uses.  See id. at 442; Napster I, 239 F.3d at 1020.  As a

19  result, the Napster I court held that it would "not impute the requisite level of knowledge to Napster

20  merely because peer-to-peer file sharing technology may be used to infringe plaintiffs' copyrights."

21  Id. at 1020–21.  The Ninth Circuit noted, however, that Sony did not end the inquiry as "the

22  evidentiary record here supported the district court's finding that plaintiffs would likely prevail in

23  establishing that Napster knew or had reason to know of its users' infringement of plaintiffs'

24  copyrights."  Id. at 1021.  Presumably, this last sentence refers back to the Ninth Circuit's adoption

25  of this court's finding of actual and constructive knowledge, which did not depend on the

26  architecture of the Napster system.  To paraphrase the Ninth Circuit's holding up to this point:

27

28

7

**UNITED STATES DISTRICT COURT**
For the Northern District of California

notwithstanding any inferences which may be drawn from the architecture of the accused system, direct evidence of actual or constructive knowledge is sufficient to satisfy the requirements of contributory infringement.

The opinion then abruptly shifts, presenting an apparent discontinuity in reasoning. Quoting from the district court opinion in Religious Technology Center v. Netcom On-Line Communication Services, Inc., 907 F. Supp. 1361 (N.D. Cal. 1995) (Whyte, J.), the Ninth Circuit stated that "evidence of actual knowledge of specific acts of infringement is required to hold a computer system operator liable for contributory copyright infringement." Napster I, 239 F.3d at 1021 (emphasis added). The standard in Netcom is stricter than the requirement of actual or constructive knowledge, as it requires actual knowledge. Later in the same page, however, the Ninth Circuit used more equivocal language:

> We agree that if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement. See Netcom, 907 F. Supp. at 1374. Conversely, absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material.

Id. Although this passage cites Netcom and references "specific infringing material," it appears to be an uncontroversial statement of established law. First, evidence of actual knowledge is sufficient to establish contributory liability. Second, liability cannot be established solely because the architecture of the system permits infringement. The next paragraph in the opinion also uses the "actual knowledge" formulation from Netcom, but does not clearly state that actual knowledge is required: "[t]he record supports the district court's finding that Napster has *actual* knowledge that *specific* infringing material is available using its system, that it could block access to the system by suppliers of infringing material, and that it failed to remove the material." Id. at 1022 (emphasis in original).

The section discussing Netcom is confusing in a number of respects. First, the opinion states at least two formulations of the level of knowledge required for infringement, suggesting alternately that actual knowledge is *required* and that it is *sufficient*. Second, the opinion does not explicitly

discuss constructive knowledge as an alternate basis for liability.  Focusing on the Ninth Circuit's own formulations of the legal standard, and not on the quote from Netcom, however, it is possible to read the first half of Napster I as upholding this court's findings on both actual and constructive knowledge, and affirming liability on both bases.  Certainly, the Ninth Circuit nowhere stated that it was modifying the "actual or constructive knowledge" standard for contributory infringement.

The portion of the Ninth Circuit's opinion modifying the scope of the preliminary injunction presents the second discontinuity in reasoning.  Claiming to "reiterate" its previous holding with respect to knowledge, the Napster I court set forth a three-factor test defining the boundary of Napster's contributory liability:  "contributory liability may potentially be imposed only to the extent that Napster: (1) receives reasonable knowledge of specific infringing files with copyrighted musical compositions and sound recordings; (2) knows or should know that such files are available on the Napster system; and (3) fails to act to prevent viral distribution of the works."  Id. at 1027.  This test appears to be derived from the Ninth Circuit's discussion of Netcom, but differs in that the Ninth Circuit required evidence of "reasonable" rather than "actual" knowledge to establish liability.

Based on the stated limits of Napster's liability, the Ninth Circuit formulated the following guidelines for narrowing the injunction.  First, the court "place[d] the burden on plaintiffs to provide notice to Napster of copyrighted works and files containing such works available on the Napster system."  Id.  Second, after plaintiffs provide notice, Napster "has the duty to disable access to the offending content," as well as the additional "burden of policing the system within the limits of the system"—in other words, searching the system for similarly named files.  Id.  On the basis of the Ninth Circuit's holding, this court modified the injunction to require that plaintiffs provide notice of specific infringing works.  The Ninth Circuit upheld the modified injunction in Napster II, 284 F.3d 1091.

