UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | **No. C MDL-00-1369 MHP** |
| This Document Relates To: | |
| UMG RECORDINGS, INC. et al., | |
| Plaintiffs, | No. C 04-1166 MHP |
| v. | |
| HUMMER WINBLAD VENTURE PARTNERS et al., | |
| Defendants. | |
| UMG RECORDINGS, INC. et al., | |
| Plaintiffs, | No. C 04-1351 MHP |
| v. | |
| BERTELSMANN AG et. al., | |
| Defendants. | |
| JERRY LEIBER et al., | |
| Plaintiffs, | No. C 04-1671 MHP |
| v. | |
| BERTELSMANN AG et al., | |
| Defendants. | |

CAPITOL RECORDS, INC. et al.,

    Plaintiffs,

    v.

BERTELSMANN AG et. al.,

    Defendants.

No. C 04-2121 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Summary Adjudication**

The above-captioned actions arise from litigation involving alleged copyright infringement by Napster, Inc. and its customers. Plaintiffs UMG Recordings, Inc., et al. now move for summary adjudication that defendants Hummer Winblad Venture Partners, et al. (collectively, "Hummer") may not assert an antitrust counterclaim against plaintiffs. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

The instant motion relates to four actions now pending before this court as part of the In re Napster Copyright Litigation multidistrict litigation ("MDL") proceedings, Case No. C MDL-00-1369 MHP. Plaintiffs allege that by investing in Napster and assuming control of the operation of the Napster file-sharing network, Hummer contributorily and vicariously infringed plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. section 101 et seq. See 17 U.S.C. § 106. Hummer has asserted various counterclaims and affirmative defenses, including antitrust violations, copyright misuse, and unclean hands. Hummer's antitrust counterclaim alleges that plaintiffs conspired to exclude Napster and other independent music distributors from the online music distribution market.

In order to provide context for the instant motion, it is necessary to review two of this court's previous orders in this litigation. The first relevant prior order considered Hummer's motion to

2

dismiss plaintiffs' complaints for failure to state a cognizable claim. Hummer argued that it could not be held liable for copyright infringement based solely on its investment in Napster. This court denied Hummer's motion because plaintiffs in this case alleged more than mere financial contribution; they alleged that Hummer "exercised essentially full operational control over Napster" and that Hummer ordered that Napster's infringing activity took place. UMG Recordings, Inc. v. Bertelsmann AG, 222 F.R.D. 408, 413 (N.D. Cal. 2004).

The second relevant prior order considered plaintiffs' motion to dismiss Hummer's antitrust counterclaim based on lack of antitrust standing. Plaintiffs argued that Hummer, as an investor in Napster, lacked antitrust standing to challenge plaintiffs' alleged conspiracy to drive Napster out of business. In reasoning which mirrors the court's previous denial of Hummer's motion to dismiss, the court noted that "plaintiffs have alleged that Hummer had 'essentially full operational control' over Napster during the period from May 2000 to June 2001. . . . Such allegations are consistent with a unity of interest and ownership between the two corporations of the type that would justify piercing the corporate veil under an alter ego theory." In re Napster, Inc. Copyright Litig., 354 F. Supp. 2d 1113, 1121 (N.D. Cal. 2005) [hereinafter "Counterclaim Order"]. The court found that as Napster's alleged alter ego, Hummer would have standing to pursue an antitrust counterclaim.

Napster, which is not a party to this litigation, declared bankruptcy after abandoning its efforts to comply with the preliminary injunction entered by this court. The bankruptcy proceedings came to completion during the pendency of this action. The bankruptcy court confirmed Napster's Chapter 11 Liquidating Plan on April 20, 2004.

