UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | **No. C MDL-00-1369 MHP** |
| This Document Relates To: | |
| UMG RECORDINGS, INC. et al., <br>     Plaintiffs, <br>     v. <br> HUMMER WINBLAD VENTURE PARTNERS et al., <br>     Defendants. | No. C 04-1166 MHP |
| UMG RECORDINGS, INC. et al., <br>     Plaintiffs, <br>     v. <br> BERTELSMANN AG et. al., <br>     Defendants. | No. C 04-1351 MHP |
| JERRY LEIBER et al., <br>     Plaintiffs, <br>     v. <br> BERTELSMANN AG et al., <br>     Defendants. | No. C 04-1671 MHP |

CAPITOL RECORDS, INC. et al.,

    Plaintiffs,

v.

BERTELSMANN AG et. al.,

    Defendants.

No. C 04-2121 MHP

**MEMORANDUM & ORDER**
**Re: Motions to Stay and for Reconsideration**

On April 21, 2006 this court granted three motions to compel production of documents previously withheld as privileged, based on the crime-fraud exception to the attorney-client privilege. The court ordered plaintiff UMG Recordings, Inc. ("UMG"), plaintiff Capitol Records, Inc. ("EMI"), and defendant Bertelsmann AG ("Bertelsmann") to produce the withheld documents within 30 days of the court's order.[1]

On May 1, 2006 UMG and EMI requested leave to seek reconsideration of the court's order. Simultaneously, UMG and EMI sought a stay of the court's order pending reconsideration. Bertelsmann did not seek reconsideration, but also sought a stay pending appeal to the Ninth Circuit, which Bertelsmann noticed on May 2, 2006. UMG and EMI also filed a notices of appeal on May 9, 2006.

The notices of appeal divest this court of jurisdiction to entertain UMG and EMI's requests for reconsideration. "The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed." McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 734 (9th Cir. 1982). Here, the parties are appealing this court's orders to compel production, and as a result this court cannot now reconsider the merits of those orders.

Even if this court retained jurisdiction, or in the event that the Ninth Circuit might wish to remand to this court in order to permit adjudication of the motions for reconsideration, the court would not be inclined to reconsider its rulings. "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was

2

1  manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J,
2  Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Both EMI and UMG
3  present voluminous new evidence in support of their requests for reconsideration, but with the
4  exceptions discussed below, none of the evidence is "newly discovered" as it was in the parties
5  possession prior to the briefing and argument for the motions to compel. See id. ("The
6  overwhelming weight of authority is that the failure to file documents in an original motion or
7  opposition does not turn the late filed documents into 'newly discovered evidence.'"). The court
8  considers the arguments offered by EMI and UMG in turn.

9  Only three of the pieces of evidence submitted by EMI in support of reconsideration were
10 even arguably before the court at the time of its decision. First, EMI claims that the appendix to the
11 EMI White Paper—a document comprising roughly 800 pages of dense legal language—was
12 "referred to at oral argument" and "shown to the Court at that hearing." EMI Motion at 5 n.1. Even
13 if showing a document to the court were the same as "fil[ing]" for purposes of reconsideration, cf.
14 Multnomah County, 5 F.3d at 1263, the arguments EMI advances based on specific citations to
15 portions of the appendix were not before the court, and could not reasonably have served as the basis
16 for denying Hummer's motion to compel. EMI's argument that the court committed "clear error" by
17 failing to appreciate the significance of the appendix is absurd.

18 Second, EMI points out that Exhibit 64 to the Anderson Declaration was before the DOJ, and
19 in fact was discussed in the EMI White Paper. The court notes, however, that Hummer also
20 submitted Exhibit 62, which contains more specific language as to the similarity of terms offered to
21 the record label parents: MusicNet offered to give EMI a deal that "treats everyone the same." This
22 additional document, in combination with the vague language in the White Paper, provides further
23 *prima facie* evidence of fraud. The order relied on Exhibit 64 as only one factor among several
24 establishing Hummer's *prima facie* case.

25 Third, EMI cites two portions of the MusicNet White Paper in support of its argument that
26 the DOJ would have realized that EMI was not a "Distribution Stockholder" and therefore would
27 have been permitted to receive a copy of MusicNet's license to Napster. The MusicNet White Paper
28

3

states broadly that "the Distribution Agreements themselves and Section 5.4(c) of the Amended and Restated Stockholders Agreement [with the parent record labels] prohibit disclosure of the terms of the Distribution Agreements." Anderson Dec., Exh. 7 at 22. EMI now argues that footnote 35, which is cited in support of the broad statement, puts the DOJ on notice that only "Distribution Stockholders" were prohibited from seeing the terms of distribution agreements. The footnote states, in relevant part, that "the terms and conditions of the Distribution Agreements . . . [are] not divulged to any other Distribution Stockholder . . . *or any other third parties*." Id. at 22 n.35 (emphasis added). Far from supporting EMI's position, the language in the footnote reinforces the White Paper's assertion that terms of distribution agreements were to be kept strictly confidential. EMI's citation to another passage limiting the ability of Distribution Stockholders to "participate in negotiations relating to distribution agreements" is also not relevant to prove that the DOJ knew the EMI was entitled to receive the entire Napster distribution agreement.

