GLENN D. POMERANTZ (State Bar No. 112503)
KELLY M. KLAUS (State Bar No. 161091)
BLANCA F. YOUNG (State Bar No. 217533)
SUSAN T. BOYD (State Bar No. 229664)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:     (213) 687-3702
Attorneys for UMG Plaintiffs

PETER L. SIMMONS
MITCHELL EPNER
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY  10004-1980
Telephone:    (212) 859-8000
Facsimile:     (212) 859-4000
Attorneys for EMI Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | CASE NO.  C-MDL-00-1369 MHP<br><br>**DECLARATION OF KELLY M. KLAUS IN SUPPORT OF UMG AND EMI PLAINTIFFS' CONDITIONAL MOTION FOR CONTINUANCE OF HUMMER WINBLAD SUMMARY JUDGMENT MOTION** |
|---|---|
| This Document Relates To:<br><br>UMG RECORDINGS, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>HUMMER WINBLAD VENTURE PARTNERS, et al.,<br><br>Defendants. | No. C 04-1166 MHP<br><br>Date:     November 14, 2006<br>Time:     10:00 a.m.<br>Ctrm:     15 (Hon. Marilyn Hall Patel) |

1213405.1

DECL. OF KELLY M. KLAUS ISO CONDITIONAL
MOT. TO CONTINUE C-MDL-001369 (MHP)

I, KELLY M. KLAUS, DECLARE AS FOLLOWS:

1.     I am a partner in the law firm of Munger, Tolles & Olson LLP, counsel to the UMG Recordings plaintiffs in this action. I am submitting this declaration in support of the UMG and EMI Plaintiffs' Conditional Motion to Continue the Hummer Winblad Defendants' Summary Judgment Motion. The contents of this declaration are within my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2.     For the reasons set forth in the UMG and EMI Plaintiffs' contemporaneously filed opposition to the Hummer Winblad Defendants' Summary Judgment Motion, the Plaintiffs believe that the current summary judgment record contains more than sufficient evidence to mandate the denial of summary judgment to all of the Hummer Winblad defendants. If the Court concludes otherwise, the purpose of this declaration is to set forth the additional facts that Plaintiffs believe will be uncovered by discovery that has been requested but not yet completed in this consolidated MDL action, and why Plaintiffs believe those additional facts would preclude the grant of summary judgment to Hummer Winblad.

### Sanctions And/Or Discovery Related To Plaintiffs' Spoliation Motion

3.     On June 9, 2006, Plaintiffs filed a motion for terminating sanctions or, alternatively, for evidentiary sanctions for the Hummer Winblad defendants' intentional spoliation of evidence (the "Spoliation Motion"). [D.I. 977.] Plaintiffs presented evidence and argument in that motion to demonstrate that the Hummer Winblad defendants had intentionally (or, at a minimum recklessly) failed to preserve large numbers of documents relevant to the claims and defenses in this action; that Hummer Winblad failed to preserve these materials at times when it had an indisputable duty to retain such documents; and that Hummer Winblad's breach of its preservation duties had prejudiced Plaintiffs in this action. The Spoliation Motion was argued and submitted on September 7, 2006. As of this filing, the Court has not issued an Order on the Spoliation Motion.

4.     Plaintiffs filed the Spoliation Motion after having made repeated requests of Hummer Winblad to provide a satisfactory explanation for the notable absence from its

production of large numbers of Napster-related communications. Plaintiffs also filed the Spoliation Motion after receiving Hummer Winblad's belated production of an internal email from name partner Ann Winblad to multiple Hummer Winblad recipients, in which Ms. Winblad stated, among other things, "we do not retain emails, it is your responsibility to delete your handled emails immediately" and "we do not retain written copies of emails in our files." As set forth in the Spoliation Motion, Hummer Winblad produced this document on Friday, April 28, 2006, which was the last business day before the April 30, 2006 cutoff for Phase I discovery in this action and two days after Ms. Winblad's deposition was taken in this action.

5. In the Spoliation Motion, Plaintiffs request that the Court impose appropriate sanctions against the Hummer Winblad defendants. The requested sanctions include:

(a) A default judgment against Hummer Winblad.

(b) An order precluding Hummer Winblad from contesting all or some of multiple issues, including (i) that Hummer Winblad intended to and did induce and promote the expanded infringement of Plaintiffs' copyrighted works by Napster users; (ii) that Hummer Winblad contributed to such maintained and expanded infringement of Plaintiffs' copyrighted works by Napster users; and (iii) that Hummer Winblad had the right and ability to supervise that infringing activity.

