GLENN D. POMERANTZ (State Bar No. 112503)
KELLY M. KLAUS (State Bar No. 161091)
SUSAN T. BOYD (State Bar No. 229664)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702
Attorneys for UMG Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | CASE NO.  C-MDL-00-1369 (MHP)<br><br>**DECLARATION OF KELLY M. KLAUS IN SUPPORT OF UMG'S APPLICATION FOR COSTS AND FEES IN CONNECTION WITH HUMMER WINBLAD'S SPOLIATION OF EVIDENCE**<br><br>Date: None required<br>Time: None required<br>Ctrm: 15 (Hon. Marilyn Hall Patel) |
| This Document Relates to:<br><br>UMG RECORDINGS, INC., et al.,<br>                           Plaintiffs,<br>v.<br>HUMMER WINBLAD VENTURE PARTNERS, et al.,<br>                           Defendants. | CASE NO.  C 04-1166 (MHP) |

I, KELLY M. KLAUS, declare as follows:

1. I am a partner in the law firm of Munger, Tolles & Olson LLP, counsel to the UMG plaintiffs in the above-captioned case. I am submitting this declaration in support of UMG's application for fees pursuant to the Court's Order 25, 2006 Memorandum & Order re Motion for Sanctions [D.I. 1134] ("October 25 Order"). I am a member of the California Bar, the Bar of this Court, and the bar of a number of other federal courts. I submit this declaration to detail the legal fees and costs incurred on behalf of the UMG plaintiffs in pursuing the joint UMG-EMI motion for sanctions against the Hummer Winblad defendants and in connection with the meet and confer process involved in determining the availability of Hummer's Napster-related emails. I was personally involved in the meet and confer process, in drafting and revising the moving and reply papers in support of the motion for sanctions, and in working with others in my firm and at the Fried Frank firm (counsel for the EMI plaintiffs) on these matters. I also argued the motion for sanctions before the Court on behalf of both plaintiffs. The facts set forth in this declaration are based upon my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

**Attorneys' Fees Associated With Bringing The Motion For Sanctions**

2. The October 25 Order states that the UMG and EMI plaintiffs "are entitled to their attorneys' fees associated with bringing this motion[.]" October 25 Order at 24:12-13. Counsel for UMG and EMI cooperated on the development and filing of the motion for sanctions against the Hummer Winblad defendants, as they have worked together on numerous other matters in the case. Our firm took the lead in doing the initial drafts of the motion and reply papers, and in assembling the voluminous declarations and evidentiary submissions in support of the motion. EMI's counsel assisted in researching, reviewing and revising the various moving and reply papers and declarations and in preparing for argument on the motion. The Munger, Tolles attorneys with principal responsibility for the preparation and submission of the papers related to the sanctions motion were myself and Susan Traub Boyd. Glenn Pomerantz, who is a Munger, Tolles partner, also was involved in the preparation and submission of the motion papers. Darren Perry, who until mid-September of this year was a paralegal in our firm's San Francisco office,

1  assisted in the compilation and preparation of the legal briefs and evidentiary submissions in
2  connection with the motion.  Other paralegals from our firm also provided similar assistance.
3    3.  Ms. Boyd and I endeavored to separately record our time for work directed
4  specifically to the motion for sanctions.  Although our invoices to the client listed one
5  consolidated entry for all work performed each day, our firm's internal records include Ms.
6  Boyd's and my separate entries for work on the sanctions motion.  Attached as Exhibit A to this
7  declaration is an extract – compiled from the bills that our firm rendered to UMG and the internal
8  records referenced above – that includes the work done between April 28, 2006 and September 7,
9  2006, relating to the sanctions motion.  I have attached the extract, rather than attaching the actual
10 invoices or firm records, because the underlying documents contain a significant amount of
11 information regarding other aspects of legal services requested and rendered in this case that
12 otherwise would have to be reviewed for privilege before being filed publicly.  A paralegal
13 working under my supervision has checked and re-checked the abstract in Exhibit A against the
14 invoices forwarded to our client and our firm's internal records to ensure that the items listed on
15 Exhibit A accurately reflect the information as stated on the underlying invoices and records.
16   4.  On four dates between April 28, 2006 and September 7, 2006, Ms. Boyd did not
17 separately record her time for work done related to the motion for sanctions, but rather recorded it
18 along with descriptions of her work on other tasks involved in the case.  Mr. Pomerantz did this
19 as well with his entry of time on August 23, 2006.  In all five of these instances, I have extracted
20 only that portion of the time entry that relates to the motion and have made a reasonably precise
21 estimate (in all five cases, making the estimation on the low side) of how much time from an
22 aggregate entry was directed to the sanctions motion.  Where such an estimate was made, it is
23 noted with the letter "E" in the "Est." column on Exhibit A.  If any attorneys or paralegals
24 recorded time to the motion for sanctions along with other tasks on the case but I was unable to
25 estimate with reasonable certainty the amount of time devoted to the motion, I did not include any
26 time from that entry on Exhibit A.
27   5.  I believe the entries on Exhibit A reflect work that was reasonably necessary to
28 pursuing the motion.  The motion involved a substantial amount of legal and factual research.

1226963.1 - 2 - KLAUS DECLARATION ISO
APP. FOR FEES & COSTS
CASE NO. C-MDL-00-1369 (MHP)

1 And, as is reflected in the moving and reply declarations, a substantial amount of work was
2 required to show the nature and quantity of emails and other electronic documents relating to
3 Napster that the Hummer Winblad defendants failed to retain.

