1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9  IN RE NAPSTER, INC. COPYRIGHT
   LITIGATION

10  _____                   **No. C MDL-00-1369 MHP**

11  This Document Relates To:

12  UMG RECORDINGS, INC. et al.,                           No. C 04-1166 MHP

13          Plaintiffs,

14      v.                                                 **MEMORANDUM & ORDER**
                                                           **Re: Motion to Intervene**
15  HUMMER WINBLAD VENTURE PARTNERS et al.,

16          Defendants.
    _____
17  DENNIS BULCAO, CINDY SELEY et al.,

18          Applicants for Intervention
    _____/
19

20          By this motion, plaintiffs in In re Digital Music Antitrust Litigation, MDL Docket No. 1780

21  (S.D.N.Y.) (the "DMAL parties") seek to intervene pursuant to Federal Rule of Civil Procedure 24

22  for the purpose of opposing the stipulated vacatur of an order issued by this court in April 2006.  The

23  UMG and EMI plaintiffs ("plaintiffs") oppose this motion.  The Hummer Winblad defendants

24  ("defendants") take no position on the non-party plaintiffs' motion to intervene, though they support

25  vacatur of the order.  Having considered the parties' arguments and submissions, and for the reasons

26  set forth below, the court enters the following memorandum and order.

27
28

*UNITED STATES DISTRICT COURT*
*For the Northern District of California*

UNITED STATES DISTRICT COURT
For the Northern District of California

1    BACKGROUND

2         This motion arises out of the Napster copyright litigation, which has been proceeding before

3    this court since 2000.  The facts and history of this matter are well documented in this court's

4    previous orders.  The relevant facts are set forth below.

5

6    I.      The April 2006 Order

7         On April 21, 2006 this court issued an order granting defendants' motion to compel

8    privileged documents.  Docket Entry 886 ("the April 2006 Order").  Defendants' motion to compel

9    was directed toward evidence in support of their antitrust counterclaim and copyright misuse

10   defense.  Id. at 2.  Defendants' antitrust and copyright misuse arguments focused on two joint

11   ventures entered into by plaintiffs which, according to defendants, amounted to unlawful

12   coordinated efforts to suppress competition in the digital music market.  Id. at 3.  In 2001, the

13   Department of Justice ("DOJ") had launched an investigation of the joint ventures on grounds

14   identical to defendants' claims.  Id.  During the investigation, plaintiffs in this action submitted

15   "White Papers" to the DOJ summarizing their arguments as to why the DOJ's concerns were

16   unfounded.  Id.  In 2003, the DOJ abandoned its investigation, claiming to have found no evidence

17   of wrongdoing.  Id. at 4.

18        In their motion to compel, defendants sought the production of communications related to the

19   DOJ's antitrust investigation which had been withheld as privileged.  Defendants argued that various

20   representations in the White Papers were known to be false or misleading at the time they were

21   submitted to the DOJ, and that therefore the attorney-client privilege was vitiated by the crime-fraud

22   exception.  Id. at 4–5.  This court found reasonable cause to believe that both UMG and EMI

23   included statements in their respective White Papers that were at least misleading if not entirely

24   false.  Id. at 7, 10, 11.  Accordingly, this court held that the crime-fraud exception applied and

25   ordered the production of "all previously withheld communications related to the DOJ's antitrust

26   investigation" within thirty days of the order.  Id. at 12.

27

28

2

1    Plaintiffs appealed the order, and the order was stayed pending appeal.  While the appeal was

2  pending, plaintiffs and defendants entered into a conditional settlement agreement.  See Docket

3  Entry 1233.  The agreement provided, *inter alia*, that

4    the parties will enter into a stipulated dismissal with prejudice when a
     court of competent jurisdiction has issued a final, non-appealable
5    order that: (1) vacates or reverses the April 21 Order, and (2)
     eliminates to each of the undersigned parties' reasonable satisfaction
6    any preclusive effect of that April 21, 2006 Order in any other
     proceeding[.]

