CAREY R. RAMOS (*pro hac vice*)
LYNN B. BAYARD (*pro hac vice*)
DARREN W. JOHNSON (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3900

STAN G. ROMAN (State Bar No. 87652)
TRACY M. CLEMENTS (State Bar No. 184150)
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
114 Sansome Street, Suite 400
San Francisco, California  94104-3898
Telephone:     (415) 249-8330
Facsimile:     (415) 249-8333

*Attorneys for Leiber et al.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NAPSTER, INC. COPYRIGHT LITIGATION | No. C-MDL-00-1369 MHP |
| LEIBER, et al., | No. C 04-1671 MHP |
| Plaintiffs, | |
| v. | **NOTICE OF MOTION AND MOTION IN  SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM AND POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| BERTELSMANN AG, et al., | |
| Defendants. | |
| | Date:     February 11, 2008 |
| | Time:     2:00 p.m. |
| | Ctrm:     15 (Hon. Marilyn H. Patel) |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

Preliminary Statement ............................................................................................................... 2

Factual Background and Procedural History of the Case ......................................................... 4

Argument .................................................................................................................................... 8

I. CLASS COUNSEL'S APPLICATION FOR  ATTORNEYS' FEES IS FAIR AND
    REASONABLE ......................................................................................................................... 8

    A.  The Legal Standards Governing the Award of Attorneys'  Fees in Common Fund
        Cases Support the Requested Award ................................................................................ 8
    1.    A Reasonable Percentage of the Fund Recovered is the  Appropriate Method for
            Awarding Attorneys' Fees in Common Fund Cases ................................................... 8
    2.    The Ninth Circuit Has Set a "Benchmark"  of 25% For An Award of Attorneys' Fees .. 9

    B.  Class Counsel's Requested Fee Award is Reasonable Under the Circumstances ............. 10
    1.    Class Counsel Achieved an  Exceptional Result for the Class...................................... 11
    2.    The Fee Agreement Between Class Counsel and the NMPA is  A Strong Indication that
            the Requested Fee Award is Fair and Reasonable....................................................... 11
    3.    The Effort, Experience and Skill of Class Counsel  Are Relevant Factors in Awarding
            Attorneys' Fees.......................................................................................................... 12
    4.    Class Counsel Faced Significant Risk in  Bringing these Claims Against Bertelsmann 13
    5.    The Requested Fee Award is  Reasonable Under a Lodestar Analysis ......................... 15

II. CLASS COUNSEL'S REQUESTED EXPENSES ARE REASONABLE AND  WERE
    NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED.......................... 17

III. THE REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO SERVICE  PAYMENTS
     FOR THEIR REPRESENTATION OF THE CLASS IN THIS ACTION............................... 19

Conclusion ................................................................................................................................. 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*A&M Records, Inc.* v. *Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) .............................................. 4

*Abrams* v. *Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995) ............................................................. 17

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................................. 9, 10

*Blum* v. *Stenson*, 465 U.S. 886 (1984) ........................................................................................ 9

*Bratcher* v. *Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722 (10th Cir. 1993) ........................ 17

*Brown* v. *Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) ............................................. 9

*Brown* v. *Pro Football*, 839 F. Supp. 905 (D.D.C. 1993) .....................................................8, 18n

*Camden I Condo. Ass'n* v. *Dunkle*, 946 F.2d 768 (11th Cir. 1991) .......................................... 9

*Columbia Pictures Television, Inc.* v. *Krypton Broad. of Birmingham, Inc.*
   259 F.3d 1186 (9th Cir. 2001) ........................................................................................ 11

*Edmonds* v. *United States*, 658 F. Supp. 1126 (D.S.C. 1987) ................................................... 12

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ........................... 14

*Farhat* v. *Hartford Life & Acc. Ins. Co.*, No. C 05-0797 PJH, 2006 WL 2521571
   (N.D. Cal. Aug. 30, 2006) ............................................................................................. 16n

*Fischel* v. *Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ......................... 16n

*Gates* v. *Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) .............................................................. 17n

*In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................. 17

*Glass* v. *UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862
   (N.D. Cal. Jan. 26, 2007) ............................................................................................... 10

*Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................ 9

*Gottlieb* v. *Barry*, 43 F.3d 474 (10th Cir. 1994) ..................................................................... 9n

*In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................. 12

*Harman* v. *Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991) ..................................................... 9n

*Harris* v. *Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ................................................................... 17

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403
(C.D. Cal. June 10, 2005).................................................................................passim

*In re Immune Response Sec. Litig.*, No. 01CV1237 J WMC, 2007 WL 2071566
(S.D. Cal. May 31, 2007) ................................................................................ 14,18

*MGM Studios, Inc.* v. *Grokster, Ltd.*, 545 U.S. 913 (2005)..................................... 15

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733 (S.D.N.Y. 1994)........ 18n

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996).............. 17, 18, 18n, 19

*In re Meg Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ................................... 10

*In re Merrill Lynch & Co., Inc. Res. Rpts. Sec. Litig.*, No. 02 MDL 1484 (JFK), 02 Civ.
3176 (JFK), 02 Civ. 7854 (JFK), 02 Civ. 10021 (JFK), 2007 WL 313474, slip op.
(S.D.N.Y. Feb. 1, 2007) .................................................................................... 18n

*Miltland Raleigh-Durham* v. *Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993) ................... 17

*In re Napster, Inc.*, No. 02-11573, Tr. of Sale Hr'g before Hon. Peter J. Walsh 140
(Bankr. D. Del. Sept. 3, 2002)............................................................................ 4

*In re Omnivision Tech., Inc.*, No.C-04-2297 SC, 2007 WL 4293467
(N.D. Cal. Dec. 6, 2007) ...................................................................9, 10, 11, 18n

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................................... 13

*Paul, Johnson, Alston & Hunt* v. *Graulty*, 886 F.2d 268 (9th Cir. 1989)....................... 9

*Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) ........................... 11

