# Exhibit A

FOR SETTLEMENT PURPOSES ONLY                    **Execution Copy**

### STIPULATION AND AGREEMENT OF SETTLEMENT

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the "Settlement Agreement" or "Agreement") is made and entered into as of August 30, 2007 (the "Signature Date") and is submitted to the Court for its approval.

This Settlement Agreement is made by and between Jerry Leiber, individually and d/b/a Jerry Leiber Music, Mike Stoller, individually and d/b/a Mike Stoller Music, Frank Music Corporation, and Peer International Corporation (collectively, the "Representative Plaintiffs"); and Bertelsmann AG, a German corporation, Bertelsmann, Inc., a Delaware corporation, and BMG Columbia House, Inc., a Delaware corporation and successor in interest of BeMusic, Inc. (collectively with Bertelsmann AG and Bertelsmann, Inc., the "Bertelsmann Parties"), by and through their respective authorized signatories.

The Representative Plaintiffs, on behalf of themselves and the Class Members (as defined below in Section 1.4), on the one hand, and the Bertelsmann Parties, on the other hand, hereafter are sometimes referred to collectively as the "Parties" and each individually as a "Party."

### RECITALS

WHEREAS, the Representative Plaintiffs commenced a lawsuit on behalf of a class against the Bertelsmann Parties, captioned *Leiber et al.* v. *Bertelsmann AG et al.*, No. 03 CV 1093 (TPG) (S.D.N.Y., filed February 19, 2003, amended April 25, 2003) (the "Lawsuit");

WHEREAS, on March 24, 2004, pursuant to an order by the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407, the Lawsuit was transferred to the Northern District of California for coordinated or consolidated pretrial hearings under the caption In re Napster, Inc. Copyright Litigation, No. C-MDL-00-1369 MHP.

WHEREAS, on May 31, 2005 the district court certified this lawsuit to proceed as a class action for damages pursuant to Rule 23 of the Federal Rules of Civil Procedure;

WHEREAS, on January 23, 2006, the Representative Plaintiffs filed an initial proposed Notice of Class Action;

WHEREAS, the Parties thereafter met and conferred and reached agreement regarding the form of the class notice, and filed a Consent Administrative Motion for Approval of the Notice of Class Action on March 30, 2006, which the Court approved by order dated July 28, 2006;

WHEREAS, the Parties then revised the Notice to reflect the current status of the proceedings and submitted a proposed Revised Notice of Class Action, which superseded the earlier Notice of Class Action, to the Court on October 17, 2006;

WHEREAS, at the time the Parties reached the Agreement embodied herein, the Court had not yet approved the Revised Notice of Class Action;

WHEREAS, arm's-length settlement negotiations have taken place between the Representative Plaintiffs and Class Counsel, and the Bertelsmann Parties including, but not limited to: (i) a meeting on November 13, 2006 in New York City among (a) members of the Board of the National Music Publisher's Association ("NMPA"), the president of the NMPA and Class Counsel, collectively acting on behalf of the Class, and (b) the Bertelsmann Parties represented by senior executives, a Board member and inside and outside counsel of Bertelsmann AG; (ii) a meeting on April 27, 2007 between outside counsel for the Bertelsmann Entities and Class Counsel to attempt to narrow the issues in dispute; and (iii) a meeting on May 10, 2007 in New York City among (a) the President of the NMPA and Class Counsel and (b) a Board member and inside and outside counsel of Bertelsmann AG;

WHEREAS, subsequent to the May 10 meeting, there was a general agreement between the Parties to engage in mediation, followed (in a further pre-mediation attempt to reach a resolution) by a series of discussions between counsel for the parties and then by meetings between the President of NMPA and a Board member of Bertelsmann AG, which led to the agreed-upon economic settlement terms;

WHEREAS, after substantial discovery and investigation of the facts and after carefully considering applicable law, the Representative Plaintiffs and Class Counsel have concluded that: it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure the benefits provided for in this Settlement Agreement to the Class; the terms of this Settlement Agreement (in particular, the total Settlement Payment of $130 million) are fair, reasonable, and adequate and in the best interests of all members of the Class; and they will be able to submit to the Court a class and settlement notice plan that satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and a plan of administration and distribution that fairly and adequately addresses the question of settlement administration and allocation of monetary payments among members of the Class;

WHEREAS, without any admission of liability with regard to the claims brought in the Lawsuit, the Bertelsmann Parties desire to settle all present, potential and future claims as to the relationship with and funding of Napster, Inc. by the members of the Class, including all claims brought or which could be brought in the Lawsuit, and enter into this Settlement Agreement providing for a full, final, and complete settlement, and for releases and covenants not to sue on the terms and conditions set forth herein;

2

NOW, THEREFORE, in consideration of the above premises and the mutual covenants contained herein and other good and valuable consideration, the Parties hereby agree as follows:

1.      **DEFINITIONS.**  The following capitalized terms used in this Settlement Agreement shall have the meanings set forth below:

1.1      "Affiliate" means, with respect to a Person as of any date, any other Person (excluding individuals) throughout the world that, directly or indirectly through one or more intermediaries, now or hereafter controls, is controlled by, or is under common control with such Person as of such date.  As used herein (including, for avoidance of doubt, in the definition of the term "Composer"), the term "control" (including the terms "controlling," "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities or other interests, by contract or otherwise.

1.2      "Bertelsmann Entities" means the Bertelsmann Parties and their Affiliates anywhere in the world.

1.3      "Class Counsel" means Paul, Weiss, Rifkind, Wharton & Garrison LLP and Krieg, Keller, Sloan, Reilley & Roman LLP.

1.4      "Class" or "Class Members" refers to the settlement class consisting of all music publisher-principals of the Harry Fox Agency, Inc. ("HFA") during any part of the time period from October 30, 2000 through the date of the Court's preliminary approval of this class settlement (other than Persons that have, prior to the Signature Date, released their Potential Claims against the Bertelsmann Entities and their Related Parties).