This section demonstrates the inconsistency in the reasoning of the Napster I court.  Earlier in the opinion, the Ninth Circuit expressly upheld the "actual or constructive knowledge" standard for contributory infringement.  Napster I, 239 F.3d at 1020.  The Ninth Circuit further found that Napster had constructive knowledge based on facts unrelated to specific infringing files:  the

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

industry experience of Napster executives, Napster's history of enforcing its own intellectual property rights, use—including the downloading of copyrighted files—of the Napster system by Napster executives, and promotion of the Napster software using screen shots with the names of infringing files. Id. at 1020 n.5. The Ninth Circuit nonetheless in effect limited Napster's liability to those files of which Napster had actual knowledge. Id. at 1027. Although the Ninth Circuit used the word "reasonable" to qualify the level of required knowledge, the court's guidelines for the scope of the modified injunction require actual notice, suggesting a more stringent standard. The problem, of course, is that liability based on the facts supporting Napster's constructive knowledge would not be so confined. Commencing with the discussion of Netcom, however, the Napster I court avoided discussing constructive knowledge. The reasoning behind the stated limitation of Napster's liability is therefore incomplete.

Whether or not it is supported by clear reasoning, the Ninth Circuit explicitly stated that Napster must have "reasonable knowledge" of specific infringing works before it could be found liable. Plaintiffs attempt to avoid the consequences of the Ninth Circuit's holding by arguing that the rules used in crafting an injunction are distinct from those used in determining damages. The Ninth Circuit, however, expressly limited Napster's "liability," (i.e., the extent of its infringing conduct), according to the "reasonable knowledge" standard before embarking on a discussion of how the injunction should be modified. Although the actual proposed mechanics of the injunction—notice followed by a duty to remove the files—may be narrower than the outer limits of Napster's liability, there is no doubt that Napster I significantly reduced the scope of Napster's exposure.[2]

The court considers subsequent interpretation of the holding of Napster I, as well as its continuing relevance to the current litigation, in the following sections.

B.    Fonovisa

In Fonovisa this court was asked to determine whether Napster I modified the legal standard for claims of contributory or vicarious infringement. Napster, moving to dismiss Fonovisa's

complaint, argued that <u>Napster I</u> added a "notice" requirement for claims of secondary copyright infringement by on-line systems. <u>Fonovisa</u>, 2002 WL 398676, at *4. Napster argued that the new standard applied to on-line systems in general, regardless of the specific facts of how they were operated. <u>Id.</u> This court rejected Napster's argument for reasons already discussed: although <u>Napster I</u> set fairly narrow limits on Napster's liability, it studiously avoided any clear reshaping of the doctrine of contributory infringement as a whole. <u>Id.</u> at *10 ("[H]ad the Ninth Circuit intended to overhaul copyright liability and carve out special protections for computer service providers, the Court of Appeals would have explicitly stated such a change.").

Four additional points made in <u>Fonovisa</u> are relevant to the instant motion. First, this court observed that <u>Napster I</u> did not limit Napster's liability based on "notice." <u>Id.</u> at *9. As already discussed, the Ninth Circuit adopted the notice-and-duty-to-remove framework in the section crafting the scope of the modified injunction, after defining Napster's liability more broadly. <u>Id.</u> ("In tailoring injunctive relief to avoid violating <u>Sony</u>, the Ninth Circuit shifted the burden to plaintiffs to provide notice of specific infringing works and files . . . . [T]he Ninth Circuit's modification balanced the broad equitable discretion of this court with the doctrine that injunctive relief should avoid prohibiting legitimate conduct."). Liability is not necessarily coextensive with injunctive relief or damages. The required mental state for Napster's liability remained "reasonable knowledge."

Second, this court expressed the view that the conduct identified by the <u>Napster I</u> court as infringing use—actual notice followed by a failure to correct—was "exemplary," and not intended to be an exhaustive list. <u>Id.</u> at *7. In so holding, this court implicitly found that the Ninth Circuit's "reasonable knowledge" standard continued to encompass other methods of proving actual as well as constructive knowledge. <u>Fonovisa</u> did not consider the precise boundaries of Napster's liability following the ruling in <u>Napster I</u>. Nonetheless, the hypothetical example of "reasonable knowledge" offered by this court—tracking down a single individual with a "vast library of sound recordings" and extending a "personal invitation to that individual to join the Napster Music Community"— manifests this court's recognition that <u>Napster I</u> set the bar quite high. <u>See id.</u>