Plaintiffs now argue that Hummer's antitrust claim was the property of Napster, and that the conclusion of Napster's bankruptcy proceedings prevents Hummer from asserting the claim in this litigation. In the alternative, plaintiffs argue that Hummer is precluded from bringing the antitrust claim in this action under principles of *res judicata*, as the claim could have been brought in the bankruptcy proceedings. Finally, plaintiffs argue that Hummer is judicially estopped from asserting a claim as Napster's alter ego, given that Hummer could have sought to bring an antitrust claim

3

against plaintiffs during the bankruptcy proceedings but declined to do so in order to avoid responsibility for Napster's debts.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

4

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

## DISCUSSION

### I. Napster's Bankruptcy

Plaintiffs contend that Hummer's antitrust counterclaim has been extinguished by the conclusion of Napster's bankruptcy proceedings. This contention relies on a series of arguments which must be scrutinized individually. First, according to plaintiffs, this court's previous rulings establish that Hummer can only bring its antitrust claim if it is found to be Napster's alter ego. See Counterclaim Order at 1121. Second, if Hummer is found to be Napster's alter ego, then Hummer is in effect asserting Napster's antitrust claim. See id. at 1118 ("There is no doubt that if Hummer's counterclaims were brought by Napster itself (or its trustee in bankruptcy), the company would have standing under section 4 of the Clayton Act."). Third, Napster's antitrust claim, like all of Napster's assets, was finally disposed of as part of Napster's now-completed liquidation in bankruptcy. Thus, according to plaintiffs, Hummer's right to bring an antitrust claim in this suit has been extinguished.

Plaintiffs further argue that to find otherwise would thwart the purpose of bankruptcy proceedings by allowing Hummer to obtain the benefits of being Napster's alter ego—receiving compensation for the labels' allegedly anti-competitive acts—without shouldering the burden of Napster's debts. According to plaintiffs, permitting Hummer to recover on the antitrust counterclaim would detrimentally affect Napster's other creditors, who would have been entitled to receive a portion of that recovery in the bankruptcy proceedings.

The court considers the merits of plaintiffs' arguments below.

#### A. Hummer's Antitrust Standing

Plaintiffs read this court's prior orders as establishing that Hummer has antitrust standing only if it is found to be Napster's alter ego. It is true that Hummer's status as an investor in Napster, without more, does not support antitrust standing. This court expressly rejected that possibility in its

5

order on plaintiffs' motion to dismiss Hummer's counterclaim. Instead, the court found that Hummer had standing based on plaintiffs' allegations that Hummer "had essentially full operational control over Napster during the period from May 2000 to June 2001." Id. at 1121 (internal quotations omitted).

Although the court characterized plaintiffs' allegations as "the type that would justify piercing the corporate veil under an alter ego theory," the court did not require Hummer to be Napster's alter ego as a prerequisite to establishing antitrust standing. The court also did not consider whether Hummer might be able to establish antitrust standing through a lesser showing of involvement in Napster's affairs—something falling short of "full operational control." For example, in order to prove that Hummer is vicariously liable for Napster's secondary copyright infringement—plaintiffs' so-called tertiary theory of liability—plaintiffs must establish that Hummer had the "right and ability" to halt Napster's acts of secondary infringement. See Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996). The degree of control required for vicarious liability is less than that required to pierce the corporate veil, but might still be sufficient to confer antitrust standing.

Whether Hummer may have antitrust standing even if it is not found to have had full control over Napster is a question not currently before the court. For purposes of the present motion, it is sufficient to observe that, contrary to plaintiffs' argument, this court's prior rulings do not establish that Hummer has antitrust standing if and only if it is found to be Napster's alter ego.

B.    The Relationship Between Hummer's Antitrust Claim and Napster's Antitrust Claim

Assuming for the sake of argument that Hummer only has standing if it is shown to be Napster's alter ego, the question remains whether Hummer's antitrust claim is "the same" as Napster's, under relevant bankruptcy law. Plaintiffs argue that Hummer's antitrust claim was exclusively within the power of the bankruptcy trustee to assert because Napster's bankruptcy trustee had standing to bring the claim.