Finally, EMI offers the newly-produced deposition testimony of Paul Vidich, a former Warner Music executive and former member of the MusicNet board of directors. Mr. Vidich stated the opinion that "EMI was entitled to [see MusicNet's distribution agreements with entities such as Napster.]" Simmons Dec. Exh. 3, at 288:22–290:13. Mr. Vidich's opinion is based on his interpretation of the Stockholders Agreement, which was attached as an exhibit to the MusicNet White Paper. Whatever limited probative value Mr. Vidich's opinion may have as to the meaning of the Stockholders Agreement, the court fails to see how it bears on the DOJ's reasonable interpretation of the broad, clear statements of independence in the White Paper itself.

In sum, to the extent EMI's arguments for reconsideration are based on appropriate evidence, they are unavailing.

UMG's principal argument in support of reconsideration is that the court mischaracterized UMG's positions with respect to the prevalence and effect of Most-Favored Nation clauses in UMG's content licenses. The court's order does make broad statements about UMG's concessions: "UMG does not disagree with Hummer's characterization of the effect of MFN clauses, or dispute that each of the agreements cited in the White Paper contains an MFN clause" (Order at 6), and

4

1  "[UMG does not deny] the consistent practice of including MFNs in all license agreements" (Order
2  at 7). Even if the court's order overstates UMG's concessions, the court is not inclined to revisit its
3  ruling because the evidentiary record submitted by Hummer as to the prevalence and similarity of
4  MFNs—the numerous agreements listed in Hummer's papers and relied upon at oral argument—is
5  more than adequate to make out a *prima facie* case of a consistent practice which was deliberately
6  hidden from the DOJ.

7  UMG's other arguments are similarly without merit. First, UMG argues, as it did in
8  opposing Hummer's motion, that the presence of MFNs in the labels' agreements with third parties
9  is not relevant to prove that the labels exchanged information through the joint ventures—the
10  purported antitrust violation. The court found MFNs to be relevant under a different theory: they
11  undermine the evidentiary value of the supposedly disparate licensing terms. The "disparate
12  licensing" argument was the centerpiece of the pressplay White Paper and provided the primary
13  stated rationale for the DOJ's decision to cease pursuing its antitrust case. The MFNs need not
14  directly prove the sharing of information to be relevant to the DOJ's decision to drop its
15  investigation.

16  Second, UMG argues that the pressplay Guidelines make broad representations about
17  pressplay's independence from its parents. Although the court does not accept UMG's
18  characterization of the quote it selectively offers from the Guidelines, UMG's argument does not
19  appear to help its case. To the extent that the Guidelines make broad representations of
20  independence, they are belied by the documents offered by Hummer in support of its motion.

21  The remainder of UMG's arguments are based entirely on newly offered documents which
22  were in UMG's possession prior to briefing and argument for the motion to compel, or are new
23  arguments not raised in the parties' papers or at oral argument. The court may not rely on them in
24  deciding whether to reconsider its order.

25  The remaining issue is whether the court should stay its discovery orders pending appeal.
26  Ninth Circuit law is not settled as to whether an order vitiating privilege under the crime-fraud
27  exception is appealable at all: "Our circuit has not resolved the general question of 'whether a
28

5

1  discovery order disposing of an asserted claim of privilege could be independently appealed under
2  the collateral order doctrine of Cohen[ v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)]'"
3  Agster v. Maricopa County, 422 F.3d 836, 838 (9th Cir. 2005) (citing United States v. Fernandez,
4  231 F.3d 1240, 1245 n. 4 (9th Cir.2000)); but see Bittaker v. Woodford, 331 F.3d 715 717–18 (9th
5  Cir. 2003) (en banc) (exercising jurisdiction over appeal of grant of protective order); United States
6  v. Griffin, 440 F.3d 1138, 1142 (9th Cir. 2006) (exercising jurisdiction over appeal of order denying
7  application of marital privilege).

Even if the parties succeed in obtaining appellate review of the orders, the court has serious doubts about their likelihood of success on the merits. A stay is therefore not appropriate at this time.

UMG also objects to the scope of the order, which requires production of all communications related to the antitrust investigation. Since the court's injunction order is on appeal, thus depriving this court of jurisdiction, even opining on what the court would do if the matter were remanded before the Circuit rules on the appeal is not warranted or appropriate.

CONCLUSION

For the foregoing reasons, the court hereby DENIES UMG's, EMI's and Bertelsmann's motions to stay and DENIES UMG's and EMI's motions for leave to seek reconsideration.

IT IS SO ORDERED.

Dated: May 17, 2006

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

6

# ENDNOTES

1. The court will not restate the facts underlying the motions to compel, which are set forth in the court's previous orders.