(c) An adverse inference instruction, allowing the fact finder to infer that the documents Hummer Winblad intentionally destroyed would have been unfavorable to its position on fact issues relevant to this case.

6. The Court's award of one or more of the sanctions requested in the Spoliation Motion very likely would mandate the denial of all or part of Hummer Winblad's summary judgment motion. If the Court grants Plaintiffs' motion for default judgment, then Hummer Winblad's motion for summary judgment will be moot. If the Court grants Plaintiffs' request for a preclusion order concerning one or more of the issues enumerated in Paragraph 5(b), that very likely would preclude the grant of all or part of Hummer Winblad's summary judgment motion. Hummer Winblad's summary judgment motion argues that there is no disputed question of material fact concerning any of these issues; an order precluding Hummer Winblad from

contesting these issues therefore would likely preclude summary judgment on the question. If the Court grants Plaintiffs' request for an adverse inference instruction, that very likely would preclude the grant of all or part of Hummer Winblad's summary judgment motion. As set forth in the Spoliation Motion, the documents that Hummer Winblad failed to retain, and that discovery has not revealed (and cannot reveal) from any third party, include internal email communications among the Hummer Winblad partners pertaining to Napster. An adverse inference instruction would permit the fact finder to conclude that the communications not retained were unfavorable as to Hummer Winblad concerning one or more of the issues enumerated in Paragraph 5(b) above.

7. Should the Court order additional discovery concerning the matters raised in the Spoliation Motion, that discovery could reveal additional facts regarding Hummer Winblad's relationship with and contributions to Napster, as well as its intentions regarding continued and expanded infringement on Napster. Plaintiffs believe that such discovery also could preclude all or part of Hummer Winblad's summary judgment motion, since it could undermine Hummer Winblad's contentions on one or more of the disputed issues identified above.

### Discovery Pursuant To This Court's April 21, 2006 Order

8. On November 8, 2005, the UMG, EMI and Leiber Plaintiffs filed a motion to pierce Bertelsmann's privilege claims relating to the drafting and use in litigation of its loan documents with Napster. [D.I. 693] The Court granted that motion by Order entered April 21, 2006, and ordered Bertelsmann to produce documents and testimony previously withheld as privileged relating to the creation of the loan document and its use in this litigation and before the *Napster* bankruptcy court. [D.I. 887]

9. Bertelsmann filed an appeal and mandamus petition seeking review of the April 21 Order and also sought a stay of the Order from the Ninth Circuit. By Order entered May 19, 2006, the Ninth Circuit stayed that order pending that court's review of Bertelsmann's appeal and mandamus petition. The Ninth Circuit heard oral argument on Bertelsmann's appeal and mandamus petition on September 13, 2006.

10. If the Ninth Circuit affirms the April 21 Order, this may result in the production of documents or testimony that could be highly relevant to Hummer Winblad's motion. As set forth in the papers filed in support of the motion to pierce Bertelsmann's privileges, two of the Hummer Winblad defendants (John Hummer and Hank Barry) are identified in contemporaneous documents as having negotiated the transaction with Bertelsmann. The documents reflect that one of those defendants (Mr. Barry) stated that he entered into what he described as a "handshake" agreement, not reflected in the final papers, pursuant to which Bertelsmann's loan money could be used to fund Napster's ongoing copyright litigation expenses. The documents also reflect that Mr. Barry stated that one of the other Hummer Winblad defendants (Mr. Hummer) was present at the final in-person negotiation meeting with Bertelsmann and witnessed the "handshake" agreement that Mr. Barry described. Documents or testimony produced pursuant to the April 21 Order could contain or reveal highly relevant contemporaneous communications regarding (1) whether the Hummer Winblad defendants intended for there to be continued and expanded infringement of Plaintiffs' copyrighted works by Napster users; (2) the extent of the contributions Hummer Winblad had made, and intended to continue to make, to such infringing activity; and (3) Hummer Winblad's ability to supervise and control that activity.

11. On September 6, 2006, UMG and Bertelsmann submitted a stipulation of dismissal; the Court entered that stipulation as an order on September 7, 2006. UMG is no longer a party to the Bertelsmann appeal. The EMI and Leiber complaints continue to be litigated against Bertelsmann, and both of those parties remain parties to the appeal. UMG is a party to these consolidated MDL proceedings. To date, all parties in this MDL action have been provided with copies of all documents produced in this action by all other parties.