**Attorneys' Fees And Costs Associated With The Meet And Confer Process**

6. The Court's October 25 Order also states that the UMG and EMI plaintiffs "are entitled to their attorneys' fees associated … with the meet and confer process involved in determining the availability of Hummer's Napster-related emails." October 25 Order at 24:13-14. As set forth in the motion for sanctions, UMG and EMI developed concerns starting in 2005 concerning the quality of Hummer's retention and production of relevant documents. Lawyers from our firm and from Fried Frank tried to engage in numerous meet and confer discussions with Hummer Winblad's counsel about the adequacy of Hummer's retention and production of documents, and each time Hummer's counsel told us that Hummer Winblad's actions in this regard had been reasonable and appropriate. *See* Declaration of Susan Traub Boyd in Supp. of Motion for Terminating Sanctions, or Alternatively, Evidentiary Sanctions for Intentional Spoliation of Evidence, filed June 9, 2006 [D.I. 980], Exhs. 21-23, 25-28. The lawyers at our firm did not separately record our time entries for these meet and confer efforts that preceded the motion. As a result, I have been unable to estimate with reasonable precision the amount of time spent on these meet and confer matters, and they are not included in this request for reimbursement.

7. The October 25 Order also states that the meet and confer process concerning Hummer's production of emails "included a 30(b)(6) deposition of Hummer partner Todd Forrest regarding Hummer's document preservation and collection efforts." October 25 Order at 5:8-10. Ms. Boyd took the deposition of Mr. Forrest, and she did separately record her time entries on January 12 and 13, 2006, for preparing to take, and taking, Mr. Forrest's deposition. Those entries therefore are included in the abstract in Exhibit A.

8. The cost of taking Mr. Forrest's deposition also includes the court reporting charges associated with that deposition. UMG and EMI (and in some instances, the music publishers), have been splitting the costs of third party disbursements such as court reporter

1    charges that were incurred in pursuit of our joint efforts in the case.  UMG's share of the bills

2    relating to Mr. Forrest's deposition total $1,086.79.  Copies of the invoices for Mr. Forrest's

3    deposition submitted to UMG for payment are attached hereto as Exhibit B.

**Fees Requested And Attorney Qualifications**

5    9.   The hourly rates reflected on Exhibit A are the actual rates my firm charged UMG,

6    during each relevant month, for the personnel who performed the work listed.  As reflected on

7    Exhibit A, Munger, Tolles charged UMG $546.25 per hour for Mr. Pomerantz's services, $439.38

8    per hour for my services, $315 per hour for Ms. Boyd's services, and $135 per hour for Mr.

9    Perry's services.  These rates are, in the judgment and experience of my firm, competitive with

10   the rates charged by peer firms in Los Angeles and San Francisco.

11   10.  Mr. Pomerantz received his Bachelor of Arts degree, *summa cum laude*, from the

12   University of California, Berkeley in 1980, and his law degree, *cum laude*, from Harvard Law

13   School in 1983.  After law school, Mr. Pomerantz served as a law clerk to Judge David Kenyon

14   of the United States District Court for the Central District of California, and as a litigation

15   associate at Hogan & Hartson in Washington, D.C.  Mr. Pomerantz joined Munger, Tolles in

16   September 1987 and became a partner in the firm in January 1991.  Mr. Pomerantz has practiced

17   in the fields of intellectual property, antitrust and complex commercial litigation throughout his

18   career, and has been lead counsel in numerous proceedings in both state and federal courts.  In

19   addition, he has served on the Board of Governors of the Los Angeles Chapter of the Association

20   of Business Trial Lawyers.

21   11.  I received my Bachelor of Arts degree, *magna cum laude*, from the University of

22   California, Los Angeles in 1989, and my law degree, with distinction and as a member of Order

23   of the Coif, from Stanford Law School in 1992.  Following law school, I served as a law clerk to

24   Judge William H. Orrick, Jr., of the District Court in this District, to Judge Pamela Ann Rymer of

25   the Ninth Circuit, and to Justice Anthony M. Kennedy of the Supreme Court.  I joined Munger,

26   Tolles in November 1996 and became a partner in the firm in January 2000.  I have practiced in

27   the fields of intellectual property and complex commercial litigation since joining the firm.  I

1  presently am a member of the Board of Governors of the Los Angeles Chapter of the Association
2  of Business Trial lawyers.

3  12.  Ms. Boyd received her Bachelor of Arts degree, *summa cum laude*, from Harvard
4  College in 1996, and her law degree, as a member of Order of the Coif, from Stanford Law
5  School in 2002.  Following law school, Ms. Boyd was a law clerk to Judge Marsha Berzon of the
6  Ninth Circuit.  Ms. Boyd joined Munger, Tolles in October 2003 and has practiced in the
7  commercial litigation and intellectual property fields since joining the firm.

8  13.  The total UMG fees for which reimbursement is requested pursuant to the October
9  25 Order amount to $119,182.72.  Together with UMG's share of the court reporting invoices for
10  the deposition of Mr. Forrest, the total amount of this request is $120,269.51.

11  I declare under penalty of perjury under the laws of the United States that the foregoing is
12  true and correct and that this declaration was executed this twenty-second day of November,
13  2006, at Los Angeles, California.

*/s/*
KELLY M. KLAUS