7

8  Id. at 1.  On January 8, 2007, plaintiffs filed a motion to vacate the April 2006 Order, which

   defendants have not opposed.  Docket Entry 1239.
9
        To date, the Ninth Circuit has not ruled on plaintiffs' appeal of the April 2006 Order, and no
10
   documents have been produced pursuant to that order.
11

12
   II.    The Instant Motion
13
        On February 9, 2007, while plaintiffs' motion to vacate was still pending, the DMAL parties
14
   filed this motion to intervene for the purpose of opposing plaintiffs' motion to vacate.  The DMAL
15
   parties allege that UMG, EMI and other record labels conspired to fix and maintain prices for digital
16
   music downloaded from the Internet and/or compact discs in violation of federal and state antitrust
17
   and unfair competition laws.  Certain DMAL parties have specifically alleged that the defendants in
18
   that action made affirmative misrepresentations in White Papers submitted to the DOJ.  Plaintiffs
19
   have filed an opposition to the motion to intervene, and defendants have filed a statement of non-
20
   opposition to the motion.
21

22

23
   LEGAL STANDARD
24
        Federal Rule of Civil Procedure Rule 24 has long been "liberal[ly] constru[ed] in favor of
25
   applicants for intervention."  Arakaki v. Cayetano, 324 F.3d 1078, 1082–83 (9th Cir. 2003) (citing
26
   Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998)).  Under Rule 24(a), a party retains *the*
27

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

*right* to intervene if: (1) the applicant has made a timely motion to intervene; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is situated such that the disposition of the action may impair or impede the applicant's ability to protect that interest; *and* (4) the applicant's interest is not adequately represented by existing parties. See Fed. R. Civ. P. 24(a)(2); Arakaki, 324 F.3d at 1082–83. Rule 24(a)'s test is conjunctive; to merit intervention as of right, a prospective intervenor must satisfy each Rule 24(a) requirement. See League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997).

Unlike Rule 24(a), Rule 24(b) does not require the potential intervenor to demonstrate a "significant protectable interest." See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1107–08 (9th Cir. 2002). There is no requirement under Rule 24(b) that "the intervenor [] have a direct personal or pecuniary interest in the subject of the litigation," Securities & Exch. Comm'n v. U.S. Realty & Improvement Co., 310 U.S. 434, 459 (1940), nor does the rule mandate that the potential intervenor "be a person [or entity] who would have been a proper party at the beginning of the suit." Kootenai, 313 F.3d at 1107 (internal quotation omitted). Instead, permissive intervention pursuant to Rule 24(b) requires only that (1) an independent ground for jurisdiction exist, (2) the motion to intervene be timely, and (3) there exist a claim or defense shared between the main action and the intervenor's suit. See id. ("[A]ll that is necessary for permissive intervention [under Rule 24(b)] is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'") (quoting Fed. R. Civ. P. 24(b)); United States v. Washington, 86 F.3d 1499, 1506–07 (9th Cir. 1996) (following a tripartite test). Even if these three requirements are met, the court still retains "broad discretion" to deny a motion for permissive intervention. Donnelly, 159 F.3d at 412. In particular, "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P 24(b).

DISCUSSION

1    The DMAL parties seek to intervene both under Rule 24(a) and Rule 24(b).  The court will

2    consider each purported basis for intervention in turn.

3    I.    Intervention as of Right

4    It is clear that the DMAL parties' interests will not be adequately represented by the existing

5    parties, as plaintiffs and defendants agree that the April 2000 order should be vacated.  Accordingly,

6    the court will focus on the remaining three Rule 24(a) criteria.

7

8         A.    Timeliness

9    The timeliness of a motion to intervene depends upon three criteria: "(1) the stage of the

10   proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving

11   to intervene."  Northwest Forest Res. Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).

12   Plaintiffs assert that the DMAL parties' motion to intervene is untimely.  Plaintiffs' motion to vacate

13   was filed on January 8, 2007.  The DMAL parties filed this motion on February 9, 2007, one month

14   and one day later.