*In re Public Service Co. of N.M.*, No. 91-0536M, 1992 WL 278452
(S.D. Cal. July 28, 1992)................................................................................... 12

*Shea* v. *Galaxie Lumber & Constr.*, No. 94 C 906, 1999 WL 138791
(N.D. Ill. Mar. 2, 1999).................................................................................... 7n

*Singer* v. *Am. Airlines Fed. Credit Union*, No. C 05-04961 JCS, 2006 WL 3093759
(N.D. Cal. Oct. 30, 2006) ................................................................................ 18, 19

*Six Mexican Workers* v. *Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)..................... 9n

*Staton* v. *Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................. 19

*Steiner* v. *Am. Broad. Co., Inc.*, No. 05-55773, 2007 WL 2460326, slip op.
(9th Cir. Aug. 29, 2007)................................................................................14, 15, 16

*Swedish Hosp. Corp.* v. *Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ................................. 9

*Thornberry* v. *Delta Air Lines*, 676 F.2d 1240 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952, 103 S. Ct. 2421, 77 L. Ed. 2d 1311 (1983) ................................................... 18n

*UMG Recordings, Inc.* v. *MP3.Com, Inc.*, 00 Civ 472 JSR, 2000 U.S. Dist. LEXIS 17907 (S.D.N.Y. Nov. 14, 2000) ....................................................................... 11

*Van Vranken* v. *Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .............................. 16

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................................................ 4, 18n

*In re Ventro Corp. Sec. Litig.*, No. 05-15849, 2007 WL 887905, slip op. (9th Cir. Mar. 26, 2007) ........................................................................................... 9

*Vincent* v. *Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977) ...................................................... 8

*Vizcaino* v. *Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................................passim

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ....... 9, 11, 16n

*Welch* v. *Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ........................................... 16n, 17n

**OTHER AUTHORITIES**

Denise N. Martin et al., *Recent Trends IV.- What Explains Filings and Settlements in Shareholders Class Actions?* .................................................................................. 10n

Thomas E. Willging et al., *Empirical Study of Class Actions in Four Federal District Courts:  Final Report to the Advisory Committee on Civil Rules* 69 (Federal Judicial Center 1996) ..................................................................................................... 10n

Fed. R. Civ. P. 23 ........................................................................................................ 1, 6, 8

PLEASE TAKE NOTICE that on February 11, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Marilyn H. Patel, Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102-3483, plaintiffs in Case No. C-04-1671 (MHP), Jerry Leiber, individually and doing business as Jerry Leiber Music, Mike Stoller, individually and doing business as Mike Stoller Music, Frank Music Corporation, and Peer International Corporation (collectively, the "Leiber Plaintiffs" or "Representative Plaintiffs"), will and hereby do respectfully move, pursuant to Fed. R. Civ. P. 23(e), for an order approving Paul, Weiss, Rifkind, Wharton & Garrison LLP's ("Class Counsel") application for: (1) an award of attorneys' fees of $28,701,325; (2) reimbursement of $3,298,675 in expenses that were incurred in successfully prosecuting this litigation; and (3) the award of service payments totaling $150,000 to the Representative Plaintiffs to reimburse them for their time and expenses incurred for the prosecution of this action.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying declarations of Carey R. Ramos, Jacqueline C. Charlesworth, Al Pedecine, Tracy M. Clements, Mike Stoller, Randy Poe, John Eastman, and Ralph Peer II, the Stipulation of Settlement dated August 30, 2007 (the "Settlement"), all pleadings and records in the court file and any further evidence and argument presented at or prior to the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

On behalf of the Class[1] in this case, Class Counsel achieved a settlement of this action with defendants Bertelsmann AG, Bertelsmann, Inc., and Bertelsmann Direct North America, Inc., a Delaware corporation and successor in interest of BeMusic, Inc. (collectively "Bertelsmann" or "Defendants").  Under the terms of this Settlement, Bertelsmann has agreed to pay $130 million in cash for the benefit of the Class.  This Settlement – the largest reported recovery ever in a copyright infringement action – is an exceptional result for the Class, and was won after more than four years of hard-fought litigation that included extensive discovery and motion practice on the part of Class Counsel.  For their efforts in achieving this result, Class Counsel now seeks an award of attorneys' fees and expenses totaling $32 million.  This award breaks down into a request for $28,701,325 in attorneys' fees, which is 22.1% of the Settlement Fund,[2] and $3,298,675 in litigation expenses.  Class Counsel is seeking a fee award that is less than the 25% benchmark set by the Ninth Circuit because it is in keeping with their agreement to cap their fees and expenses at $32 million, as reported to the Class in the settlement class notice, as well as with the terms of a fee agreement entered into by Class Counsel and representatives of the class at the inception of this case.

Such an award is fair and reasonable for the following reasons:

---

[1]  The settlement class consists of "all music publisher-principals of The Harry Fox Agency ("HFA") during all or part of the time period from October 30, 2000 through [October 1, 2007] (other than those Persons that have, prior to the Signature Date of the Settlement Agreement, released their Potential Claims against the Bertelsmann Entities and their Related Parties)." Dkt. 1304.

[2]  On September 7, 2007, Bertelsmann paid $130 million into a segregated escrow account for the benefit of the class (the "Settlement Fund").  This fund has earned $1,228,088.69 in interest as of November 30, 2007 (the date of the last statement from the escrow agent).  Although this interest will be available for distribution to the Class, all calculations regarding the requested fee and expense award are based on the $130 million Settlement Fund.  (Ramos Decl. ¶ 6.)

---

- *First*, the requested fee award is below the guidelines prescribed by the Ninth Circuit for fee awards in common fund cases under either the percentage or the lodestar methodology.

- *Second*, this settlement represents an exceptional result for the Class as it is the largest reported recovery ever for a copyright infringement class action.[3]

- *Third*, the requested fee award conforms to a fee agreement negotiated and concluded prior to commencement of this litigation between Class Counsel and music publishers representing, on a market-share basis, a majority of the class members on whose behalf this action was brought.