1.5      "Claims" means any and all of the following arising under the laws of the United States or any foreign jurisdiction:  claims, demands, causes of action, Liabilities, lawsuits, arbitrations, proceedings, third-party interventions, or any other form of claim, whether or not fixed, contingent or absolute, matured or unmatured, direct or indirect, liquidated or unliquidated, accrued or unaccrued, known or unknown, whether or not required to be reflected in financial statements or disclosed in the notes thereto.

1.6      "Claims Administrator" means a Person retained by Class Counsel with the approval of the Court to perform the duties assigned to the Claims Administrator under this Agreement.

1.7      "Class and Settlement Notice Plan" has the meaning specified in Section 8.1 below.

1.8      "Complaint" means the amended complaint in the Lawsuit.

1.9      "Composer" means any composer, songwriter, publishing company owned or controlled by a composer, or any other Person acting on behalf of a composer or which

3

has any right, title or interest in any work of a composer, or any other Person who has entered into a Publishing Agreement with a Releasing Party.

1.10   "Confidential Information" means all confidential or proprietary information shared hereunder or in connection herewith either prior to, on or after the Signature Date, and any and all prior or subsequent drafts, representations, negotiations, conversations, correspondence, understandings, analyses, proposals, term sheets, and letters, whether oral or written, of any kind or nature, with respect to the subject matter hereof.

1.11   "Contract" means any contract, agreement, license, commitment, guarantee, undertaking, memorandum of understanding, memorandum of agreement and any other understanding or arrangement, whether written or oral.

1.12   "Copyrighted Works" means any and all copyrighted works (or portions thereof) that are, or were owned, controlled or administered by the Releasing Parties on or after October 30, 2000.

1.13   "Court" means the United States District Court for the Northern District of California, the Honorable Marilyn Hall Patel, presiding.

1.14   "Direct Licensing Income" means Mechanical Royalties received in the calendar years 2001 and 2002 by Class Members (excluding HFA Income).

1.15   "Escrow Agreement" has the meaning specified in Section 2.2 below.

1.16   "Fee and Expense Award" has the meaning specified in Section 7.1 below.

1.17   "Final Judgment and Order of Dismissal" has the meaning specified in Section 4.1 below.

1.18   "Final Settlement Approval" has the meaning specified in Section 5.1 below.

1.19   "Gross Settlement Fund" has the meaning specified in Section 2.1 below.

1.20   "HFA Income" means regular Mechanical Royalties received in the ordinary course of business by HFA and distributed to a Class Member by HFA in the calendar years 2001 and 2002, according to HFA's records.

1.21   "HFA Market Share" means a Class Member's HFA Income divided by the HFA Income of all Class Members, and expressed as a percentage.

1.22   "Indemnifying Party" has the meaning specified in Section 12.5(c) below.

1.23   "Indemnified Party" has the meaning specified in Section 12.5(c) below.

1.24   "Independent Auditor" has the meaning specified in Section 9.2(b) below.

4

1.25    "Lawsuit" has the meaning specified in the Recitals above.

1.26    "Liabilities" means debts, liabilities, losses, damages, attorneys' fees, court costs, obligations, expenses, or any other form of cost or compensation, whether or not fixed, contingent or absolute, matured or unmatured, direct or indirect, liquidated or unliquidated, accrued or unaccrued, known or unknown, whether or not required to be reflected in financial statements or disclosed in the notes thereto.

1.27    "Mechanical Royalties" means royalties paid for the right to use copyrighted works in the United States (including without limitation any of its individual states, possessions or territories) to make and distribute phonorecords (as defined in 17 U.S.C. § 101) to the public for private use, including by means of digital phonorecord deliveries (as defined in 17 U.S.C. § 115(d)).

1.28    "Napster" means the former Napster, Inc. (i.e., the entity that was sued for copyright infringement in A&M Records, Inc. v. Napster, Inc., Nos. C 99-5183 MHP, C 00-0074 MHP) and its subsidiaries, affiliated companies and divisions and assignees, provided, however, that, for the avoidance of doubt, the current Napster, Inc. (f/k/a Roxio, Inc.) and its Affiliates are excluded from this definition.

1.29    "Net Settlement Fund" has the meaning specified in Section 2.5 below.

1.30    "Notice" has the meaning specified in Section 3.2(d) below.

1.31    "Party" or "Parties" has the meaning specified in the third paragraph of this Agreement.

1.32    "Person" means any individual or corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, governmental authority or other entity of any kind.

1.33    "Plan of Administration and Distribution" has the meaning specified in Section 9.1 below.

1.34    "Potential Claims" means any and all Claims against any Person that is (or was during the period of Napster's operation) a Bertelsmann Entity or any Related Party thereto from, relating to, based upon, or in connection with the relationship or interaction with and/or funding or financing of Napster (including by way of a loan) by any such Bertelsmann Entity or Related Party, including (i) any and all Claims brought or which could be brought in the Lawsuit and (ii) any and all Claims alleging that any such Bertelsmann Entity or Related Party is liable under one or more theories of copyright infringement or other theory of liability by virtue of such relationship with or funding of Napster.

1.35    "Preliminary Approval" and "Preliminary Approval Order" means the entry by the Court of an order preliminarily approving this settlement in all material respects. For avoidance of doubt, each of the items listed in Section 3.2 shall be considered material.

1.36   "Publishing Agreement" means a songwriter, publishing, co-publishing, sub-publishing, or administration Contract, any other Contract whereby a Releasing Party acquires an ownership interest in musical compositions and/or to administer or otherwise exploit musical compositions in any territory, and all other Contracts whereby a Releasing Party has currently been or hereafter may be granted the right to bring, assert, pursue, maintain, finance, fund, assist, join in, settle, release or otherwise support a Potential Claim.

1.37   "Related Parties" means, with respect to any Person, present, former and future, as applicable, predecessors, successors, assigns, agents, insurers, representatives, directors, officers and employees (in their capacities as such) of such Person.