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Third, despite plaintiffs' arguments to the contrary, the fact that <u>Fonovisa</u> considered a

2  motion to dismiss and not the precise scope of liability is significant.  In order to survive a motion to

3  dismiss, a plaintiff need not identify a specific instance of infringement.  Instead, a plaintiff must

4  allege facts that, when viewed in a light most favorable to plaintiffs, support an inference that some

5  infringement took place.  Even under an "actual knowledge" standard, the plaintiffs in <u>Fonovisa</u>

6  would have satisfied their pleading burden, as they alleged "that Napster knew of music piracy on its

7  system, that it had the ability to patrol its database, that Napster had knowledge of *some specific*

8  *infringing files*, and did nothing to prevent continued infringement."  <u>Id.</u> at *8 (emphasis added).

9  The same facts, however, would be inadequate in proving the precise amount of damages.

10    Finally, this court acknowledged that broader readings of <u>Napster I</u> were possible, conceding

11  that a more sweeping interpretation might be "prescient."  <u>Id.</u> at *9 n.9.  Absent a compelling reason

12  to do so, however, this court declined to "read more into the Ninth Circuit's reasoning than it

13  stated."  <u>Id.</u>

14

15    C.    Grokster

16    In <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster LTD.</u>, 380 F.3d 1154 (9th Cir. 2004),

17  <u>vacated</u>, --- U.S. ---, 125 S. Ct. 2764 (2005), the Ninth Circuit interpreted <u>Napster I</u> more

18  expansively than this court anticipated in <u>Fonovisa</u>.  The <u>Grokster</u> panel read <u>Napster I</u> as standing

19  for the broad proposition that "if a defendant could show that its product was capable of substantial

20  or commercially significant noninfringing uses, then constructive knowledge of the infringement

21  could not be imputed."  <u>Id.</u> at 1160.[3]  The Grokster panel went on to hold that in order to prove

22  liability, the plaintiffs must show that defendants had "specific knowledge of infringement at a time

23  at which they contributed to the infringement, and failed to act upon that information."  <u>Id.</u> at 1162

24  (internal punctuation omitted).

25    The Supreme Court unanimously vacated the Ninth Circuit opinion.  125 S. Ct. 2764 (2005).

26  The Court's holding had two principal components.  First, the justices rejected the Ninth Circuit's

27  interpretation of <u>Sony</u>: "the Court of Appeals misapplied <u>Sony</u>, which it read as limiting secondary

28

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1   liability quite beyond the circumstances to which the case applied.  Sony barred secondary liability

2   based on presuming or imputing intent to cause infringement solely from the design or distribution

3   of a product capable of substantial lawful use."  Id. at 2778 (emphasis added); cf. Napster I, 239 F.3d

4   at 1020–21.

5           Second, the Supreme Court affirmed that infringement may be established through the use of

6   "rules of fault-based liability derived from the common law."  Id. at 2779.  The Court then applied

7   the common law concept of inducement to the context of copyright infringement:  "one who

8   distributes a device with the object of promoting its use to infringe copyright, as shown by clear

9   expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of

10  infringement by third parties."  Id. at 2780.  Among other examples of inducement, the Court placed

11  special emphasis on "advertising an infringing use or instructing how to engage in an infringing

12  use."  Id. at 2779.  The Court also repeatedly made note of the defendants' "efforts to supply

13  services to former Napster users," finding that "each company showed itself to be aiming to satisfy a

14  known source of demand for copyright infringement, the market comprising former Napster users."

15  Id. at 2781.

16          Taken as a whole, Grokster provides for liability under broader circumstances than those

17  permitted under Napster I.  The evidence stressed by the Court—particularly the defendants'

18  advertising and marketing strategies—is strikingly similar to the evidence supporting this court's

19  finding of constructive knowledge in shaping the original, more sweeping Napster injunction.  As

20  discussed supra, the Ninth Circuit in Napster I acknowledged this evidence, which provides a basis

21  for infringement independent of any specific knowledge of infringing files, but apparently ignored it

22  in crafting the "reasonable knowledge" standard of liability and the notice-based structure for the

23  final injunction.  See Napster I, 239 F.2d at 1027.

24          Defendants attempt to downplay the significance of Grokster in two ways.  First, defendants

25  argue that Grokster did not reverse the Ninth Circuit's finding with respect to contributory

26  infringement, but rather added an entirely new theory of infringement— inducement—previously

27  not recognized in copyright law.  It is not important, however, how the Grokster theory of liability is

28

13

labeled.  It is immaterial whether the <u>Grokster</u> theory of liability is a subspecies of contributory or

vicarious infringement, or whether it is a wholly separate theory based on inducement.  The question

is whether it applies to defendants in this case.