6

Plaintiffs' argument is rooted in bankruptcy standing law, which allocates responsibility for pursuing claims in bankruptcy proceedings between the trustee and the various individual creditors. Under Ninth Circuit law, a bankruptcy trustee has standing to pursue any claim "in which the debtor has an interest because this is property of the estate, the trustee is acting to benefit the debtor's estate, and is ultimately benefiting the estate's creditors upon distribution." In re AgriBioTech, Inc., 319 B.R. 216, 223 (D. Nev. 2004) (citing In re Folks, 211 B.R. 378, 386–87 (9th Cir. BAP 1997)). If the bankruptcy trustee has standing, then individual creditors may not also assert the same claim. In re Morpheus Lights, Inc., 228 B.R. 449, 453 (Bankr. N.D. Cal. 1998) ("[a] creditor-plaintiff only has standing if the claim is not property of the estate because property of the estate does not belong to any individual creditor.") Id. at 453. On the other hand, if the claim is the property of an individual creditor, the trustee may not bring the claim, either on the creditor's behalf or through assignment of the claim to the trustee. In re AgriBioTech, 319 B.R. at 220 (explaining that with respect to the claims of individual creditors, "the trustee [lacks] standing to assert these third party creditor claims, even though the investors assigned their claims to the trustee." (citing Williams v. Cal. 1st Bank, 859 F.2d 664, 666–67 (9th Cir. 1988))). Thus, under bankruptcy law, each claim is either the property of the bankruptcy trustee, or an individual creditor, but not both.

Here, as this court has previously held, Napster unquestionably had antitrust standing to bring an antitrust claim against the record labels. See Counterclaim Order at 1118 ("There is no doubt that if Hummer's counterclaims were brought by Napster itself (or its trustee in bankruptcy), the company would have standing under section 4 of the Clayton act."). Napster did not pursue an antitrust claim during its bankruptcy proceedings, and Hummer did not seek leave of the bankruptcy court to assert the claim in its own right. Thus, according to plaintiffs, Hummer may not assert an anititrust claim in this litigation.

The bankruptcy cases cited by plaintiff are not directly relevant to the core question in this motion, which is whether Hummer's antitrust claim is the "same claim" as the antitrust claim that Napster could have brought during bankruptcy proceedings. In In re AgriBioTech, In re Morpheus Lights, and In re Folks, the courts all began with the assumption or finding that both the creditor and

7

1 the trustee might have standing to bring the same claim, and then allocated responsibility to one or
2 the other. Here, in contrast, several factors lead the court to conclude that Napster's antitrust claim
3 and Hummer's antitrust claim are not the same within the meaning of bankruptcy standing law.

4 First, and most important in light of the policies underlying bankruptcy law, the basis for
5 Hummer's antitrust claim is *plaintiffs'* theory that Hummer exercised such control over Napster as to
6 be liable for Napster's copyright infringement. Plaintiffs' theory is a premise in this litigation; there
7 is no allegation that plaintiffs or any other party claimed that Hummer was Napster's alter ego
8 during the course of Napster's bankruptcy proceedings. As a result, contrary to plaintiffs'
9 allegations, this is not a case where Hummer strategically declined to assert its status as Napster's
10 alter ego during bankruptcy proceedings, only to vigorously pursue that theory in this case. As
11 Hummer stated in its brief opposing this motion and reiterated at oral argument, it only asserts
12 standing to bring its antitrust counterclaims in the event that plaintiffs are able to prove that Hummer
13 exercised the requisite degree of control over Napster.

14 This first factor also distinguishes Lovett v. General Motors Corp., 975 F.2d 518 (1992) and
15 Bishay v. American Isuzu Motors, 404 F.3d 491 (1st Cir. 2005). In Lovett, the owner of a car
16 dealership pursued an individual antitrust claim against the automobile manufacturer, alleging that
17 he was the alter ego of the dealership. 957 F.2d at 519. The dealership also pursued an antitrust
18 claim. Id. During the lawsuit, the dealership entered bankruptcy proceedings, and the dealership's
19 antitrust claim became the property of the bankruptcy trustee. Id. at 520. At trial, the jury awarded
20 antitrust damages both to the trustee and to the individual owner. Id. The district court overturned
21 the jury verdict with respect to the individual owner, finding that he lacked antitrust standing.

22 On appeal, the Eighth Circuit affirmed the trial court's conclusion that the individual owner
23 had failed to prove that he was the alter ego of the dealership, and therefore lacked antitrust
24 standing. Id. at 522. The court also noted that had he established he was the alter ego, he still
25 "would only have standing to assert the corporation's antitrust claims, which the bankruptcy trustee
26 pursued." Id. To the extent that the court concluded that the owner and dealership were jointly
27 pursuing the same antitrust claim, two factors distinguish this case. Here, Hummer did not jointly
28

8

1 pursue antitrust claims with Napster, but rather raised those claims as a defense to plaintiffs' novel
2 allegations in this lawsuit. Also, unlike in Lovett, the bankruptcy trustee did not pursue Napster's
3 antitrust claim. Likewise, in Bishay, which did not discuss bankruptcy standing at all, an individual
4 owner of two automobile dealerships affirmatively sought to assert an alter ego claim, but the court
5 declined to disregard the corporate form, noting that the dealerships had already obtained recovery
6 on their claims. 404 F.3d at 496.