**Discovery Regarding The Nature Of Hummer Winblad Venture Partners**

12. Hummer Winblad's summary judgment motion seeks dismissal of named defendant Hummer Winblad Venture Partners based on the statement by John Hummer that no such entity exists. As set forth in Plaintiffs' opposition to Hummer Winblad's motion, Plaintiffs contend that Hummer Winblad Venture Partners exists as a *de facto* enterprise and that it may be liable on Plaintiffs' claims for relief.

13. On December 23, 2005, Plaintiffs served the Hummer Winblad defendants with their Fourth Set of Document Requests ("Fourth Request"). The Fourth Request sought discovery of several categories of documents relevant to determining the nature of the Hummer Winblad Venture Partners Enterprise and its conduct through multiple limited partnerships and limited liability companies. Hummer Winblad objected to all discovery not related to the particular Hummer Winblad funds that invested in Napster.

14. On February 1, 2006, Plaintiffs filed a motion to compel the production of documents pursuant to the Fourth Request. By Order dated March 3, 2006, Special Master Cahill granted Plaintiffs' motion to compel. A true and correct copy of Special Master Cahill's March 3, 2006 Order is attached hereto as Exhibit A.

15. Believing that Hummer Winblad had failed to comply with the March 3, 2006 Order, Plaintiffs on April 18, 2006 filed a motion to compel compliance before Judge Cahill. By Order entered April 19, 2006, Special Master Cahill enumerated the scope of Hummer Winblad's obligations to comply with the March 3 Order. A true and correct copy of Special Master Cahill's April 19, 2006 Order is attached hereto as Exhibit B.

16. Plaintiffs and Hummer Winblad thereafter disagreed about the extent of Hummer Winblad's obligation to conduct a search for documents stored electronically in compliance with the March 3 and April 19 Orders, and Plaintiffs again filed a motion to compel compliance before Special Master Cahill. The parties appeared before Special Master Cahill on May 23, 2006, and, in light of the Special Master's guidance, attempted to reach a mutually agreeable resolution of the Hummer Winblad defendants' search obligations. That agreement was reflected in a letter sent to Special Master Cahill on June 23, 2006, a true and correct copy of which is attached hereto as Exhibit C.

17. On August 25, 2006, Hummer Winblad notified us that it had completed its production of documents pursuant to the aforementioned Orders of the Special Master. In the intervening time, Plaintiffs have reviewed those documents and have found that a number of them contain redactions that exceed the scope of information Hummer Winblad is permitted to withhold under the Special Master's Orders. By letter dated September 21, 2006 (a true and

1  correct copy of which is attached hereto as Exhibit D), Plaintiffs raised their concern about the
2  redacted information and requested that Hummer Winblad provide its unredacted copies of
3  documents subject to the Special Master's Orders.

4      18.    Plaintiffs believe that the information Hummer Winblad has redacted is highly
5  relevant to the question whether Hummer Winblad Venture Partners is a single *de facto* enterprise
6  that may be liable in this action.  In particular, Plaintiffs believe that the redacted information
7  (from numerous financial records) is highly relevant to a determination whether Hummer
8  Winblad commingles the funds of its various fund entities.  Plaintiffs believe that discovery
9  produced to date has revealed evidence suggesting that the Hummer Winblad funds do in fact
10 commingle their assets.   Plaintiffs also believe that complete copies of the documents Hummer
11 Winblad has redacted to date will further corroborate this commingling.  Hummer Winblad has
12 taken the position that its accounting practices are typical of other venture funds and accord with
13 GAAP.  Plaintiffs intend to test these allegations through discovery and expert analysis.  The
14 resolution of further discovery into these issues, including through expert discovery, could
15 preclude any grant of summary judgment in favor of Hummer Winblad Venture Partners on the
16 proffered ground that the entity does not exist.  Plaintiffs intend to pursue the receipt of
17 unredacted copies of documents Hummer Winblad has produced pursuant to the Special Master's
18 Orders.  If Hummer Winblad will not produce copies of those documents voluntarily in response
19 to our request, Plaintiffs will seek to compel further compliance from Special Master Cahill.

20     I declare under penalty of perjury under the laws of the United States that the foregoing is
21 true and correct and that this declaration was executed this Twenty-Second day of September
22 2006 at Los Angeles, California.

By: _____/s/_____
KELLY M. KLAUS