15   The main thrust of plaintiffs' argument regarding delay rests on the contention that, because

16   the lead law firm for the DMAL parties received notification of the motion to vacate via this court's

17   automated ECF service, they were required to file any opposition within the time limit imposed by

18   the Local Rules, i.e. by January 22, 2007.  Plaintiffs cite no authority imposing this filing deadline

19   on non-party proposed intervenors, and the court finds no reason to apply such a hard and fast rule.

20   See Blake v. Pallan, 554 F.2d 947, 951–52 (9th Cir. 1977) (holding that "the concept of timeliness is

21   a flexible one").

22   Turning to the three factors set forth above, the court finds that the DMAL parties' motion is

23   timely.  Although the motion comes at a late stage in the proceeding and threatens a great deal of

24   prejudice to the parties, these are traceable to the nature of the underlying motion to which the

25   DMAL parties object.  In light of the fact that the DMAL parties are challenging a term of a

26   settlement agreement, it is no surprise that the motion comes late in the litigation.  Likewise,

27   although the parties will be prejudiced by the possibility of having their settlement derailed, this

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

1    prejudice does not stem from the DMAL parties' delay in bringing their motion to intervene.  Given

2    the relatively short time period between the motion to vacate and the instant motion, the DMAL

3    parties have not engaged in undue delay such that their motion should be denied as untimely.

4         As an additional timeliness consideration, however, the court notes that, while this motion

5    was filed relatively promptly after the motion to vacate was filed, the DMAL parties have been

6    silent ever since the April 2006 order first issued.  The DMAL parties' initial Northern District of

7    California action—brought by the same law firm that brought the instant motion—was related to this

8    action five days after the April 2006 order was issued.  Order Relating Case, Bulcao v. Sony BMG

9    Music Entertainment, No. 06-CV-1752-MHP, Docket Entry 8 (Apr. 26, 2006).  At no point during

10   the ensuing appeal process did the DMAL parties make any attempt to intervene in order to protect

11   their putative interest in the April 2006 order, instead waiting until after a settlement agreement had

12   been reached to voice their concerns.  In light of this context, the timeliness of this motion is less

13   certain.

14

15        B.    Significant Protectable Interest

16        The DMAL parties assert that they have a protectable interest in the preclusive effects of the

17   April 2000 Order, and that vacatur will directly implicate DMAL parties' efforts to prosecute their

18   claims in the Digital Music Antitrust Litigation.  Plaintiffs claim that this is not the type of interest

19   protectable under Rule 24(a).  Additionally, plaintiffs claim that there is no relationship between the

20   DMAL parties' asserted interest and the property or transaction which is the subject of this action.

21

22             1.    Nature of Interest to Be Protected

23        The Ninth Circuit has held that the "interest" to be protected under Rule 24(a) must be

24   "direct, non-contingent, substantial and legally protectable."  Dilks v. Aloha Airlines, 642 F.2d

25   1155, 1156–57 (9th Cir. 1981).  The parties cite three cases addressing the issue of whether the

26   possible collateral estoppel effect of a court order falls under the ambit of protectable interests for

27   the purposes of intervention as of right.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

1         In National Union Fire Ins. Co. of Pittsburgh, Pa. v. Seafirst Corp., 891 F.2d 762 (9th Cir.

2    1989), the Ninth Circuit addressed circumstances which were comparable to this case but

3    distinguishable in many key respects.  There, National Union had sued Seafirst for declaratory relief

4    seeking rescission or reformation of an insurance contract.  Id. at 763.  National Union also brought

5    separate actions against Seafirst's attorney, accountant and insurance broker for claims arising out of

6    the same transaction.  Id.  The Seafirst suit proceeded to trial on certain of the issues, leaving

7    additional issues for a "Phase II" trial contingent upon the outcome of the Phase I trial.  Id.  The

8    Phase I jury entered a verdict in favor of Seafirst.  Id. at 764.  The district court subsequently entered

9    final judgment upon that verdict.  Id.  Thereafter, National Union and Seafirst reached a settlement

10   by which retrial and appeal rights were waived, and Phase II was foregone.  Id.  As part of the