- *Fourth*, Class Counsel developed this case based on their own discovery and investigation conducted prior to filing the first complaint in this action. Further, Class Counsel was the first to file claims against Bertelsmann, and did so prior to the major record labels' filings, which substantially mirrored the claims and allegations in the music publishers' complaint.

- *Fifth*, Class Counsel have actively litigated this case over a period of more than four years, logging over 35,000 hours in attorney and paralegal time representing the interests of the Class.  This work has included the review of millions of pages of documents, participating in the depositions of over 40 witnesses and litigating 26 motions.

- *Finally*, in bringing these claims against Bertelsmann, a sophisticated company with operations in Europe and the U.S. that earned over $3.5 billion last year alone,[4] Class Counsel assumed a significant risk.   Bertelsmann's

---

[3] Several major record labels, including their music publishing divisions, have also reached settlements with Bertelsmann.  (Exs. B-D.)  While Class Counsel is not seeking legal fees from these other settlements, they represent additional recoveries by the music publishing industry, and are further evidence of Class Counsel's success in litigating these claims.

[4] *See* Bertelsmann AG Annual Report 2006, *available at* http://www.bertelsmann.com/bertelsmann_corp/wms41/bm/index.php?ci=192 (listing annual revenues at €2.424 billion).

enormous resources allowed it to aggressively defend the claims, including seeking representation by experienced defense counsel, and meant that Bertelsmann could afford a lengthy litigation, including a trial and any appeals.

For these reasons, and for the additional reasons set forth below, the Leiber Plaintiffs respectfully request that the Court approve their application for attorneys' fees and litigation expenses.

### Factual Background and Procedural History of the Case

This action arose from the original litigation against Napster.  In January 2000, an action was filed on behalf of a class of music publishers against Napster for copyright infringement.  After numerous proceedings before this Court and the Ninth Circuit, in July 2001, this Court ordered Napster to shut down its service immediately, which Napster did.  *See A&M Records, Inc.* v. *Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) (affirming shut-down order).  Class Counsel represented substantially the same class of plaintiffs in that case (the "Napster Class").[5]

On May 24, 2002, Napster executed a proposed sale agreement with Bertelsmann that would have seen Bertelsmann acquire substantially all of Napster's assets on the condition that Napster file for bankruptcy.  One week later, Napster filed for Chapter 11 protection.  (Am. Compl. ¶ 45.)  After conducting two days of evidentiary hearings, the Bankruptcy Court – based on Class Counsel's objection to the sale – denied Napster's motion to approve the proposed sale, concluding that Napster had "not met its burden of showing that the transaction was effected in good faith and at arm's length," and that the "deficiency" was "so apparent" that it was "not cured by the auction process."  (*In re Napster, Inc.*, No. 02-11573, Tr. of Sale Hr'g before Hon. Peter J. Walsh 140 (Bankr. D. Del. Sept. 3, 2002).)  Class Counsel represented the Napster Class in those bankruptcy proceedings.[6]

---

[5]   Class Counsel seeks no fees with respect to their representation of the Napster Class.

[6]   Class Counsel seeks no fees with respect to their representation of the Napster Class in the bankruptcy proceedings.

During the course of limited discovery in Napster's bankruptcy proceeding, Class Counsel discovered documents that provided the basis for the claims in this action.  (Ramos Decl. ¶ 9.)  Based largely on the facts unearthed by Class Counsel, members of the National Music Publishers' Association, Inc. ("NMPA") decided to pursue a class action on behalf of music publishers against Bertelsmann for its involvement with Napster. (Ramos Decl. ¶ 10.)  As the principal trade association for music publishers in the United States, NMPA's approximately 700 music publisher members, including their subsidiaries and affiliates, represent the interests of songwriters who own or control the copyrights in the overwhelming majority of musical compositions available for licensing in the United States.  (Charlesworth Decl. ¶ 2.)  One of NMPA's main responsibilities is representing the interests of these publishers before the courts in matters, such as this one,  affecting their copyrights.  (Charlesworth Decl. ¶ 4.)

After a series of negotiations, NMPA and Class Counsel agreed that NMPA would retain Class Counsel in this action on a contingency fee basis.  (Ramos Decl. ¶ 11.)  On February 6, 2003, NMPA's Board of Directors, which collectively represented the majority (based on market share of mechanical royalties) of the members of the class of songwriters and music publishers on whose behalf the above captioned action was brought, approved a contingency fee agreement with Class Counsel.  (Ramos Decl. ¶ 11.)  This agreement provides that Class Counsel's fee, if the litigation produced a successful recovery, would comprise of one-half of their standard time charges as well as one-sixth of the total recovery for the Class. (Ramos Decl. ¶ 11.)  The agreement also provides that, during the course of the litigation, NMPA would advance Class Counsel one-half of their standard time charges and any expenses incurred in the litigation.  (Ramos Decl. ¶ 11.)  NMPA agreed to these advances on the understanding that, subject to Court approval, they would be reimbursed for these advances out of any fee award obtained by Class Counsel. (Ramos Decl. ¶ 11.)

On February 19, 2003, Class Counsel filed a complaint on behalf of the Leiber Plaintiffs, launching the first action against Bertelsmann for its involvement with Napster.  (Ex. E.)  On May 12, 2003, Universal Recordings, Inc. ("UMG") also filed suit against Bertelsmann alleging similar claims.  (Ex. F.)  On June 4, 2003, a group of EMI record companies ("EMI")

did the same.  (Ex. G.)  In April 2003, the Leiber Plaintiffs filed an Amended Complaint alleging that Bertelsmann was contributorily and vicariously liable for acts of direct copyright infringement committed by Napster users (the "Amended Complaint").  (Ex. H.)