1.38   "Releasing Parties" means the Representative Plaintiffs, Class Members that do not opt out of the Class, and, to the maximum extent the Releasing Parties have the legal or contractual right to release such entities' Potential Claims, their Affiliates and Subsidiaries.

1.39   "Representative Plaintiffs" has the meaning specified in the second paragraph of this Agreement.

1.40   "Settlement Agreement" or "Agreement" has the meaning specified in the first paragraph above.

1.41   "Settlement Distribution" has the meaning specified in Section 9.2(d) below.

1.42   "Settlement Notice and Administration Costs" has the meaning specified in Section 8.3 below.

1.43   "Settlement Payment" has the meaning specified in Section 2.1 below.

1.44   "Subsidiaries" means, with respect to a Party at any date, any Person (excluding individuals): (a) of which securities or other ownership interests representing more than fifty percent (50%) of the equity or more than fifty percent (50%) of the ordinary voting power or, in the case of a partnership, more than fifty percent (50%) of the general partnership interests or more than fifty percent (50%) of the profits or losses of which are, as of such date, owned, controlled or held by such Party or one or more subsidiaries thereof or (b) the accounts of which would be consolidated with those of such Party in such Party's consolidated financial statements as of such date.

1.45   "Tax Payments" has the meaning specified in Section 2.3.

1.46   "Top-Level Publisher" means any music publisher-principal of the HFA that controls and administers at least one musical composition copyright on behalf of songwriters and other music publishers (such songwriters and other music publishers, "Administered Publishers"). Top-Level Publishers typically have the right to issue and administer licenses, collect royalties, manage copyrights in musical compositions and bring and compromise copyright infringement claims on behalf of their Administered

6

Publishers. HFA maintains a contact list of the several thousand Top-Level Publishers affiliated with HFA and a database of the Administered Publishers represented by each Top-Level publisher.

1.47    "Total Percent Market Share" means the sum of a Class Member's (a) HFA Income and (b) Direct Licensing Income (if any), divided by (c) Total Revenues, and expressed as a percentage.

1.48    "Total Revenues" shall be the sum of (a) the HFA Income of all Class Members that do not opt out of the Class and (b) the total Direct Licensing Income of all Class Members that do not opt out of the Class submitted pursuant to Section 9.2(a) below.

## 2.    THE SETTLEMENT PAYMENT AND THE SETTLEMENT FUND.

2.1    Within five (5) business days after the Signature Date, Bertelsmann, Inc. shall cause the sum of $130 million (the "Settlement Payment"), of which an amount not to exceed $32 million shall be applied to litigation expenses, including attorneys' fees, to be paid, by wire transfer, into a segregated escrow account (the "Gross Settlement Fund") to be established for receipt of the Bertelsmann Parties' payment. The making of the Settlement Payment shall satisfy all of the Bertelsmann Parties' and their Related Parties' payment and financial obligations under this Settlement Agreement and the settlement contemplated hereby, and none of them shall thereafter have any payment or financial obligation relating to or in connection with this Settlement Agreement or the settlement contemplated hereby. It is understood and intended that the monies contributed by the Bertelsmann Parties to the payment under the first sentence of this Section 2.1 include payment in full of any statutory damages that were or could have been claimed from the Bertelsmann Parties under the Copyright Act, 17 U.S.C. § 101 *et seq.* None of the monies contributed by any of the Bertelsmann Parties to the payment under the first sentence of this Section 2.1 constitutes, in whole or in part, payment of punitive damages or any other amount in excess of actual injury claimed.  All payments hereunder shall be made in U.S. dollars.

2.2    The Gross Settlement Fund and the Net Settlement Fund (defined below) shall be established and administered under the Court's continuing supervision and control pursuant to an escrow agreement (the "Escrow Agreement") in the form of Exhibit A attached hereto, and shall be invested solely in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies or in money market funds invested solely in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies. An escrow agent of this Escrow Account will be appointed as mutually agreed upon by the Parties. Such escrow agent (and any successors) shall be unrelated to, and independent of, the Bertelsmann Parties within the meaning of Treasury Regulations §§ 1.468B-1(d) and 1.468B-3(c)(2)(i)(A), and any analogous local, state and/or foreign statute, law, rule, or regulation. The Escrow Agreement provides the terms and conditions governing the Gross Settlement Fund. The Parties agree that the Gross Settlement Fund is intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation §

7

1.468B-1 and any analogous local, state and/or foreign statute, law, rule, or regulation. The Parties further agree that, with respect to such treatment, a "relation-back election" shall be made, as described in Treasury Regulation § 1.468B-1(j) and any analogous local, state and/or foreign statute, law, rule or regulation, to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, according to the terms and conditions of the Escrow Agreement, and the Parties shall take such actions as may be necessary or appropriate in connection therewith.

2.3     Subject to Section 2.6 below, the Gross Settlement Fund shall be available for the payment of taxes on earnings from or otherwise in respect of the Gross Settlement Fund and any costs and expenses related to the calculation or payment of such taxes (collectively, the "Tax Payments"). The Gross Settlement Fund shall also be available for the purposes set forth in Section 8.3 below after Preliminary Approval, and for any of the purposes set forth in Sections 7 or 9 below after Final Settlement Approval, provided such payments are expressly approved by the Court in advance.

2.4     The Gross Settlement Fund shall be used to pay: (1) Settlement Notice and Administration Costs, as specified in Section 8.3 below; (2) the Fee and Expense Award, as specified in Section 7 below; (3) Tax Payments (if any); (4) any additional costs and expenses incurred by the Representative Plaintiffs or Class Counsel for the benefit of the Class and approved by the Court; and/or (5) service payments to the Representative Plaintiffs in amounts to be proposed in the motion for preliminary approval of class settlement, not to exceed a total of $150,000.