Second, defendants argue that the ruling in <u>Grokster</u> "cannot retroactively render actionable

conduct that conformed to the modified preliminary injunction entered following <u>Napster I</u>—a

closed case that is no longer on 'direct review.'"  Defs.' Reply Brief at 10 n.8 (citing <u>Harper v.</u>

<u>Virginia Dept. of Taxation</u>, 509 U.S. 86, 97 (1993)).  In <u>Harper</u>, the Supreme Court articulated the

general rule for retroactive application of its decisions to civil cases:  "When this Court applies a

rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and

must be given full retroactive effect in all cases still open on direct review and as to all events,

regardless of whether such events predate or postdate our announcement of the rule."  <u>Harper</u>, 509

U.S. at 97.

The limitation of retroactivity set forth in <u>Harper</u> is inapplicable in this case for several

reasons.  Bertelsmann is not Napster, and this action is not the same as the now-closed original

Napster lawsuit.[4]  Bertelsmann is alleged to be separately liable based on its control over the

operation of the Napster system.  Bertelsmann's liability may be factually derivative of Napster's in

that it is predicated on the same alleged acts of illegal copying.  Under <u>Harper</u>, though, newly

announced law applies to all open cases, even where they are based on facts which predate the

change in law.  <u>Id.</u> at 97.  Moreover, if the court were to accept Bertelsmann's suggestion that

Napster's liability is at issue in this case, then the scope of that liability is a question "still open and

on direct review," and retroactive application of the <u>Grokster</u> theory of liability is appropriate.  The

court therefore finds that plaintiffs are entitled to pursue recovery under the <u>Grokster</u> theory of

liability, which does not require actual or even reasonable knowledge of specific infringing files, as

well as under the "reasonable knowledge" standard articulated in <u>Napster I</u>.[5]

II.     <u>Defendants' Liability</u>

1    Having concluded that Napster's liability, to the extent it is at issue in this case, is not

2 constrained by Harper to the limits set forth in Napster I, the court need not reach defendants'

3 additional argument that their liability is further limited to those works of which they (as opposed to

4 Napster) had actual notice and failed to address.  Plaintiffs are entitled to pursue recovery from both

5 Bertelsmann and Hummer under the Grokster theory of liability, which does not require actual or

6 even reasonable knowledge of specific infringing files, as well as under the "reasonable knowledge"

7 standard articulated in Napster I.

8

9

10 CONCLUSION

11    For the above reasons the court hereby DENIES defendants' motion for summary

12 adjudication.

13

14

15    IT IS SO ORDERED.

16

17

18 Dated: May 17, 2006

19                                                     MARILYN HALL PATEL
                                                       District Judge
20                                                     United States District Court
                                                       Northern District of California

21

22

23

24

25

26

27

28

15

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**ENDNOTES**

1.  Unless otherwise noted, background facts are taken from the declarations submitted with the parties' briefs and from this court's previous orders.

2.  The Ninth Circuit adopted precisely the same limits for Napster's liability under the theory of vicarious infringement, albeit through a slightly different process of reasoning.  Napster I, 239 F.3d at 1023–24, 1027 (finding that Napster has the duty to police its system to remove copyrighted files from the index, limited to those files which "reasonably or roughly correspond" to infringing files of which Napster has actual notice).

3.  As already discussed, Napster I held nothing of the kind.  The Napster I court simply reaffirmed the holding of Sony that constructive knowledge cannot be imputed from the system alone when the system is capable of substantial noninfringing uses.  Napster I, 239 F.3d at 1020–21 ("We are bound to follow Sony, and will not impute the requisite level of knowledge *merely because peer-to-peer file sharing technology may be used to infringe plaintiffs' copyrights*") (emphasis added).

4.  Similarly, in a separate order on plaintiffs' motion for summary adjudication that Hummer lacks standing to bring its antitrust counterclaims, the court finds that Hummer's antitrust counterclaim is not the "same claim" as Napster's, but rather is based on Hummer's own alleged involvement in running the Napster service.

5.  The holding in Napster I may be relevant in other ways, such as establishing whether Bertelsmann's alleged infringement was willful—a finding which would have an effect on damages. See 17 U.S.C. § 504(c)(2).

16