   Second, this court's past discussions of Hummer's antitrust counterclaim make clear that it is
distinct from the claim that could have been brought by Napster. In considering whether Hummer
might have standing to bring an antitrust counterclaim, the court noted that

> neither Napster nor its trustee in bankruptcy is a party to this action. Rather, it is Hummer that must establish its standing to sue under section 4 of the Clayton Act, and plaintiffs assert that it is unable to do so because unlike Napster, it never directly competed with them in the online music distribution market.

Counterclaim Order at 1119. In addition, in concluding that Hummer had antitrust standing, the court found that "the allegations here are, if proven, sufficient to establish that Hummer suffered antitrust injury as a result of plaintiffs' antitcompetitive conduct." Id. at 1121. As these passages indicate, although Hummer's antitrust counterclaim may be predicated on the same unlawful conduct that allegedly harmed Napster, Hummer's injury is distinct from, and not necessarily coextensive with Napster's.

   Third, if accepted, plaintiffs' argument would apply with equal force to certain of their claims for copyright infringement. Just as Hummer did not pursue an antitrust claim against plaintiffs during the bankruptcy proceedings, plaintiffs did not pursue their copyright claims against Hummer under an alter ego theory in that litigation. Although the parties did not address whether plaintiffs might have brought claims against Hummer during the bankruptcy proceedings, Ninth Circuit law is clear that claims may be brought against the alter ego of the debtor. In re Folks, 211 B.R at 381, 385. Indeed, the debtor may pierce its own corporate veil for the general benefit of its creditors. Id.; see also In re Davey Roofing, Inc., 167 B.R. 604, 608 (Bankr. C.D. Cal. 1994). The court notes that if plaintiffs had asserted their alter ego claim in the bankruptcy proceedings, or

9

attempted to have the bankruptcy trustee bring that claim, they would have had to share whatever money was recovered from Hummer with Napster's other creditors.

In sum, the counterclaim brought by Hummer in this lawsuit is not the same as the claim Napster's trustee could have brought in the bankruptcy proceedings. The conclusion of those proceedings therefore has no effect on the disposition of plaintiffs' motion.

II.     Judicial Estoppel and Res Judicata

For the reasons discussed above, plaintiffs' arguments that Hummer's antitrust claim is precluded under principles of judicial estoppel and *res judicata* also fail.

Judicial estoppel requires, *inter alia*, a party to take clearly inconsistent litigation positions in order to gain an advantage. See New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001). Plaintiffs argue that Napster's failure to disclose the antitrust counterclaim in its bankruptcy schedules is inconsistent with Hummer's assertion of that claim in this case. This argument defies logic, as there was no allegation in the bankruptcy proceedings that Hummer and Napster were one and the same. Indeed, Hummer's position has been consistent; it has maintained in both the previous action and in this one that it did not exercise control over Napster, and therefore lacks standing to bring the antitrust counterclaim. It is *plaintiffs'* allegations of control which form the basis for Hummer's antitrust defense in this case. It would be contrary to principles of equity to impute plaintiffs' position in this case—which Hummer vigorously contests—to Hummer during the bankruptcy proceedings in order to defeat Hummer's counterclaim.

Likewise, in order for claim preclusion to attach, Hummer must have had a full and fair opportunity to litigate the antitrust claim during the bankruptcy proceedings. As already discussed, the entire theory behind plaintiffs' current motion—that Hummer might be the alter ego of Napster—was wholly absent from the bankruptcy proceedings. Hummer therefore had no control over the litigation of Napster's antitrust claim, and had no motivation to bring a claim of its own.

CONCLUSION

For the foregoing reasons, the court hereby DENIES plaintiffs' motion for summary judgment on Hummer's antitrust counterclaim.

IT IS SO ORDERED.

Dated: May 17, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

11