11   settlement, Seafirst expressly agreed that National Union would be able to sue Seafirst's insurance

12   broker, attorney and accountant for damages arising out of the respective entities' involvement with

13   the insurance policy at issue in the Seafirst case.  The settlement was further conditioned upon

14   Seafirst's support of the motion to vacate, and Seafirst did file a motion in support of vacatur.  Id.

15   However, vacatur of the judgment was not itself a condition of the settlement.  Id.

16        Seafirst's insurance broker and attorney, later joined by the accountant, moved to intervene

17   upon learning of the motion to vacate.  Id.  The district court denied the motion to vacate on the

18   following grounds:

19              This court finds that it would not serve the interests of justice to vacate
                either the judgment or the injunction.  To do so would not only affect
20              the rights of other litigants, but would nullify two decisions—one by
                this court [the injunction], another by a jury—reached after careful and
21              judicious consideration of factual patterns that have not changed.

22   Id. (quoting the district court order).

23        On appeal, the Ninth Circuit considered whether the district court had abused its discretion in

24   denying vacatur.  Id. at 765.  The court held that, "[g]iven the third-party interests in this case and

25   the possible, although uncertain status of any preclusive effect, the district court did not abuse its

26   discretion in denying the motion to vacate."  Id. at 769.  The court further held that "[t]o the extent

27

28

7

1   there may be preclusive effect, National Union should not be able to avoid those effects through

2   settlement and dismissal of the appeal." Id.

3       A number of factors distinguish National Union from the instant action.  First, the Ninth

4   Circuit in National Union was addressing whether the district court abused its discretion in

5   considering effects on third parties in denying a motion to vacate.  In holding that it did not, the

6   Ninth Circuit did not hold that possible preclusive effects are legally protectable interests.  Second,

7   the interest at issue was much stronger in National Union than it is here.  The third parties in

8   National Union were seeking to protect a *judgment* against a party that likely intended to sue them

9   based on the facts giving rise to the judgment itself.  Here, the ruling in question is a discovery

10  order.  While DMAL parties assert that the April 2000 Order is no garden-variety discovery order,

11  the operative ruling in that order was that this court had found "reasonable cause to believe" that the

12  White Papers contained misrepresentations.  This ruling falls short of an actual determination of

13  liability, and served only to vitiate the attorney-client privilege and enable the production of

14  documents.  While this was an uncommon basis for ordering document production, the April 2000

15  Order was, in essence, a collateral discovery order.  Accordingly, National Union does not compel

16  this court to recognize the DMAL parties' interest in the April 2000 Order as protectable for the

17  purposes of Rule 24(a).

18      Two other cases illustrate the reluctance on the part of courts to extend Rule 24(a) rights to

19  protect the preclusive effects of court orders.  In Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508

20  (11th Cir. 1996), the Eleventh Circuit denied intervention under similar, and more compelling,

21  circumstances.  There, a jury trial in a securities class action suit yielded a verdict and judgment in

22  favor of the plaintiffs.  Id. at 1510.  In a separate action, the class action defendants had brought a

23  libel action against the television network ABC based on a story the network had aired on the

24  securities transactions giving rise to the class action suit.  Id.  After the jury verdict was entered,

25  ABC moved for summary judgment in the libel suit on the grounds that the jury verdict precluded a

26  judgment against ABC.  Id.  The magistrate judge in the libel suit, finding that the jury verdict had

27  preclusively established the substantial truth of the ABC story, recommended that summary

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    judgment be granted.  Id.  After the magistrate judge issued his recommendation, the parties in the

2    class action suit negotiated a settlement that was contingent upon a stipulated motion to vacate the

3    jury verdict and judgment.  Id.  In light of the settlement agreement, the district court in the libel

4    case rejected the magistrate's recommendation and remanded for further proceedings.  Id. at 1511.