On July 17, 2003, Bertelsmann filed a motion to dismiss the Amended Complaint, claiming that it did not state claims for contributory and vicarious copyright infringement.  (Ex. I.)  On July 14, 2004, the Court denied Bertelsmann's motion to dismiss, finding that the allegations of the Amended Complaint had adequately stated claims for contributory and vicarious liability.  Dkt. 8.[7]

On June 1, 2005, the Court certified this lawsuit to proceed as a class action for damages, as well as for attorneys' fees and costs, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Dkt. 659.  The Court further certified the Leiber Plaintiffs as representatives of the certified class, and their counsel of record, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Krieg, Keller, Sloan, Reilley & Roman LLP ("Krieg Keller"), as class counsel.[8]  Id.

Shortly after the Court denied Bertelsmann's motion to dismiss, Class Counsel commenced discovery in this matter.  During the course of discovery, Class Counsel reviewed and catalogued millions of pages of documents and participated in the depositions of over 40 witnesses over 47 days.  (Ramos Decl. ¶ 17.)  As part of the discovery process, Class Counsel also propounded 7 sets of document requests, 7 sets of interrogatories, and one set of requests for admission, and responded to 3 sets of document requests, 4 sets of interrogatories, 1 set of requests for admission and 2 subpoenas from Bertelsmann.  (Ramos Decl. ¶ 18.)  As part of the damages phase of the discovery process, Class Counsel analyzed over 10,000 copyright registration documents in order to establish chain-of-title in works in the Leiber Plaintiffs' catalogues.  (Ramos Decl. ¶ 17.)  Class Counsel also worked extensively with economics experts on a damages analysis and with statistical experts in analyzing millions of data points collected

---

[7]  "Dkt. __" refers to the docket numbers from this action, C-MDL-00-1369 MHP (N.D. Cal.).

[8]  Krieg Keller's attorneys' fees incurred as a result of their representation of the Class are included in Class Counsel's requested fee award.  Krieg Keller will not be making a separate application to the Court for attorneys' fees.  (Clements Decl. ¶ 2.)

from various sources, including data collected by Class Counsel from the Napster service while it was still running.  (Ramos Decl. ¶ 19.)  This statistical work was conducted as part of Class Counsel's effort to establish and quantify the amount of direct infringement by Napster users. (Ramos Decl. ¶ 19.)

This litigation also involved litigating 26 motions, including two motions for partial summary judgment, both filed by Bertelsmann.  Dkts. 624 and 688.  In the first motion, Bertelsmann argued that the plaintiffs had to prove direct infringement of copyrighted works by Napster users, before they could establish contributory or vicarious infringement of the same works by Bertelsmann.  The Court granted this motion in part, and denied it in part.  Dkt. 660. In their second motion, Bertelsmann argued that plaintiffs had to establish that Bertelsmann had specific knowledge of the availability of each of the allegedly infringed works on the Napster system at a time when they were in a position to block access to those works.  The Court denied this motion. Dkt. 935.

In 2006, after engaging in this extensive discovery process and motion practice, the Leiber Plaintiffs and Bertelsmann filed their motions for summary judgment.  Dkts. 1019 and 1024.  Bertelsmann requested that the Court dismiss the Leiber Plaintiffs' claims on the ground that there were no genuine issues of material fact with regard to any of the Leiber Plaintiffs' theories of secondary liability.  They also filed a conditional motion for summary judgment requesting that the Court limit any statutory damages award to no more than four times the Leiber Plaintiffs' actual damages.  Dkt. 1021.  The Leiber Plaintiffs' motion for summary judgment requested that the Court dismiss any Bertelsmann claim or defense of copyright misuse.

After the summary judgment motions were fully briefed, but before the hearing, UMG settled its action against Bertelsmann for $60 million.  (Ex. B.)  In March 2007, EMI settled its action against Bertelsmann, with EMI reporting income of GB£56.8 million from that settlement in its 2007 annual report..  (Ex. C.)  In April 2007, the Warner Music Group ("WMG"), which was not yet a party to this litigation but was asserting claims similar to those asserted by UMG and EMI, settled for $110 million.  (Ex. D.)

In June of this year, the Leiber Plaintiffs and Bertelsmann agreed in principle to settle this matter for $130 million.  (Ramos Decl. ¶ 21.)  Over the next two months, Class Counsel and counsel for Bertelsmann negotiated the terms of the 43-page settlement agreement, which was executed on August 30, 2007.  (*Id*.)

Following Plaintiffs' Motion for Preliminary Approval, filed on August 31, 2007, the Court issued an order preliminarily approving the proposed settlement, certifying a settlement class, approving the form of the class notice, and setting a schedule for the final approval process.  Dkt. 1304.  Notice of Class Counsel's intent to request an award of attorneys' fees and expenses of up to $32 million was provided to the Class through the Notice of Proposed Class Action Settlement with Bertelsmann Defendants (the "Notice").  (Ex. J.)

**Argument**

**I.**

**CLASS COUNSEL'S APPLICATION FOR
ATTORNEYS' FEES IS FAIR AND REASONABLE**

**A.     The Legal Standards Governing the Award of Attorneys'
Fees in Common Fund Cases Support the Requested Award**

Class Counsel has requested a fee award of 22.1% of the Settlement Fund.  This award is consistent with this Court's and the Ninth Circuit's approach to awarding attorneys' fees under the common fund doctrine.

1.     A Reasonable Percentage of the Fund Recovered is the
Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

The "common fund doctrine" is founded on principles of equity which recognize that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent* v. *Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort

helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) [hereinafter *WPPSS*].

The Supreme Court has recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Blum* v. *Stenson*, 465 U.S. 886, 900 n.16 (1984). In common fund cases in this Circuit, district courts have the discretion to award attorneys' fees based either on the lodestar method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296. The Ninth Circuit has expressly sanctioned the use of the percentage method. *See, e.g., Paul, Johnson, Alston & Hunt* v. *Graulty*, 886 F.2d 268, 268 (9th Cir. 1989).[9] Since *Paul, Johnson, Alston & Hunt*, district courts in this Circuit have primarily employed the percentage method to award fees in common fund cases. *See, e.g., In re Omnivision Tech., Inc.*, No.C-04-2297 SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (Patel J.) (holding that "in class action common fund cases the better practice is to set a percentage fee"). The majority of other circuits have also sanctioned its use, *see, e.g., Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000),[10] and in some circuits, the use of the percentage method is mandatory in common fund cases, *see Swedish Hosp. Corp.* v. *Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n* v. *Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).