2.5     After payment of the amounts described in Section 2.4 above, and any amounts described in Section 10.2 below, the balance of the funds in the Gross Settlement Fund shall be the "Net Settlement Fund," which shall be distributed according to the terms and conditions set forth in the Plan of Administration and Distribution (described in Section 9 below). The Releasing Parties shall look solely to the Gross Settlement Fund for satisfaction of any and all Claims in the Lawsuit or any other Potential Claims, and the payments from the Net Settlement Fund and Court-approved payments from the Gross Settlement Fund to the Representative Plaintiffs will be the only compensation to the Releasing Parties under this Settlement Agreement. The full extent of Bertelsmann Entities' payment obligations to the Releasing Parties, their Related Parties and Composers hereunder shall be fully discharged upon Final Settlement Approval, and no additional payment will be due or required to be made to the Releasing Parties, their Related Parties and Composers or any other party by any Bertelsmann Entity in connection with this Settlement Agreement.

2.6     No distribution or payment from the Gross Settlement Fund or the Net Settlement Fund shall be made without the express prior approval of the Court for any purpose other than Tax Payments, as defined in Section 2.3.

2.7     No later than five (5) business days before payments from the Net Settlement Fund are to be distributed to Class Members pursuant to the Plan of Administration and Distribution, Class Counsel and the Claims Administrator shall certify in writing to the Bertelsmann Parties the total amount of actual Settlement Notice

and Administration Costs that has been incurred, and a good faith estimate of future Settlement Notice and Administration Costs. Except as set forth in Sections 2.8 and 10 below, the Bertelsmann Parties are not entitled to any remittance or refund of the Settlement Payment.

2.8     If this Settlement Agreement terminates or Final Settlement Approval is denied or does not occur, then, within fourteen (14) calendar days after the Settlement Agreement has terminated or the possibility of Final Settlement Approval has expired (including, without limitation, the expiration of all requests for judicial review from any decision denying approval), the amount remaining in the Gross Settlement Fund, including the principal and accrued interest (less all funds necessary to make Tax Payments, and any other previously incurred expenses expressly approved by the Court or made pursuant to Section 2.6 above) shall be paid, by wire transfer, to an account unanimously designated by the Bertelsmann Parties.

2.9     The Bertelsmann Entities shall have no liability whatsoever with regard to the maintenance, preservation, investment, use, allocation, adjustment, distribution, and/or disbursement of any amount in the Gross Settlement Fund or the Net Settlement Fund.

3.     **MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT.**

3.1     On August 31, 2007, Class Counsel shall submit to the Court a motion for Preliminary Approval of this Settlement Agreement, and the settlement contemplated hereby. No later than ten (10) business days thereafter, the Bertelsmann Parties shall submit any additional filings or materials pertaining to the motion for Preliminary Approval.

3.2     A proposed order granting Preliminary Approval of this Settlement Agreement and the settlement contemplated hereby ("Preliminary Approval Order"), in a form consistent with this Settlement Agreement to be mutually agreed upon by the Parties, shall be submitted by Class Counsel to the Court for its approval in connection with the motion described in Section 3.1 above. Among other things, the Preliminary Approval Order shall:

(a)     determine that Class Counsel have and had authority to execute this Settlement Agreement on behalf of the Representative Plaintiffs and authorize Class Counsel to take approved steps to proceed with this Settlement Agreement, and the settlement contemplated thereby, on behalf of the Representative Plaintiffs;

(b)     preliminarily approve this Settlement Agreement and the settlement contemplated hereby as being a fair, reasonable and adequate settlement as to all members of the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

(c)     establish the Gross Settlement Fund and subject the Gross Settlement Fund to the continuing jurisdiction of the Court;

9

(d)  direct that the "Notice of Pendency and Settlement of Class Action" (the "Notice") be disseminated as set forth in the Class and Settlement Notice Plan, and determine that the nature and scope of the Class and Settlement Notice Plan and the content of the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice in ways that are not material or ways that are appropriate to update it for purposes of accuracy;

(e)  preliminarily determine that the Plan of Administration and Distribution as contemplated by the terms and conditions in this Settlement Agreement fairly and adequately addresses the questions of settlement administration and claims submission, and allocation of monetary payments among all Class Members;

(f)  stay further proceedings in the Lawsuit (including, but not limited to, any existing discovery obligations) pending Final Settlement Approval or termination of this Settlement Agreement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate Final Settlement Approval;

(g)  stay and enjoin all Releasing Parties, any Person actually or purportedly acting on behalf of any Releasing Parties and, to the maximum extent the Releasing Parties have the legal or contractual right to bind such entities with respect to the following actions, their Related Parties and Composers, from: (i) bringing, instituting, asserting, continuing, pursuing, maintaining, joining in, prosecuting or enforcing any Potential Claim, directly or indirectly, in any judicial, administrative, arbitral, or other forum, against any of the Bertelsmann Entities or any Related Parties thereto; or (ii) directly or indirectly (including through their counsel) financing, funding, encouraging, supporting, soliciting, assisting, or otherwise supporting any Potential Claim, whether such Potential Claim is brought by a Releasing Party, a Related Party, a Composer or any third Person (including another Releasing Party); in each case pending Final Settlement Approval or termination of this Settlement Agreement, whichever occurs earlier. For avoidance of doubt, nothing herein shall prevent any Releasing Party, or any Person actually or purportedly acting on behalf of any Releasing Parties, from taking any actions to stay and/or dismiss any Potential Claims. The Parties further agree that no part of this Agreement shall be construed as a representation or warranty that the Releasing Parties have any such legal or contractual authority to bind any Related Party or Composer; and

(h)  reserve to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of the Preliminary Approval Order. In the event that any of the provisions of the Preliminary Approval Order is asserted by any Bertelsmann Entity or Related Party thereto as a defense in whole or in part to any Claim or otherwise asserted in any other suit, action or other proceeding brought by a Releasing Party, any Person actually or purportedly acting on behalf of any Releasing Party or, to the maximum extent the Releasing Parties have the legal or contractual right to release such entities' Claims, their Related Parties and Composers, that Bertelsmann Entity or Related Party thereto shall be entitled to an immediate stay and injunction of that suit, action or other proceeding until

10

the Court has entered an order or judgment finally determining any issues relating to such defense or assertion and no further judicial review of such order or judgment is possible.