5         In an attempt to revive the magistrate's recommendation and secure summary judgment,

6    ABC moved to intervene in the class action suit for the sole purpose of opposing the motion to

7    vacate.  Id.  The district court denied the motion and vacated the jury verdict and judgment.  Id.  As

8    the jury verdict had been vacated, the magistrate judge in the libel action recommended that

9    summary judgment be denied.  Id.  ABC appealed the denial of its motion to intervene, claiming that

10   the magistrate judge's recommendation amounted to a protectable interest to support intervention as

11   of right.  Id.  The Eleventh Circuit affirmed the district court, holding that "ABC's interest in the

12   collateral estoppel effect of the jury's verdict in this case is too collateral, indirect, and insubstantial

13   to support intervention as of right."  Id. at 1513.  The court distinguished National Union on the

14   grounds that, in National Union, (1) intervention was not an issue on appeal, (2) it was not apparent

15   whether the intervenors had intervened as of right or permissively, and (3) the intervenors were

16   defending a separate lawsuit brought by the same plaintiff "arising out of the very same insurance

17   contract transaction" at issue in the original case.  Id. at 1512.

18        Finally, the court in Allen-Bradley Co. v. Kollmorgen Corp., 199 F.R.D. 316 (E.D. Wis.

19   2001) denied intervention in the face of an even stronger preclusive interest on the part of the

20   proposed intervenor.  There, patents owned by Kollmorgen were the subject of two separate patent

21   infringement actions—the Eastern District of Wisconsin action involving Allen-Brady, and an action

22   in the Western District of Virginia involving Yaskawa Electric Corporation and Yaskawa Electric

23   America (collectively "Yaskawa").  Id. at 317.  After the Eastern District of Wisconsin issued an

24   order construing the patent claims, the parties in that case reached a settlement conditioned upon

25   vacatur of the claim construction order.  Id.  Yaskawa moved to intervene solely to oppose vacatur

26   of the claim construction order.  Id.  The Eastern District, assuming that its claim construction order

27

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1    would have preclusive effect in the Virginia action, nonetheless denied intervention, declining to

2    recognize a protectable interest in the collateral estoppel effect of a court's judgment.  Id.

3        Taken together, Purcell and Allen-Bradley indicate that, even where a court's order has a

4    direct, identifiable effect on a separate action, the would-be beneficiaries of that effect may not

5    invoke that interest in support of a motion to intervene as of right.  This principle applies with

6    greater force here, where the possible effects of the April 2000 Order are less certain and more

7    attenuated.  It is not at all clear what preclusive effects, if any, the Southern District of New York

8    will give to the April 2000 Order.  Additionally, the holdings in the April 2000 Order do not go to

9    the merits of any liability arguments at issue in the DMAL case, but rather speak only to the

10   applicability of the attorney-client privilege to certain documents.  In sum, DMAL parties' interest

11   in possible collateral effects of the April 2000 Order is indirect, contingent and insubstantial, and

12   therefore not legally protectable.

13

14                2.        Relationship Between Asserted Interest and Action

15       In addition to the requirements related to the nature of the interest to be protected, Rule 24(a)

16   requires that the interest be "related to the property or transaction which is the subject of the action."

17   "An applicant generally satisfies the 'relationship' requirement only if the resolution of the

18   plaintiff's claims actually will affect the applicant."  Donnelly, 159 F.3d at 410.  Plaintiffs assert that

19   the DMAL parties' asserted interest—the preservation of the April 21 Order—bears no relationship

20   to the copyright and antitrust claims and defenses at issue in this action.  In response, the DMAL

21   parties claim that their antitrust claims and defendants' antitrust counterclaims encompass the same

22   alleged pattern of conduct.  The DMAL parties further claim that they "would have been litigating in

23   this Court alongside Hummer Winblad had the JPML not transferred the *DMAL* to the Southern

24   District of New York."  Mot. at 8.

25       Regardless of the overlap between the respective antitrust claims of the DMAL parties and

26   Hummer Winblad, the DMAL parties are off the mark when they invoke this similarity in support of

27   their motion to intervene.  The DMAL parties seek to intervene not to litigate their antitrust claims

28

                                    10

UNITED STATES DISTRICT COURT
For the Northern District of California

1   alongside Hummer Winblad, but rather for the sole purpose of opposing plaintiffs' motion to vacate

2   a discovery order.  Even where a third party seeks to bring "nearly identical" claims against the same

3   defendant in a separate proceeding, the requisite Rule 24(a) relationship will not be found where the

4   third party's motion to intervene focuses on a "collateral issue" such as whether a ruling in the

5   underlying action would impair or impede the third party's ability to litigate his or her own action.