2.   The Ninth Circuit Has Set a "Benchmark"
        of 25% For An Award of Attorneys' Fees

The Ninth Circuit has held that 25% of the fund is an appropriate "benchmark" for an award for attorneys' fees. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *see also Ventro Corp. Sec. Litig.*, No. 05-15849, 2007 WL 887905, slip op. at *1 (9th Cir. Mar. 26, 2007)

---

[9]   *See also Vizcaino* v. *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers* v. *Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

[10]   *See also Gottlieb* v. *Barry*, 43 F.3d 474 (10th Cir. 1994); *Harman* v. *Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Brown* v. *Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

(affirming the 25% benchmark).[11]   Additionally. this Court has suggested that "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *In re Activision Sec. Litig.*, 723 F. Supp. at 1378.

Class Counsel's requested fee award of 22.1% of the Settlement Fund is less than both this Court's and the Ninth Circuit's benchmarks for awards in common fund cases.  And it is less than awards in other class action cases.  *See, e.g., In re Meg Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (33.3% fee award upheld); *In re Omnivision Tech., Inc.*, 2007 WL 4293467, at *11 (approving an award of 28% of common fund); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving an award of 25% of common fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (approving an award of 25% of common fund and collecting cases).[12]

**B.     Class Counsel's Requested Fee Award is Reasonable Under the Circumstances**

While the Ninth Circuit has held that 25% of the gross settlement amount serves as a benchmark for assessing attorneys' fees, the percentage may be adjusted to account for all the circumstances of the case.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002).  Class Counsel's request for an award of attorneys' fees of 22.1% of the Settlement Fund is reasonable under the circumstances of this case and should be approved.

---

[11]   In *Vizcaino*, the court approved an award of 28% of the $96,885,000 settlement fund, noting that in "megafund" cases, or cases with settlement values of $50-200 million – the majority of fee awards were "clustered in the 20-30 percent range." 290 F.3d.at 1050 n.4 & Appendix.

[12]   Further, a Federal Judiciary Center study released in 1996, which covered all class actions in four selected federal district courts with a high number of class actions, including the Northern District of California, found that as to the size of attorneys' fees: "Median rates ranged from 27% to 30%." Thomas E. Willging et al., *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* 69 (Federal Judicial Center 1996).  This finding is in line with an analysis of fee awards in shareholder class actions conducted in 1996 by National Economic Research Associates – where litigation often concludes much earlier than it did this case – which concluded that:  "[r]egardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin et al., *Recent Trends IV.- What Explains Filings and Settlements in Shareholders Class Actions?*, NERA, Nov. 1996, at 12-13.

1.    Class Counsel Achieved an
      Exceptional Result for the Class

Courts have recognized that achieving an "exceptional result" for the class is a key factor in determining a reasonable fee award. *See Vizcaino*, 290 F.3d at 1048-49; *WPPSS*, 19 F.3d at 1299-1301; *In re Omnivision*, 2007 WL 4293467, at *9 ("The overall result and benefit to the class is the most critical factor in granting a fee award"); *Pinto* v. *Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) (result achieved is a "major factor" in determining fee award); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 ("The result achieved is a significant factor in making a fee award") (citing *Hensley* v. *Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("The most critical factor is the degree of success obtained")).

The Settlement reached in this case is an exceptional result for the Class.  Despite vigorous opposition by Bertelsmann at every stage of the litigation, Class Counsel achieved a $130 million recovery for the Class – the largest reported recovery ever for a copyright infringement class action. *Compare, e.g., Columbia Pictures Television, Inc.* v. *Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1190-91 (9th Cir. 2001) (affirming jury verdict of $31.68 million for copyright infringement); *UMG Recordings, Inc.* v. *MP3.Com, Inc.*, 00 Civ. 472 JSR, 2000 U.S. Dist. LEXIS 17907 (S.D.N.Y. Nov. 14, 2000) (entering judgment for copyright infringement of $53,400,000).[13]

2.    The Fee Agreement Between Class Counsel and the NMPA is
      A Strong Indication that the Requested Fee Award is Fair and Reasonable

In this case, Class Counsel's fee request is based on, and in fact is limited by, the terms of a fee agreement executed at the inception of this case.  In February 2003, prior to the commencement of this action, Class Counsel and NMPA entered into a fee agreement that set

---

[13]    The settlement amount exceeds the settlement amounts reported by UMG ($60 million) and WMG ($110 million) for their separate settlements with Bertelsmann in this case.  (Exs. B, D.)  As these settlements were concluded on behalf of UMG, EMI and WMG's recorded music companies as well as their music publishers, their publishing entities would only have received a portion of the overall settlement.

forth Class Counsel's fees for representing the Class in this action.  (Ramos Decl. ¶ 11.)  The Board of Directors of NMPA, which approved the fee agreement, collectively represented the majority (based on market share of mechanical royalties) of the members of the class of songwriters and music publishers on whose behalf the above-captioned action was brought.  (*Id.*) Thus, unlike most class actions, viewed on a market share basis, the Class has effectively approved Class Counsel's fees in advance of this litigation.  Furthermore, that NMPA negotiated the terms of the fee agreement with Class Counsel *before* the litigation commenced is evidence of the fairness of the fees sought by Class Counsel and the reasonable expectations of Class Counsel and the Class at the inception of the litigation.  *See Vizcaino*, 290 F.3d at 1049-50 (holding that fee agreements that involve the class and that are executed prior to the commencement of litigation help establish "reasonable expectations" of the parties in terms of an eventual fee award); *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 916 (N.D. Cal. 2005) (noting that "fee arrangements set early in the litigation – *ex ante*, so to speak – are more likely than *ex post* fee agreements to be the product of market forces").