3.3    The Parties agree to recommend and use their best efforts to obtain approval of this Settlement Agreement and the settlement contemplated hereby, including, without limitation, the entry of the Preliminary Approval Order, and shall do nothing inconsistent therewith.

## 4.    MOTION FOR ENTRY OF FINAL JUDGMENT.

4.1    If the Court enters a Preliminary Approval Order and this Settlement Agreement has not otherwise terminated then, after notice to the Class (as described below in Section 8.1), and after the expiration of the time for members of the Class to timely and properly opt out from the Class, Class Counsel shall submit to the Court a motion for entry of an order and final judgment. A proposed order and final judgment ("Final Judgment and Order of Dismissal"), in a form consistent with this Settlement Agreement to be mutually agreed upon by the Parties, shall be submitted by Class Counsel to the Court for its approval in connection with the motion described in this Section, at the time set forth by the Court in the Preliminary Approval Order.  Among other things, the Final Judgment and Order of Dismissal shall:

(a)    determine that the Plan of Administration and Distribution as contemplated by the terms and conditions in this Settlement Agreement fairly and adequately addresses the questions of settlement administration and claims submission, and allocation of monetary payments among all Class Members;

(b)    determine that the Notice was disseminated to the members of the Class in accordance with the terms and conditions set forth in the Class and Settlement Notice Plan, in compliance with the Court's Preliminary Approval Order, and in full satisfaction of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process;

(c)    finally approve this Settlement Agreement (including, without limitation, the establishment and funding of the Gross Settlement Fund) and the settlement contemplated hereby as being a fair, reasonable and adequate settlement as to all the Class Members who have not opted out within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation pursuant to its terms and conditions;

(d)    list all Persons who or which have timely and properly opted opt of the Class as permitted by the Court;

(e)    dismiss the Complaint with prejudice, and (except as provided for in this Settlement Agreement) without costs, in favor of all Bertelsmann Parties and against the Releasing Parties;

(f)    provide that each of the Releasing Parties unconditionally, fully and finally releases and forever discharges each of the Bertelsmann Entities and the

11

Related Parties thereto from the Potential Claims, and expressly terminate any rights of Releasing Parties to the protections afforded under Section 1542 of the California Civil Code and/or any other similar, comparable, or equivalent laws;

(g)     permanently bar and enjoin all Releasing Parties or any Person actually or purportedly acting on behalf of any Releasing Parties and, to the maximum extent the Releasing Parties have the legal or contractual right to bind such entities with respect to the following actions, their Related Parties or Composers, from: (i) bringing, instituting, asserting, continuing, pursuing, maintaining, joining in, prosecuting or enforcing any Potential Claim, directly or indirectly, in any judicial, administrative, arbitral, or other forum, against any of the Bertelsmann Entities or Related Parties thereto; (ii) directly or indirectly (including through their counsel) financing, funding, encouraging, supporting, soliciting, assisting, or otherwise supporting any Potential Claim, whether such Potential Claim is brought by a Releasing Party, a Related Party thereto, a Composer or any third Person (including another Releasing Party);

(h)     provide that each of the Bertelsmann Entities, on behalf of themselves and, to the maximum extent they have the legal or contractual authority to bind hereunder, Related Parties, fully and finally discharges and releases each of the Representative Plaintiffs, Class Counsel, Releasing Parties, HFA and NMPA (including their respective directors, officers and employees), and experts from the claims referenced in Section 11.3 below; and

(i)     reserve to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of this Settlement Agreement and the Final Judgment and Order of Dismissal, including, but not limited to, any disputes relating to or arising out of the matters subject to Sections 11.1-11.3 below, or any payment (or non-payment) from the Net Settlement Fund. In the event that any of the provisions of this Settlement Agreement or the Final Judgment and Order of Dismissal is asserted by any Bertelsmann Entity or Related Party thereto as a defense in whole or in part to any Claim or otherwise asserted in any other suit, action or other proceeding brought by a Releasing Party or any Person actually or purportedly acting on behalf of any Releasing Party, that Bertelsmann Entity or Related Party shall be entitled to an immediate stay and injunction of that suit, action or other proceeding until the Court has entered an order or judgment finally determining any issues relating to such defense or assertion and no further judicial review of such order or judgment is possible.

4.2     The Parties agree to recommend and use their best efforts to obtain entry of the Final Judgment and Order of Dismissal, and to do nothing inconsistent therewith.

5.     **FINAL SETTLEMENT APPROVAL.**

5.1     This Settlement Agreement shall become final upon the occurrence of all of the following events without the prior termination of this Settlement Agreement ("Final Settlement Approval"):

12

     (a)    final approval of this Settlement Agreement, and the settlement contemplated hereby, in all respects by the Court;

     (b)    entry of the Final Judgment and Order of Dismissal; and

     (c)    expiration of the time for further judicial review, or the time to seek permission for further judicial review, of the Court's approval of this Settlement Agreement and the settlement contemplated hereby, and the Court's entry of the Final Judgment and Order of Dismissal, without the filing of a request for further judicial review or an effort to seek permission for further judicial review, or, if such further judicial review or effort to seek permission for such further judicial review is sought, (A) such further judicial review or effort to seek permission for such further judicial review has been dismissed and the time to seek any further judicial review has expired, or (B) approval of this Settlement Agreement and the settlement contemplated hereby, and the Final Judgment and Order of Dismissal, have been affirmed in their entirety by the court of last resort from which further judicial review has been sought and such affirmance has become no longer subject to the possibility of further judicial review. For avoidance of doubt, Final Settlement Approval may occur notwithstanding the actual or potential filing of any request for further judicial review that concerns only: an award of attorneys' fees and expenses by the Court; any request by Class Counsel for an award by the Court to the Representative Plaintiffs; and/or the issue of the allocation of the Net Settlement Fund among Class Members.

     5.2    The provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining any of the times stated in Section 5.1(c) above.