6   In re Ford Motor Co., 471 F.3d 1233, 1246–47 (11th Cir. 2006).  Because the DMAL parties assert

7   only a collateral basis for intervention, they are not entitled to intervene pursuant to Rule 24(a).

8

9           C.        Impairment or Impediment

10          In addition to claiming that the DMAL parties do not have a protectable interest, plaintiffs

11  assert that the DMAL parties' ability to protect that interest will not be impaired or impeded by

12  denying intervention.  The DMAL parties' purported impairment is the loss of the preclusive effect

13  of the April 2006 Order and, presumably, the need to litigate the issues raised in that order in the

14  DMAL action.  Numerous courts have held that the burden of duplicative litigation is not the sort of

15  impairment envisioned by Rule 24(a).  See, e.g., California ex rel. Lockyer v. U.S., 450 F.3d 436,

16  442 (9th Cir. 2006) ("Even if this lawsuit would *affect* the proposed intervenors' interests, their

17  interests might not be *impaired* if they have 'other means' to protect them") (emphasis in original);

18  Blake, 554 F.2d at 954 ("Mere inconvenience to the Commissioner caused by requiring him to

19  litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2)");

20  Hawaii-Pacific Venture Capital Corp. v. Rothbard, 564 F.2d 1343, 1346 (9th Cir. 1977) ("Where, as

21  here, the would-be intervenors have alternate means of relief, an order denying a motion for

22  intervention is not appealable"); Securities & Exch. Comm'n v. Everest Mgmt. Corp., 475 F.2d

23  1236, 1239 (2d Cir. 1972) (holding that the financial burden of duplicating another party's efforts

24  and the inability to develop a comparable record was "not the sort of adverse practical effect

25  contemplated by Rule 24(a)(2)").  These authorities confirm that a non-party may not seek to

26  preserve the preclusive effects of an order through the process of intervention as of right.

27  Accordingly, the DMAL parties have failed to show the impairment required by Rule 24(a).

28

11

1          Because the DMAL parties have failed to demonstrate a protectable interest, related to the

2   underlying action, that would be impaired if intervention were denied, the DMAL parties are not

3   entitled to intervention as of right.

4

5   II.        Permissive Intervention

6          Permissive intervention pursuant to Rule 24(b) requires that (1) an independent ground for

7   jurisdiction exist, (2) the motion to intervene be timely, and (3) there exist a claim or defense shared

8   between the main action and the intervenor's suit. See Fed. R. Civ. P. 24(b).  Once these threshold

9   requirements are established, the court retains "broad discretion" to determine whether permissive

10  intervention is appropriate.  Donnelly, 159 F.3d at 412.  Plaintiffs claim that the statutory

11  requirements for permissive intervention are not satisfied in this case.  In addition to the timeliness

12  objections discussed above, plaintiffs dispute that there is a valid shared claim or defense between

13  this action and the Digital Music Antitrust Litigation.  The DMAL parties' asserted common

14  question of law is "whether the balance of equities support [sic] vacatur of the April 21 Order."