   3.   The Effort, Experience and Skill of Class Counsel
        Are Relevant Factors in Awarding Attorneys' Fees

The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds* v. *United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  Here, Class Counsel's effort, experience and skill were critical factors in the successful management and resolution of the action against Bertelsmann.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 ("[T]he quality of Class Counsel's effort, experience and skill is demonstrated in the exceptional result achieved"); *In re Public Service Co. of N.M.*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (noting that the experience of class counsel in complex litigation cases supports fee award).

Class Counsel are experienced attorneys.  (Ramos Decl. ¶¶ 2-4.)  Over the past 20 years, Class Counsel has successfully litigated numerous complex copyright infringement claims, including actions against or involving file-sharing services.  (Ramos Decl. ¶¶ 3-4.)  The skill and experience gained during these representations were critical components of Class

1    Counsel's successful resolution of this case, and were brought to bear not only through the

2    substantive aspects of legal strategy and motion practice, but also through negotiating the

3    complex procedural and evidentiary hurdles that exist in a case of this magnitude.

4           For example, during the course of bankruptcy proceedings against Napster, it was

5    Class Counsel that identified and then developed key pieces of evidence that became the

6    foundation of the claims against Bertelsmann. (Ramos Decl. ¶ 9.)   It was also Class Counsel

7    that drafted the first complaint filed against Bertelsmann – a complaint that subsequently formed

8    the basis for the complaints of UMG and EMI, which have also successfully resolved their

9    claims against Bertelsmann. (Ramos Decl. ¶¶ 13-14.) Further, Class Counsel devoted countless

10   hours to the investigation, discovery and analysis of the claims in this case.  Class Counsel

11   reviewed, analyzed and catalogued millions of pages of documents, many of which had to be

12   translated from German. (Ramos Decl. ¶ 17.) Class Counsel also participated in the depositions

13   of over 40 witnesses, including several current or former Bertelsmann employees who had to be

14   deposed in Germany. (*Id.*) During the damages phase of the case, Class Counsel worked closely

15   with several experts to develop methods and models for quantifying the amount of direct

16   infringement facilitated by the Napster service. (Ramos Decl. ¶ 19.)   This effort alone involved

17   the collection and analysis of millions of transactions on the Napster system in order to establish

18   that Class members' works had been infringed by Napster users. (*Id.*)

19          Class Counsel's skill and experience were also brought to bear in the extensive

20   motion practice in this case.   At the outset of the case, Class Counsel defeated Bertelsmann's

21   motion to dismiss, Dkt. 8, and then shortly thereafter won certification for the class.  Dkt. 659.

22   Class Counsel also successfully briefed and argued Bertelsmann's two partial summary

23   judgment motions, Dkts. 624, 628, and then briefed three further summary judgment motions,

24   including Bertelsmann's conditional summary judgment motion, Dkts. 1019, 1021, 1024.

25          4.    Class Counsel Faced Significant Risk in
26                Bringing these Claims Against Bertelsmann

27          Courts have repeatedly held that the risk undertaken by class counsel is a relevant

28   factor in determining fee awards. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES
AND EXPENSES                                          13                    Case No. C 04-1671 MHP
                                                                           Case No. C-MDL-00-1369 MHP

1   1995) (holding fees were justified "because of the complexity of the issues and the risk"); *In re*

2   *Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *5-6

3   (S.D.N.Y. Nov. 7, 2007); *In re Immune Response Sec. Litig.*, No. 01CV1237 J WMC, 2007 WL

4   2071566, *8 (S.D. Cal. May 31, 2007) (noting that risk is a factor in addressing proposed fee

5   awards); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (same).  Class Counsel assumed a

6   significant risk in bringing these claims against Bertelsmann, due both to the skill and resources

7   of Bertelsmann as opposing party, as well as to the complexity of the factual and legal issues

8   involved in the claims.[14]

9           Bringing suit against Bertelsmann, a sophisticated adversary, with annual

10  revenues of over $3.5 billion last year, was a significant risk.  Bertelsmann's vast resources

11  enabled it to retain experienced defense counsel, Weil, Gotshal & Manges, who vigorously

12  represented Bertelsmann's interests at every phase of the litigation.  *See Steiner* v. *Am. Broad.*

13  *Co., Inc.*, No. 05-55773, 2007 WL 2460326, slip op. at *2 (9th Cir. Aug. 29, 2007) (noting, in a

14  copyright infringement class action, that risk of "protracted litigation against very good

15  litigators" was a factor in determining fee award); *In re Equity Funding Corp. Sec. Litig.*, 438 F.

16  Supp. 1303, 1337 (C.D. Cal. 1977) (noting that "plaintiffs' attorneys in this class action have

17  been up against established and skillful defense lawyers, and should be compensated

18  accordingly").  Furthermore, Bertelsmann aggressively litigated the case at every stage of the

19  proceedings, filing numerous dispositive motions, each of which involved significant risk that

20  the Leiber Plaintiffs' claims could have been dismissed or their recovery curtailed.  And, even

21  assuming Class Counsel had prevailed at trial, Bertelsmann would likely have appealed any

22  unfavorable judgment rendered against them, leading to further risk, expense and delay during

23  the appellate process.  *See Vizcaino*, 290 F.3d at 1048 (noting that vigorous opposition is a

24  relevant circumstance in calculating fee awards).

25

26  _____

27  [14]   The contingent nature of Class Counsel's fee agreement created a substantial financial risk for  Class Counsel as
        they were undertaking a complex, expensive and probably lengthy litigation with no guarantee of being fully
28      compensated for their legal services.  (Ramos Decl. ¶ 12.)