     5.3    For avoidance of doubt, no Party shall have any right to terminate this Settlement Agreement after Final Settlement Approval and this Settlement Agreement shall thereafter remain in effect in perpetuity.

## 6.  BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT.

     The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to obtain approval of this Settlement Agreement and the settlement contemplated hereby, and shall do nothing inconsistent therewith.

## 7.  ATTORNEYS' FEES AND EXPENSES.

     7.1    At the time set by the Court in the Preliminary Approval Order, Class Counsel may apply for approval by the Court of an award under the common fund doctrine of attorneys' fees, expenses and costs (the "Fee and Expense Award"). Any request by Class Counsel for an award by the Court to the Representative Plaintiffs shall also be made by that time. Class Counsel intends to apply for a Fee and Expense Award, which will include a request for fees and expenses combined not to exceed $32 million.

The Bertelsmann Parties intend to take no position regarding such Fee and Expense Award application.

7.2    The issues of any Fee and Expense Award and/or any award to the Representative Plaintiffs, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of this Settlement Agreement and the settlement contemplated hereby. Any order relating solely to such issues, or any request for further judicial review from any orders relating solely thereto or reversal or modification thereof, shall not operate to terminate the Settlement Agreement or affect or delay Final Settlement Approval.

7.3    If Final Settlement Approval has occurred, and a Fee and Expense Award has been approved by the Court but remains the subject of pending or potential appeals or further judicial review, Class Counsel may at its discretion seek authority from the Court to pay all or part of such approved Fee and Expense Award from the Gross Settlement Fund notwithstanding such pending or potential appeals or further judicial review regarding the Fee and Expense Award. The Bertelsmann Parties intend to support any such request.

8.    **CLASS AND SETTLEMENT NOTICE PLAN.**

8.1    The Notice, in a form consistent with this Settlement Agreement to be mutually agreed upon by the Parties, shall be disseminated according to the class and settlement notice plan as outlined in this Section ("Class and Settlement Notice Plan"). The Claims Administrator shall send the Notice by first-class mail, postage prepaid, to the Top-Level Publishers at the address on record with HFA within thirty (30) days after entry of the Preliminary Approval Order. The Notice will also be prominently posted on the Internet websites maintained by HFA (http://www.harryfox.com) and the NMPA (http://www.nmpa.org).

8.2    In addition to the Notice, on August 31, 2007, the parties will issue the Joint Press Release in the form attached hereto as Exhibit B.

8.3    All costs, fees, or expenses associated with the Class and Settlement Notice Plan and the Plan of Administration and Distribution ("Settlement Notice and Administration Costs") shall be paid exclusively out of the Gross Settlement Fund (and are not costs, fees or expenses of the Bertelsmann Parties), and the Bertelsmann Parties shall have no responsibility whatever for any such costs, fees, or expenses. The Settlement Notice and Administration Costs shall be subject to Court approval, and shall include all of the costs, fees, and expenses associated with: the preparation, handling, mailing, printing, publication and any other aspects of the dissemination of the Notice according to the terms and conditions of the Class and Settlement Notice Plan; fees and expenses as contemplated by the Escrow Agreement; and all aspects of claims administration, including, without limitation, the costs, fees, and expenses incurred and charged by the Claims Administrator and/or the Independent Auditor in connection with this settlement according to the terms and conditions of the Plan of Administration and Distribution.

14

9.    **PLAN OF ADMINISTRATION AND DISTRIBUTION.**

9.1    The Net Settlement Fund shall be administered and distributed according to the plan of administration and distribution as outlined in this Section (the "Plan of Administration and Distribution"), which in the opinion of Class Counsel fairly and adequately addresses the questions of settlement administration and distribution of monetary payments among the Class Members.

9.2    The Claims Administrator will allocate the Net Settlement Fund pursuant to the following Plan of Administration and Distribution:

(a)    HFA will submit each Class Members' HFA Income to the Claims Administrator;

(b)    Each Class Member may (but is not required to) supplement its HFA Income with evidence of Direct Licensing Income.  Each Class Member desiring to supplement its HFA Income must submit: (i) a sworn declaration (made in compliance with 28 U.S.C. § 1746) stating the total amount of Direct Licensing Income received by such Class Member; and (ii) evidence of Direct Licensing Income, including, but not limited to, certified financial statements showing Mechanical Royalties received in the calendar years 2001 and 2002, royalty statements or other reliable evidence of Mechanical Royalties received in the calendar years 2001 and 2002. The declaration and supporting evidence, which may be redacted by Class Members to exclude material unrelated to Direct Licensing Income and shall be treated as "Confidential" under the Court's existing order, should be mailed to the Claims Administrator within twenty (20) business days after the Court-ordered deadline for timely and properly opting out from the Class. The Claims Administrator will then submit the declaration and supporting evidence on a confidential basis to a third-party auditor (who will be a Certified Public Accountant or Certified Public Accounting Firm) retained, subject to Court approval, by Class Counsel (the "Independent Auditor"). Any Class Member who makes such a submission agrees to make their supporting books and records with respect to Direct Licensing Income available for inspection by the Independent Auditor upon request and reasonable notice. The Independent Auditor will review the declaration and supporting evidence for compliance with this Section and report the results of this review on a confidential basis to the Claims Administrator;

(c)    After the Claims Administrator has received and reviewed the report made by the Independent Auditor in accordance with Section 9.2(b), the Claims Administrator shall determine the Total Revenue and calculate the Total Percent Market Share for each Class Member that has not opted out of the Class. The amount of the Total Percent Market Share allocated to each Class Member by the Claims Administrator shall be final and binding;

(d)    The Claims Administrator will then calculate an allocation from the Net Settlement Fund in proportion to that Class Member's Total Percent Market Share (the "Settlement Distribution");

15

(e)     After Final Judgment and Order of Dismissal approving disbursement of the Net Settlement Fund to Class Members according to the terms and conditions of the Plan of Administration and Distribution, the Claims Administrator shall oversee distribution of the Net Settlement Fund to Class Members. The Claims Administrator shall commence directing disbursement of the Settlement Distributions to the Class Members by U.S. first class mail and/or electronic funds transfer as soon as practicable after the Final Judgment and Order of Dismissal and the determination of the Settlement Distributions in accordance with Section 9.2(d) above.  The Claims Administrator shall make reasonable efforts to assure the completion of such disbursement within one hundred (100) days of commencing disbursement efforts under this subsection.