15  Mot. at 9.  Plaintiffs assert that this question is not a "claim or defense" as required by Rule 24(b).[1]

16         The Ninth Circuit has recognized that "the primary focus of Rule 24(b) is intervention for the

17  purpose of litigating a claim on the merits."  Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470,

18  472 (9th Cir. 1992).  However, the Ninth Circuit has also rejected the notion that Rule 24(b) applies

19  only to substantive causes of action.  In Beckman, 966 F.2d at 473, the court held that permissive

20  intervention under Rule 24(b) was available to a party seeking to modify the terms of a protective

21  order.  The proposed intervenors in that case sought to modify a protective order such that the

22  intervenors would gain access to certain documents.  Id. at 471.  For the purposes of establishing a

23  shared claim or defense, the facts of Beckman are not meaningfully distinguishable from those of the

24  instant motion.  The DMAL parties seek to preserve a discovery order so that they may gain access

25  to certain documents.  Accordingly, the statutory threshold for granting permissive intervention has

26  been met.  See Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc., 823 F.2d 159, 164 (6th Cir.

27  1987) (holding that Rule 24(b) intervention is available "to pursue a related claim in a somewhat

28

UNITED STATES DISTRICT COURT
For the Northern District of California

12

1  similar time frame of alleged anticompetitive conduct, and to seek out discovery material to assist in

2  that pursuit in which the public has a strong interest").[2]

3       The question, therefore, is whether this court, under its "broad discretion," should permit the

4  DMAL parties to intervene under these circumstances.  When deciding a motion to intervene, a

5  district court must take into consideration the prejudice to the original parties that will result if the

6  proposed intervenor is permitted to join the action.  See Donnelly, 159 F.3d at 412.  Indeed,

7  according to one commentator, the possibility of prejudice to the original parties is in fact the

8  "principal consideration" when deciding a motion to intervene.  7C Charles Alan Wright & Arthur

9  R. Miller, Federal Practice and Procedure § 1913 (2nd ed. 2003).  Here, the prejudice to plaintiffs

10  and the Hummer defendants is manifest.  Allowing the DMAL parties to oppose the motion to

11  vacate would further prolong an already long-standing litigation on the eve of settlement, producing

12  one of two unacceptable dilatory results.  If this court were to grant the motion to intervene, the

13  possibility of additional appeals would stretch this litigation further.  If this court were to deny the

14  motion to vacate, the parties' settlement would be prevented altogether.  Furthermore, in light of the

15  Ninth Circuit's recent ruling in In re Napster, Nos. 06-15886, 06-72515, 2007 WL 754748 (9th Cir.

16  Mar. 14, 2007), the issues raised and decided in the April 2006 order would require further briefing

17  and hearings, both before this court and likely before the Ninth Circuit, before the order could have

18  any effect whatsoever in the Southern District of New York.  These additional proceedings would be

19  for the benefit only of the DMAL parties, not for any party to the instant action.

20       In light of the insubstantial interests asserted by the proposed intervenors and the severe

21  prejudice that would arise from intervention, the court finds that the DMAL parties are not entitled

22  to prevent the parties in this action from consummating their settlement agreement.  Accordingly,

23  the DMAL parties are not entitled to permissive intervention.[3]

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  CONCLUSION

2      For the above reasons the court hereby DENIES the DMAL parties' motion to intervene.

3      IT IS SO ORDERED.

4

5

6  Dated: March 30, 2007

7                                                    MARILYN HALL PATEL
                                                     District Judge
8                                                    United States District Court
                                                     Northern District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1

**ENDNOTES**

2

3

1.  In their reply brief, the DMAL parties attempt to recast their asserted common question as the substantive antitrust allegations which are common to Hummer's defenses and the DMAL plaintiff's causes of action.  Even assuming that the court should consider this argument raised for the first time in the DMAL parties' reply brief, these legal questions are not the basis of the motion to intervene, and therefore cannot support permissive intervention.

4

5

6

2.  Plaintiffs additionally argue that the requirement in Rule 24(c) that a motion to intervene "shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought" indicates that intervention may only be sought on the basis of a claim or defense that would ordinarily be set forth in a pleading.  The Ninth Circuit, however, has cautioned against reading the formal requirements of Rule 24(c) as substantive requirements pertaining to Rule 24(b).  See Beckman, 966 F.2d at 475 (holding that where a Rule 24 movant "describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal").

7

8

9

10

11

3.  Because the court finds that intervention is not appropriate under Rule 24, the court does not reach plaintiffs' argument that intervention would be futile.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

15