1    Class Counsel also assumed significant risk in bringing these claims due to the

2    complexity of both the factual and legal issues in this case.  "Courts have recognized that the

3    novelty, difficulty and complexity of the issues involved are significant factors in determining a

4    fee award."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20.   As this Court is well aware

5    – and as evidenced by the extensive motion practice in this case – copyright infringement suits

6    regarding peer-to-peer file sharing systems involve difficult and complex issues of copyright

7    law.  In the midst of the litigation, the Supreme Court handed down its decision in *MGM Studios,*

8    *Inc.* v. *Grokster, Ltd.*, 545 U.S. 913 (2005), which created additional complexity in terms of

9    determining how the inducement theory outlined in *Grokster* applied to the claims against

10   Bertelsmann.[15]   Finally, the case involved complex factual issues, in particular around

11   establishing direct infringement by Napster's users. (Ramos Decl. ¶ 19.)  While Class Counsel is

12   confident that they could have presented sufficient evidence of direct infringement, their task

13   was complicated by Napster's failure to preserve adequate records of file transfers during the

14   time it was operational.  (Ramos Decl. ¶ 19.)  *See also Steiner*, 2007 WL 2460326, at *2 (noting

15   that a defendants' failure to keep "adequate records" and the fact that other important records

16   had been destroyed, created a significant risk in a copyright infringement action).

17         5.    The Requested Fee Award is
18               Reasonable Under a Lodestar Analysis

19         A lodestar analysis is not necessary in this case because Class Counsel is seeking

20   a percentage of the Settlement Fund.  However, in the Ninth Circuit, district courts may use the

21   lodestar method as a cross-check on the reasonableness of an award calculated under the

22   percentage method.  *See Vizcaino*, 290 F.3d at 1050 n.5; *In re Heritage Bond Litig.*, 2005 WL

23   1594403, at *22 (holding that a comparison of class counsel's lodestar fee to the fee requested

24   under the percentage method is an appropriate "cross-check" of the fee's reasonableness).

25

26

27   [15]  Class Counsel also litigated the *Grokster* case, for substantially the same class as this case, before the district
28   court, the Ninth Circuit and the Supreme Court.  (Ramos Decl. ¶ 2.)

1    In this case, Class Counsel spent a total of 35,678.1 hours on this case, for a total

2  lodestar of $12,804,922.90.[16]   (*See* Ramos Decl. ¶ 25; Clements Decl. ¶ 6)  Class Counsel's

3  requested $28,701,325 fee request thus represents a multiple of approximately 2.24 times the

4  lodestar.  (*See id.*)[17]   This multiplier is at the lower end of the range of multipliers typically

5  awarded by courts.  *See Vizcaino*, 290 F.3d at 1051 (affirming multiplier of 3.65 and noting that

6  the average risk multiplier ranges from one to four, although multipliers of up to 19.6 have been

7  upheld); *see also Steiner*, 2007 WL 2460326, at *3 (affirming risk multiplier of 6.85); *Van*

8  *Vranken* v. *Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (affirming

9  multiplier of 3.6 and noting that "[m]ultipliers in the 3-4 range are common in lodestar awards

10  for lengthy and complex class action litigation").   Thus, Class Counsel submits that their fee

11  request is also fair and reasonable under the lodestar analysis.

---

[16]   In order to compensate for the delay in payment of attorneys' fees, this figure is based on Class Counsel's
current billing rates.  It is well-established in this Circuit that district courts have the "discretion to compensate
plaintiff's attorneys for a delay in payment by . . . applying the attorneys' current rates to all hours billed during
the course of the litigation."  *Welch* v. *Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007); *Fischel* v.
*Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002) ("Attorneys in common fund cases must
be compensated for any delay in payment, . . . either "(1) by applying the attorneys' current rates to all hours
billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate
enhancement.") (internal quotation omitted); *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d
1291, 1305 (9th Cir. 1994) (same); *Farhat* v. *Hartford Life & Acc. Ins. Co.*, No. C 05-0797 PJH, 2006 WL
2521571, at *2 (N.D. Cal. Aug. 30, 2006) (same).

[17]   This figure includes the hours that Class Counsel estimates they will spend preparing for and attending the final
approval hearing, addressing class members' objections, and consulting with the claims administrator on
settlement administration issues.  (Ramos Decl. ¶ 23.)

---

## II.

## CLASS COUNSEL'S REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel has also requested reimbursement of expenses incurred in connection with the prosecution of this action.  In total, Class Counsel has incurred expenses in the amount of $3,298,675.[18]  (*See* Ramos Decl. ¶ 26; Pedecine Decl., Exhibit 2.)

In class action cases, "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001).  These costs may be reimbursed if they "would normally be charged to a fee paying client."  *Harris* v. *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  Therefore, it is proper to reimburse reasonable expenses even though they are greater than taxable costs.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also Bratcher* v. *Bray-Doyle Indep. Sch. Dist. No.* 42, 8 F.3d 722, 725-26 (10th Cir. 1993) (finding that expenses are reimbursable if they would normally be billed to client); *Abrams* v. *Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (holding that expenses recoverable if it is customary to bill clients for them); *Miltland Raleigh-Durham* v. *Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted)).

While a more detailed breakdown of expenses is contained in the Ramos and Pedecine Declarations, all of the expenses incurred are of the type routinely billed to paying

---

[18]   This number represents a conservative figure because, due to the $32 million cap on the attorneys' fees and expenses they may seek, Class Counsel is not requesting interest on expenses.  *See Shea* v. *Galaxie Lumber & Constr.*, No. 94 C 906, 1999 WL 138791, at *4 (N.D. Ill. Mar. 2, 1999) (awarding prejudgment interest on costs); *see also Gates* v. *Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (compensating Class Counsel for inflation, loss of the use of funds, missed investment opportunities and lost interest); *Welch*, 480 F.3d at 946 (noting that the court may "add[] a prime rate enhancement to compensate for delay in payment" ).  Should the Court award fees at a lower rate than expected, such that the total fee and expense award falls below the $32 million cap, Class Counsel requests that the court award interest on the $3,298,675 in expenses incurred in prosecuting this action.