9.3     The Claims Administrator, under the supervision of Class Counsel, shall administer the Plan of Administration and Distribution, including, but not limited to, handling inquiries about the settlement and calculation of each Class Member's Settlement Distribution.

9.4     The issue of the allocation of the Net Settlement Fund among the Class Members is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of this Settlement Agreement and the settlement contemplated hereby. Any order relating solely to such issue, or any request for further judicial review from any order relating solely thereto or reversal or modification thereof, shall not operate to terminate the Settlement Agreement or affect or delay Final Settlement Approval.

9.5     In no event shall any of the Bertelsmann Parties, or HFA and NMPA (including their respective directors, officers and employees) have any liability or responsibility with respect to the administration or distribution of the Gross or Net Settlement Fund, or any dispute by any Class Member or putative Class Member or their Related Parties or Composers concerning the handling or resolution of his, her or its claim with respect to the Net Settlement Fund, nor shall Class Counsel, HFA and NMPA have any obligations to the Bertelsmann Parties with respect to the administration or distribution of the Gross or Net Settlement Fund. The Releasing Parties bear full and complete responsibility for any payments owing or claimed to be owing to any person, including their Composers under the Publishing Agreements on account of the amount received by the Releasing Parties pursuant to Sections 2 and 9.2 above and the calculation of such payments to their Composers, and shall make and be liable for distribution of such payments to any and all their Composers, and shall be liable for any inaccuracies in any amounts so paid to their Composers and, following Final Settlement Approval, the Releasing Parties shall indemnify the Bertelsmann Parties, Class Counsel, HFA and NMPA (including their respective directors, officers and employees), the Claims Administrator, and the Independent Auditor from and against any and all Claims (including Claims for breach of any fiduciary duty or implied covenant of good faith or fair dealing or any similar such Claims) as may arise from any such payment, distribution or inaccuracies.

16

9.6    If, notwithstanding the terms and conditions of this Settlement Agreement, the Releasing Parties receive any proceeds or other amounts apart from those called for by Sections 2.4, 7.1 or 9.2 of this Settlement Agreement arising from or relating to an adjudication or settlement of a Potential Claim, the relevant Releasing Party shall immediately remit such amount to Bertelsmann, Inc.

**10.    OPT OUTS; TERMINATION BY THE BERTELSMANN PARTIES; PRO RATA REVERSION OF SETTLEMENT PAYMENT; REPAYMENT OF SETTLEMENT PAYMENT.**

10.1    Any member of the Class shall have the right to opt out of the Class by sending a written request for exclusion from the Class to the address listed in the Notice, postmarked no later than a deadline to be set by the Court, which deadline shall be set forth in the Notice.

(a)    Exclusion requests by non-natural Persons must: (i) include that Person's full legal name (and any former names), current address and telephone number; and (ii) include the following statement from an authorized representative of that Person: "On behalf of [the non-natural Person], I request that [that Person] be excluded from the Class in the action Leiber et al. v. Bertelsmann AG et al., No. C 04-1671 MHP. I affirm under penalty of perjury that I have listed [that Person's] full name (and any former names), current address and telephone number."

(b)    Exclusion requests by natural Persons must: (i) be signed by that member of the Class; (ii) include that Person's full name, current address and telephone number; and (iii) include the following statement: "I request to be excluded from the Class in the action Leiber et al. v. Bertelsmann AG et al., No. C 04-1671 MHP. I affirm under penalty of perjury that I have listed my full name, current address and telephone number."

(c)    No request for exclusion will be valid unless all of the information described above is included. If a timely and valid request for exclusion is made by a member of the Class, then no payment shall be made with respect to such Person. Class Counsel and the Bertelsmann Parties shall use such opt-out information only for purposes of determining and/or establishing whether a Person has timely and properly opted out of the Class. All Class Members that do not opt-out shall be bound by all determinations and judgments concerning the Settlement Agreement and the settlement contemplated hereby.

10.2    Within twenty (20) business days after the Court-ordered deadline for timely and properly opting out from the Class, Class Counsel shall provide to counsel for the Bertelsmann Parties an electronic file of the names and applicable addresses, and HFA Market Share of the members of the Class who or which have timely and properly opted out of the Class as permitted by the Court, as well as the total number of such Persons and the aggregate HFA Market Share thereof. If the aggregate HFA Market Share of all Persons opting out of the Class exceeds fifteen percent (15%) then the Bertelsmann Parties, in their sole discretion, shall have the option to terminate, without liability, this Settlement Agreement, and thus prevent Final Settlement Approval, and the

17

Bertelsmann Parties following such termination shall have the right to repayment from the Gross Settlement Fund all sums remaining therein after deduction of expenses paid from the Gross Settlement Fund pursuant to Section 2.4 above. If any Persons opt out of the Class and the Bertelsmann Parties do not have the right to, or elect not to, terminate this Settlement Agreement, the amount in the Settlement Fund remaining after expenses paid from the Gross Settlement Fund pursuant to Section 2.4 above, multiplied by the aggregate HFA Market Share of all Persons opting out of the Class by the Court-ordered deadline for timely and properly opting out from the Class shall be paid from the Settlement Fund, and revert irrevocably, to the Bertelsmann Parties. In the event that the Bertelsmann Parties exercise their right to terminate this Settlement Agreement, the Parties shall be restored to their respective positions as of the date of this agreement, pursuant to Section 13.14 below.