---

clients and so are typically reimbursable from a common fund.  For example, courts routinely hold that e-discovery, reproduction, messenger, postage, travel, local transportation, meals, translations, court reporter and transcript costs, and telephone costs, as well as court costs and fees, are necessary expenses of litigation, and so are reimbursable.  *See, e.g., In re Immune Response Sec. Litig.*, No. 01CV1237 J WMC, 2007 WL 2071566, at *10 (S.D. Cal. May 31, 2007).[19]  Computerized legal research costs are also generally reimbursable because they are an "'essential tool of a modern efficient law office.'"  *Id.* (quoting *Robinson* v. *Ariyoshi*, 703 F. Supp. 1412, 1436 (D. Haw. 1989)); *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. at 1371 (approving reimbursement for Westlaw and Lexis-Nexis searches); *Brown*, 839 F. Supp. at 916 (same).  Travel expenses, which may be awarded at the discretion of the court, are also typically granted, particularly where, as here, class counsel resides outside the jurisdiction and the matter involved international parties.  *See In re Immune Response Sec. Litig.*, 2007 WL 2071566, at *10.[20]  Finally, expert expenses may also be awarded if the expert testimony is

---

[19] *See also In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *17 (S.D.N.Y. Nov. 7, 2007) (slip op.) (noting that lead counsel's costs for "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, travel" were "customary and necessary expenses" for which lead counsel was entitled to reimbursement); *In re Omnivision*, 2007 WL 4293467, at *11 (noting that lead counsel's costs for "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants and the costs of travel for various attorneys and their staff" are costs for which attorneys "routinely bill clients" and that "it is therefore appropriate for counsel . . . to recover these costs from the Settlement Fund"); *In re Merrill Lynch & Co., Inc. Res. Rpts. Sec. Litig.*, No. 02 MDL 1484 (JFK), 02 Civ. 3176 (JFK), 02 Civ. 7854 (JFK), 02 Civ. 10021 (JFK), 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (slip op.) (noting that lead counsel's costs for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services" were "reasonable litigation expenses" reimbursable from the settlement fund); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1370-72 (N.D. Cal. 1996) (noting that lead counsel's costs for computerized legal research, depositions and filing fees are recoverable); *Brown* v. *Pro Football*, 839 F. Supp. 905, 916 (D.D.C. 1993) (noting that lead counsels' costs for "telephone, telecopier, air and local couriers, postage, photocopying . . . are routinely billed to fee-paying clients, and thus are all compensable as part of a reasonable attorney's fee").

[20] *See also Thornberry* v. *Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952, 103 S. Ct. 2421, 77 L. Ed. 2d 1311 (1983) (noting that travel expenses that are reasonable in amount, are properly charged against the fund created); *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994) (same).

---

"crucial or indispensable" to the litigation.  *See In re Media Vision Sec. Litig.*, 913 F. Supp. at 1366.  In this case, given the inherent complexity of establishing which of the Class members' works were downloaded by Napster users, the experts retained by Class Counsel were crucial and indispensable to the litigation, and in particular to assessing the level of damages owed to the Class.  (Ramos Decl. ¶ 19.)  It is doubtful that Class Counsel would have achieved as favorable a result for the Class during settlement negotiations had these experts not been retained.  (*Id.*)

Thus, in light of the work performed, the legal and factual issues presented, the vigorous defense, and the significant results obtained, the expenses requested by Class Counsel are reasonable.  Further, the categories of expenses for which Class Counsel seeks reimbursement are the types of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund.

## III.

## THE REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO SERVICE PAYMENTS FOR THEIR REPRESENTATION OF THE CLASS IN THIS ACTION

The Notice in this case informed the Class that, in addition to a capped award of $32 million for litigation fees and expenses, an application would be made for service payments to the Representative Plaintiffs for an amount totaling $150,000.  These service payments will compensate the Representative Plaintiffs for time and resources they expended in representing the Class.  *See Staton* v. *Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that service payments are appropriate to compensate name plaintiffs for their time and effort expended in pursuing the litigation); *Singer* v. *Am. Airlines Fed. Credit Union*, No. C 05-04961 JCS, 2006 WL 3093759, at *4 (N.D. Cal. Oct. 30, 2006) (approving service payments to named class-action plaintiffs).

As set forth in their declarations attached to this motion, the Representative Plaintiffs committed significant time and resources to aid in the prosecution and resolution of the action against Bertelsmann.  *See* Declarations of Ralph Peer II, John Eastman, Mike Stoller, and Randy Poe.  These individuals, as well as their employees, spent significant time assisting with

the investigation into the claims in this action, reviewing pleadings, monitoring the litigation and assisting Class Counsel with strategic decisions regarding the litigation. *Id.* In particular, the Representative Plaintiffs were instrumental during the discovery phase of the proceedings, and committed substantial resources to collecting, reviewing and producing documents and data in the case. *Id.*

Thus, Class Counsel respectfully requests that the Court approve service payments in the following amounts: $25,000 to Jerry Leiber, individually and doing business as Jerry Leiber Music; $25,000 to Mike Stoller, individually and doing business as Mike Stoller Music; $50,000 to Frank Music Corporation; and $50,000 to Peer International Corporation.

### Conclusion

For the reasons set forth above, Class Counsel respectfully requests that the Court: (1) award Class Counsel attorneys' fees in the amount of $28,701,325 from the Settlement Fund; (2) award Class Counsel reimbursement of litigation expenses in the amount of $3,298,675 from the Settlement Fund; and (3) in addition to the $32 million total litigation fees and expenses, award service payments totaling $150,000 to the Representative Plaintiffs from the Settlement Fund to reimburse them for their time and expenses incurred in the prosecution of this action.

DATED: January 7, 2008          PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By:   /s/ Carey R. Ramos
CAREY R. RAMOS

*Attorneys for Plaintiffs Leiber, et al.*