## 11.   FORBEARANCE; RELEASES; COVENANTS NOT TO SUE OR ASSIST

11.1    Upon Final Settlement Approval, the Releasing Parties, on behalf of themselves and, to the maximum extent the Releasing Parties have the legal or contractual right to release such entities' Potential Claims, Related Parties and Composers, solely to the extent of such authority, hereby irrevocably and unconditionally agree that the statute of limitations is deemed to have expired forever on any and all of their Potential Claims against any Bertelsmann Entity or any of its Related Parties.

11.2    Upon Final Settlement Approval, the Releasing Parties, on behalf of themselves and, to the maximum extent the Releasing Parties have the legal or contractual right to release such entities' Potential Claims, Related Parties and Composers, solely to the extent of such authority, hereby fully and forever, irrevocably and unconditionally release, acquit and forever discharge all of their Potential Claims made, claimed, arising or accruing in whole or in part any time prior to or as of the date of Final Settlement Approval against any Bertelsmann Entity or any of its Related Parties.

11.3    Upon Final Settlement Approval, the Bertelsmann Entities, on behalf of themselves and, to the maximum extent they have the legal or contractual authority to bind hereunder, Related Parties, solely to the extent of such authority, hereby fully and forever, irrevocably and unconditionally:  (i) release, acquit and forever discharge all Claims made, claimed, arising or accruing any time prior to or as of the date of Final Settlement Approval against the Releasing Parties, Class Counsel, HFA and NMPA (including their respective directors, officers and employees), and experts arising from, relating to, based upon, or in connection with (a) the bringing of the Lawsuit, (b) the Claims asserted therein, and (c) any Claims that could have been asserted therein; and (ii) covenant and agree not to, directly or indirectly (including through their counsel), bring, institute, assert, continue, pursue, maintain, prosecute, enforce, support, finance, fund, encourage, solicit, assist with, or join in any such released Claim, in any judicial, administrative, arbitral, or other forum anywhere in the world, whether such Claim is brought by a Bertelsmann Entity, Related Party, or any third Person.

18

11.4    Upon Final Settlement Approval, the Bertelsmann Parties and Related Parties of the foregoing and the Releasing Parties understand the significance of and, as further consideration for this Settlement Agreement, expressly waive any right or benefit that may be available under Section 1542 of the California Civil Code or any similar laws of any other jurisdiction.  Section 1542 of the California Civil Code provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Bertelsmann Party and Releasing Party may hereafter discover facts other than, different from, or in addition to those that he, she or it knows or believes to be true with respect to the Claims released hereunder, but each Bertelsmann Party and Releasing Party hereby expressly waives and fully, finally and forever settles and releases and discharges, any known or unknown, suspected or unsuspected, contingent or noncontingent Claims within the scope of Sections 11.2 and 11.3 above, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different or additional facts. The Representative Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of this Settlement Agreement.

11.5    Nothing in this Agreement shall be deemed a grant of or constitute a license with respect to the use of any Copyrighted Work in whole or in part.

11.6    Agreement Obligations Not Relinquished or Released; Covered Parties.

(a)    Nothing in this Settlement Agreement releases any Party or its respective Affiliates from their respective obligations under this Settlement Agreement (or any Contracts between the Parties and their Affiliates) or prevents any Party or its Affiliate from enforcing the terms and conditions of this Settlement Agreement (or such other Contracts) against any other Party or its respective Affiliates.

(b)    In the event any Composer asserts any Potential Claim with regard to any Copyrighted Work which the Bertelsmann Parties reasonably believe is covered by the releases, covenants and other rights granted in this Agreement, the relevant Releasing Party (if any) shall, at the request of the Bertelsmann Parties, provide the Bertelsmann Parties a copy of any relevant Publishing Agreements in their possession, custody or control, subject to the Bertelsmann Parties' agreement to reasonable confidentiality restrictions relating thereto and/or any redactions of irrelevant material.

11.7    The Bertelsmann Parties and the Releasing Parties agree not to, and agree to cause their respective Affiliates and, to the maximum extent the Releasing Parties have the legal or contractual right to bind such entities with respect to the following actions, Related Parties and Composers not to, enter into any arrangements, formal or informal,

19

with the purpose or effect to circumvent the intent of the terms and conditions of this Settlement Agreement.

12.     REPRESENTATIONS, WARRANTIES AND COVENANTS

12.1     Class Counsel and Representative Plaintiffs.  Class Counsel and the Representative Plaintiffs represent and warrant to the Bertelsmann Parties during the term of this Settlement Agreement that:

(a)     they have all requisite legal right, power and authority to execute, deliver and perform this Settlement Agreement and grant the releases, covenants and other rights granted by the Representative Plaintiffs in this Settlement Agreement, without restriction or requirement of consent of any other Person; and

(b)     they are not aware of any Composer who has asserted or intends to assert a Potential Claim (other than the Claims asserted in the Lawsuit).

12.2     Class Members. Upon Final Settlement Approval, each Releasing Party hereby represents and warrants to the Bertelsmann Parties during the term of this Settlement Agreement that:

(a)     he/she/it has not assigned, sold or otherwise transferred any Potential Claim that he/she/it previously had that otherwise would fall within the scope of Section 11 above;

(b)     he/she/it has not granted or purported to grant and shall not grant to any person, firm, corporation, partnership or other legal entity any rights that would conflict with, or prevent, the grant of the releases, covenants, and other rights granted hereunder;

(c)     there are no liens, conveyances, mortgages, assignments, encumbrances, or other Contracts that would prevent or impair the Releasing Parties' full and complete exercise of the terms and conditions of this Settlement Agreement,

(d)     any and all consideration required to be paid to any third Person (including any Composer) on account of any of the releases, covenants or other rights granted to the Bertelsmann Entities and its Related Parties in this Settlement Agreement shall be paid by the Releasing Parties;

(e)     the Releasing Parties have the authority to settle and compromise all Potential Claims of all Releasing Parties as set forth herein (including, for the avoidance of doubt, all Releasing Parties in the United States or any foreign jurisdictions);

(f)     after the date of Final Settlement Approval, no Releasing Party nor, to the maximum extent the Releasing Parties have the legal or contractual right to release such entities' Potential Claims, any Related Party or Composer thereof, may

20